Alex Spiro (*pro hac forthcoming*)
alexspiro@quinnemanuel.com
Steven Cherny (*pro hac forthcoming*)
stevencherny@quinnemanuel.com
Patrick D. Curran (SBN 241630)
patrickcurran@quinnemanuel.com
Nicola Felice (*pro hac forthcoming*)
nicolafelice@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 5th Avenue
New York, New York 10016-7103
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Ryan R. Smith (SBN 229323)
rsmith@wsgr.com
Naoya Son (SBN 324444)
nson@wsgr.com
Alexander R. Miller (SBN 347827)
alex.miller@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI P.C.**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329

*Attorneys for Plaintiff*
*EIGHT SLEEP INC.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **EIGHT SLEEP INC.,** | ) Case No.: 2:26-cv-02460 |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR PATENT** |
| vs. | ) **INFRINGEMENT, UNFAIR** |
| | ) **COMPETITION, AND FALSE** |
| | ) **ADVERTISING** |
| **ORION LONGEVITY INC.,** and | ) |
| **BLUE FUZION GROUP LTD.,** | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Eight Sleep Inc. ("Eight Sleep") for its Complaint against Defendants Orion Longevity Inc. ("Orion") and Blue Fuzion Group Ltd. ("BFG") (collectively the "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

1.    It took Eight Sleep over a decade to build something new and innovative.  It took Orion a fraction of that time to steal it—and even less time to spread lies about what Orion was doing.  This case is being filed to protect Eight Sleep's hard work and to stop Orion's unfair and deceptive trade practices.

2.    Eight Sleep was founded in 2014 with a single mission: to fuel human potential through optimal sleep.  Over the next ten years, the company invested millions of dollars in research and development.  It collected and analyzed millions of hours of sleep data to develop multiple generations of the revolutionary Eight Sleep "Pod"—a bio-tracking sleep system that uses dynamic heating, cooling, and AI-driven temperature regulation to measurably improve sleep.  Peer-reviewed studies show Eight Sleep's Pod leads to significant improvements in deep sleep, cardiovascular recovery, and overall sleep quality.  The Pod was a groundbreaking product, and Eight Sleep received multiple patents for its innovations.

3.    The market took notice.  TIME Magazine named the Pod one of its 100 Best Inventions.  The company won a Red Dot Design Award for exceptional industrial design.  Fast Company recognized Eight Sleep as one of the world's most innovative companies—twice.

4.    None of this happened overnight.  The Pod was built through years of experimentation, failure, iteration, and refinement.  Eight Sleep earned its place in the market the hard way, through the sustained investment that real innovation demands.

5.    Orion did things differently.  Rather than invest years on research and development to build a genuine product, Orion took a shortcut.  It copied Eight Sleep's product and then used deception to fool customers and investors.  Copying Eight

Sleep was perhaps Orion's biggest expense—Orion's executives and investors spent nearly $55,000 over the last few years buying Eight Sleep products in an apparent effort to copy Eight Sleep products. Orion then turned around and took orders (and payment) for a copycat product it now says did not exist—a product that, in sworn submissions to this Court, its own executives say was "incomplete," "under development," and had not been built when Orion told the world it was ready to ship. Orion made rushed efforts to copy Eight Sleep's products and tried to create the false impression Orion offered a comparable, established alternative.  It did not.

6.      Orion's deception was extensive.  Orion affirmatively lied to consumers about what its product could do, advertising a "5-stage sleep tracker" feature that apparently never existed and still does not exist.  Orion falsely claimed its product could cool as low as 50°F and heat as high as 115°F—temperatures Orion knows it cannot achieve in the real world under anything approaching normal conditions.  Orion placed glowing "testimonials" from supposed users on the purchase page for its product, positioned those glowing reviews directly below text that described its supposed product, without disclosing *two big lies*: those testimonials were *not actually Orion customers* (but were instead Orion employees and investors in disguise), and those testimonials were *not about the product Orion sells* (but were instead apparently references to a different device).  That was not just deceptive—it was a direct violation of Federal Trade Commission rules that protect consumers.

7.      These were not isolated incidents or mistakes.  Orion has a pattern of misleading statements to deceive consumers and investors.  Orion's CEO, Harry Gestetner, personally took to social media and Reddit to steer customers away from Eight Sleep through misleading claims about Orion's products.  Orion also repeatedly approached investors with false claims about Orion's product, about Eight Sleep's product, and about Eight Sleep's profits and margins.  This pattern of false statements, including false advertising to consumers, was not incidental; it was systematic.  And

it worked.  Orion timed its blitz of false statements to coincide with the busiest shopping days of the year, including Black Friday—maximizing the impact its claims had on consumers in the period when purchasing decisions are most concentrated.

8.     Orion did not act alone.  BFG facilitated Orion's effort to sell a copy of Eight Sleep's product.  BFG provided product development, overseas manufacturing support, and importation and logistics for importing Orion's knock-off products into the United States.  BFG was and is an active participant in Orion's scheme to steal Eight Sleep's innovations.

9.     The harm caused by Defendants' conduct is real and ongoing.  Consumers were tricked into purchasing a product without features Orion promised.  Eight Sleep lost sales to a competitor who took customers through copying and lies—not merit.  Eight Sleep lost business opportunities and value the company would otherwise have had in the marketplace due to Orion's false statements and unfair business practices.  Eight Sleep lost investment opportunities that would otherwise have been available from investors who would have, but for Orion's false statements, invested in Eight Sleep.  And the broader market has been harmed by all of this.  Conduct like Orion's, if left unchecked, harms innovation and competition everywhere.  If Orion can shortcut years of innovation by copying rather than creating, and can fool customers by fabricating endorsements rather than earning them, no innovator or consumer is safe.  Eight Sleep seeks injunctive relief and damages to hold Defendants accountable for their misdeeds.  This infringement of Eight Sleep's patented innovations, and this pattern of false advertising and unfair competition, must stop.

10.     Eight Sleep therefore brings this civil action for infringement of U.S. Patent Nos. 12,370,339 (the "'339 Patent") (attached as Exhibit ("Ex.") 1) and 12,377,240 (the "'240 Patent") (attached as Ex. 2) (collectively, the "Asserted Patents"), arising under the Patent Laws of the United States, 35 U.S.C. §§ 271, *et*

*seq.*; unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1125; and unfair competition under the California Business and Professions Code (Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq.*).  Plaintiff seeks injunctive relief and damages arising out of Defendants' misconduct.

## THE PARTIES

11.    Plaintiff Eight Sleep is a Delaware corporation with its principal place of business at 915 Broadway, Ste 1301, New York, NY 10010.  Eight Sleep is a pioneering "sleep fitness" company that focuses on leveraging innovation, technology, and biometrics to design innovations that improve sleep.  Eight Sleep has spent millions of dollars researching and developing novel products to improve how people sleep, and the quality of that sleep.  Eight Sleep's products have various applications, from increasing not only the quality of sleep, but also quantity, as well as tracking key biometrics to monitor and improve overall health and fitness.  These innovations have resulted in the issuance of several patents, including the Asserted Patents.

12.    Defendant Orion is a Delaware corporation with its principal place of business at 621 23rd Street, Santa Monica, CA 90402.

13.    Defendant BFG is a Hong Kong company with its principal place of business at Unit 1610, 16/FL, Kowloon Plaza, 485 Castle Peak Road, Lai Chi Kok, Kowloon, Hong Kong.

14.    On information and belief, Defendants are engaged (including, as relevant, in the past) in making, using, selling, offering for sale, and/or importing, and/or inducing one another and their respective subsidiaries, affiliates, distributors, suppliers, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, the accused Orion products.

1

## JURISDICTION, VENUE, AND JOINDER

2      15.    Eight Sleep incorporates by reference the preceding paragraphs as if

3  fully set forth herein.

4      16.    This Court has subject matter jurisdiction over Eight Sleep's claims

5  arising under the patent laws of the United States, including 35 U.S.C. §§ 271, *et seq.*,

6  and under the Lanham Act, 15 U.S.C. § 1125 pursuant to 28 U.S.C. §§ 1331 and 1338.

7      17.    This Court has supplemental jurisdiction over Eight Sleep's claims

8  arising under the laws of California, pursuant to 28 U.S.C. § 1367, because Eight

9  Sleep's state-law claims are so related to Eight Sleep's federal law claims such that

10  they form part of the same case or controversy and derive from a common nucleus of

11  operative facts.

12      18.    This Court has personal jurisdiction over Orion.  Orion's principal

13  place of business is in this District. On information and belief, Orion has committed

14  acts of infringement within this District by making, using, selling, offering to sell, and

15  importing infringing products.

16      19.    This Court has personal jurisdiction over BFG.  On information and

17  belief, Defendants conduct business, have committed acts of patent infringement

18  directly or through related entities, and have induced acts of patent infringement by

19  others in this District and elsewhere in the United States, giving rise to this action

20  and/or has established minimum contacts with the State such that personal jurisdiction

21  over the Defendants would not offend traditional notions of fair play and substantial

22  justice.  On information and belief, Defendants place, have placed, and contribute to

23  placing their products into the stream of commerce through established distribution

24  channels knowing or understanding that such products would be sold and used in the

25  United States, including in this District.  On information and belief, BFG provides

26  Orion with business operations and logistical assistance relating to the Orion's

27  products relevant to this case, as well as design assistance of the same.

28

PLAINTIFF'S COMPLAINT

20.     This Court has specific personal jurisdiction over BFG consistent with the requirements of the Due Process Clause of the U.S. Constitution and the Long-Arm Statute of the State of California.  On information and belief, each BFG has availed itself of the privilege of conducting and soliciting business within California, including engaging in at least some of the infringing activities in California, as well as by others acting as agents and/or representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution, and the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

21.     Alternatively, this Court has personal jurisdiction over BFG under Fed. R. Civ. P. 4(k)(2).  This is because: (a) the claims for patent infringement in this action are claims arising under federal law; (b) BFG is not subject to the jurisdiction to any state's courts of general jurisdiction; and (c) exercising jurisdiction over the BFG is consistent with the U.S. Constitution.

22.     Venue is proper for Orion in this District under 28 U.S.C. § 1400(b). Orion has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents.  Orion has a regular and established place of business in the District, including at 621 23rd Street, Santa Monica, CA 90402.

23.     Venue is proper for BFG in this District pursuant to 28 U.S.C. § 1391. BFG is a foreign entity, and may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

24.     Joinder of Defendants is proper under 35 U.S.C. § 299 because Eight Sleep's right to relief is asserted against Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.  As discussed below, Orion has, at minimum, offered

to sell the "Orion Sleep System" (the "Accused Product"), while BFG has, on information and belief, participated in the manufacturing and importation of the same Accused Product.  BFG also has, as discussed above, on information and belief, provided Orion with business operations and logistical assistance relating to the Accused Products, as well as design assistance of the same.  As such, the allegations herein relate to the making, using, importing into the United States, offering for sale, or selling of the same Accused Product.

## **THE ASSERTED PATENTS**

25.    The '339 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the USPTO on July 29, 2025.  A true and correct copy of the '339 Patent is attached as Exhibit 1.

26.    The '240 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the USPTO on August 5, 2025.  A true and correct copy of the '240 Patent is attached as Exhibit 2.

27.    Eight Sleep is the sole owner of, and possesses all rights, interests, and title of, the Asserted Patents, and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patents, including filing the instant patent infringement lawsuit.  Eight Sleep also possesses the right to recover all damages for past, present, and future infringement of the Asserted Patents, and to seek all injunctive relief as appropriate under the law.

28.    Eight Sleep has complied with all statutory requirements, including the requirements of 35 U.S.C. § 287, to pursue and recover for any infringement of the Asserted Patents.

29.    Defendants infringe one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a)–(c), as alleged below.

**FACTUAL ALLEGATIONS**

**Eight Sleep's Innovations**

30.    After surveying thousands of potential customers and collecting more than 43 million hours of sleep data, Eight Sleep discovered that "[b]ody temperature is one of the main factors that affects sleep quality and, therefore, must be tightly regulated for optimal sleep." *See* Ex. 3 at 1.  This revelation prompted Eight Sleep to develop its flagship product, the "Eight Sleep Pod," a bio-tracking mattress cover that utilizes dynamic heating and cooling to improve sleep quality by reducing sleep interruptions and increasing periods of deep sleep.  *See* Ex. 4.  In 2019, Eight Sleep released its first Eight Sleep Pod.  The Eight Sleep Pod is depicted below, with the pad (laid on top of a bed mattress) on the left, and the base unit on the right:



31.    "[T]he Eight Sleep Pod is a temperature-regulated mattress cover that provides individualized temperature regulation (*i.e.*, selection of temperatures ranging from 13 to 43C) on each side of the bed at three different points in the night, allowing for continuous temperature regulation throughout the night."  Ex. 3 at 2.  The Eight Sleep Pod improves upon prior methods to regulate body temperature during sleep (*e.g.*, manipulating ambient temperature, warming the extremities, modifying clothing or bedding layers, using electric blankets, using a thermal suit during sleep, cooling the head, or sleeping on a high heat capacity mattress) as such prior methods typically did not change temperatures to adjust for different phases of sleep, and could

not individualize temperatures based on a user's unique physiology (including gender differences)—both of which are key features of the Eight Sleep Pod. *See id.* at 1–2. The Eight Sleep Pod independently regulates temperature on each side of the bed, which adjusts during sleep based on biological signals of each user, such as sleep stage, heart rate, and respiratory rate. *See* Ex. 5; Ex. 6. Eight Sleep also provides a software using proprietary algorithms which take user's biological signals and optimizes temperature, and the timing of temperature changes:



Cooling and warming for two zones
Sleep your way as each side of the bed adjusts
independently

Ex. 5 at 3; Ex. 6.[1] The Eight Sleep Pod also features a functionality—"Gentle Rise"—to silently wake users using temperature control and vibrations, based on where the user is in his sleep cycle (as opposed to traditional alarms, which wake the user regardless of where he may be in his sleep cycle). *See* Ex. 7.

32.    A peer-reviewed study showed that the Eight Sleep Pod's continuously temperature-regulated bed surface "can (1) significantly modify time spent in specific sleep stages [deep, light, and REM sleep] in certain parts of the night, and (2) enhance cardiovascular recovery during sleep." Ex. 3 at 1; *see also* Ex. 8. Another study found

---

[1] The Eight Sleep Pod also allows users to manually adjust temperatures using a control panel built into the device.

that "[a]fter one month sleeping on the Pod, members [users] reported 32% better sleep quality scores on average[,]" measured across "daytime energy scores," number of "sleep interruptions," and speed of "sleep onset." *See* Ex. 9.

33.    Eight Sleep's innovations have been recognized by the numerous patents it has been awarded, including the Asserted Patents. Eight Sleep's innovations have also been recognized by the numerous awards the company and its products have won. In 2019, the Eight Sleep Pod was selected as one of TIME's 100 Best Inventions for the year. *See* Ex. 10. In 2020, the Eight Sleep Pod won a Red Dot Design Award, which is awarded to "products that distinguish themselves with exceptional industrial design." Ex. 11. In both 2022 and 2023, Eight Sleep was named to Fast Company's (a monthly business magazine) annual lists of the world's most innovative companies. *See* Ex. 12; Ex. 13. In 2025, the Eight Sleep Pod 4 was recognized as the "Best Sleep Tech" by the T3 Awards. *See* Ex. 14.

**Defendants' Infringing Activities**

34.    Orion offers the Accused Product which includes a "Smart Cover" device, a "Control Tower" device, and a subscription service Orion previously marketed as its "Smart Mode," but has since apparently rebranded as "Orion Intelligence." Orion states that this system "analyzes your sleep patterns to maintain your ideal temperature all night." *See* Ex. 15. Orion's CTO, in a declaration submitted to this Court, represented that the Accused Product is "intended to be a biometric mattress cover equipped with multiple sensors and temperature-control components that monitor user inputs and intelligently adjusts the bed's temperature to help maintain optimal sleep conditions." *See* Ex. 16. An image of the Accused Product is reproduced below, with the base unit on the left, and the pad on the right:



Ex. 17.

35.    When a customer purchases the Accused Product on Orion's website, Orion states that the Accused Product is "Ready to ship."  Orion's website also provides a shipping policy that states "Orders Ship Within Two Weeks."

36.    Functionalities of the Accused Product include, among others: monitoring user's biological signals; regulating temperature independently on both sides of the bed, regulating temperatures depending on the user's stage of sleep; using "AI powered thermoregulation" to maintain your perfect temperature through all sleep stages, thermal wake up alarm, custom bed schedules and daily sleep reports. *See* Ex. 18.  Orion markets its "Smart Mode" or "Orion Intelligence" subscription as offering "AI-powered smart temperature adjustment" to users. Ex. 18.  Orion's CTO, in a declaration, states that the Accused Product "includes sensors to gather feedback from users' sleep patterns to enable temperature regulation."  Ex. 16.

37.    Orion prominently markets the following features on its website:

- "Personalized cooling for each sleeper";
- "AI and advanced sensors adjust your temperature before you notice you're uncomfortable";

- "AI-powered smart temperature adjustment";
- "Unique sleep temperature profiles for each partner";
- "AI POWERED THERMOREGULATION";
- "Embedded smart sensors track your sleep pattern and biometrics"; and
- "[Y]our perfect body temperature constantly changes throughout the night. Orion adjusts your body temperature to your perfect level throughout the night based on your biometrics."

Exs. 17, 18, 26.

38.    Orion acknowledges that it competes directly with Eight Sleep by showing a side-by-side comparison of the competing products.

| FEATURES | EIGHT SLEEP | ORION |
|---|---|---|
| Embedded sleep sensors | ✓ | ✓ |
| Personalized to you | ⊖ | ✓ |
| Comfort options | ⊖ | ✓ |
| Cools as low as 50°F | ⊖ | ✓ |
| Heats as high as 115F | ⊖ | ✓ |
| 5-Stage sleep tracker | ⊖ | ✓ |
| Thermoregulation mode | ⊖ | ✓ |
| Space saving design | ⊖ | ✓ |
| Financing as low as $65/mo | ⊖ | ✓ |
| 100% financing approval | ⊖ | ✓ |

Ex. 18.

39.    On December 11, 2025, Orion "announced the launch of its AI-powered Smart Cover[.]" Ex. 19 (Orion Press Release). This press release stated that the Accused Product "fits over any standard mattress and uses built-in sensors to track your heart rate, breath rate, and sleep patterns, while intelligently cooling or warming

your body throughout the night. Orion continuously learns your unique thermal profile to optimize comfort, recovery, deep and REM sleep. Designed to complement your bedroom aesthetic, the dual-zone temperature control allows you and your partner to enjoy your ideal sleep climate individually." *Id.* Finally, Orion explained that its "intelligent sleep system uses **real-time biometric sensing**, **AI-powered thermal regulation**, and personalized data insights to **help people sleep more deeply** and recover more effectively." *Id.* (emphases added).

40. Orion now advertises and sells its "Dual-Zone Cooling Technology" as controlling temperature separately for each of two users, based on "Unique sleep temperature profiles for each partner":

Ex. 18.

41.     On information and belief, BFG provides product development, quality assurance, consulting regarding overseas manufacturing, logistical supports necessary to import the Accused Products into the U.S., and supply chain management solutions to Orion, including for the Accused Product.

42.     On information and belief, a reasonable company would have investigated whether Eight Sleep owned any patents before performing a direct product comparison.  Thus, to the extent that Defendants lacked actual knowledge of the Asserted Patents, their conduct constituted willful blindness.

43.     Additionally, Defendants have been on notice of the Asserted Patents no later than October 9, 2025, when the original complaint in *Eight Sleep I*[2] was filed and served.

### Orion's Advertising and Competitive Activities

44.     Orion advertises the Accused Product as operating in the manner described above and has done so at least as of the date of the original complaint.

45.     In October 2025, Orion posted a purported comparison between itself and Eight Sleep on its website.  The comparison, which is reproduced above after Paragraph 38, included numerous false and misleading statements.

46.     The comparison states that Orion could "[c]ools as low at 50ºF" and "[h]eats as high as 115F."  Tests conducted in January 2026 indicate that Orion cannot achieve these bed temperatures at normal room temperatures and, under no circumstances, could both the high and low temperature be achieved in a room of the same temperature.  Orion knows that its product, which it based on the Eight Sleep product, cannot achieve better levels of cooling—but Orion elected to deceptively market a lower temperature than the Pod anyway.  These statements were false when made or, at minimum, highly misleading, to the extent that they depend on unstated

---

[2] "*Eight Sleep I*" refers to *Eight Sleep Inc. v. Orion Longevity Inc.*, Case No. 2:25-CV-09685-SB-RAO (C.D. Cal.).

prerequisite conditions.  The statement is likely to influence a consumer's purchasing decision, since it is a central component of Orion's website and makes direct comparisons with Eight Sleep.

47.    The comparison also touts a "5-stage sleep tracker."  This feature never existed.  The statement is, therefore, false.  When Orion eventually released its Accused Product, Orion had just a 3-stage sleep schedule.  This statement was false when made, and was designed to induce customers to select Orion over Eight Sleep based on non-existent functionality.  Although Orion has since removed this non-existent feature from its product comparison, these false statements about the Accused Product were likely to influence a consumer's purchasing decision, and did in fact influence purchasing decisions before the statement was removed.  The period of false advertising includes, on information and belief, some of the busiest shopping dates in the United States, including Black Friday.

48.    Leading up to Black Friday, Orion advertised that it "offers multiple comfort options for added customization."  Ex. 15.  Orion went as far as to tout "comfort options" in the above comparison table as one of the differentiating features over Eight Sleep.  Orion eventually removed the feature from its website without explanation.



Ex. 15

49.    Orion's CEO, Harry Gestetner, actively promotes Orion's products on social media.  Ex. 20 (Harry Gestetner Reddit Posts).  His activity is often in direct comparison and competition with Eight Sleep.  For example, on November 19, 2025, Mr. Gestetner described the "smart" alarm feature of Orion's product.  Notably, Mr. Gestetner wrote in the present tense which, on information and belief, meant that the feature was deployed in software which had been used in the U.S., including for testing.



*Id*. at 10.

50.    In a separate thread on December 10, 2025, Mr. Gestetner explained that the Accused Product has "dual zone temperature control" as described above. The use of present tense indicates that Orion had deployed the accused "dual zone" feature in software.  Orion's statement about having a product with these features would likely deceive a substantial number of customers and influence their purchasing decision.  As shown below, Orion's CEO was trying to convince consumers to purchase the Accused Product rather than Eight Sleep.



Ex. 21 at 1-2.

51.     Orion's website also features testimonials from users detailing their experiences using the infringing "Orion Sleep System," dated between September 27, 2025, and October 5, 2025:



Ex. 17 (Orion Sleep System Product Page as of, or around, October 9, 2025).

52.     Several, if not all, of Orion's product endorsements were made by individuals with undisclosed affiliations.  Such undisclosed affiliations violate the FTC's Enforcement Guidelines (16 C.F.R. § 255) as they are likely to deceive

1    customers into believing that Orion was presenting objective endorsements from
2    neutral customers.  For instance, the first endorsement shown above is, on information
3    and belief, from Josh Minnick, CFO of Orion.   The third endorsement is, on
4    information and belief, from James Moriarty, Jr., a key investor in Orion.   Orion
5    passed these testimonials off as objective reviews from early customers—never
6    revealing their affiliations.  A customer would have been misled by these testimonials.

7       53.    On November 11, 2025, Orion made the following Instagram posting,
8    advertising an "***AI powered adjustment throughout the night***," which, on
9    information and belief, indicates Orion's use of features that infringe the Asserted
10   Patents.  In response, an individual named Jake Brooks responded, indicating that he
11   had possessed of the Accused Product for "a few months" and "bought [it] for
12   myself." On information and belief, Orion intended to create the impression in the
13   minds of consumers that Accused Product was in existence, was available for
14   purchase, and had the features at issue in this case.  Indeed, in response to comments
15   from prospective customers, Orion represented that "Orion ***is*** less expensive than the
16   Pod 5 … and ***is*** personalized to you based on your sleep data."  This comment again
17   represents to consumers that Orion has a product which utilizes the accused features.

18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17    Ex. 22.

18        54.        Despite the above, Orion now asserts that in late 2025, the Accused

19    Product was "incomplete" and that "[t]here *was simply no product* that could be

20    evaluated for infringement." *Eight Sleep I*, Dkt. 22-2 at 1, 9 (Dec. 10, 2025).  Orion

21    further asserts that as of December 10, 2025, the Accused Product remained

22    incomplete, and under development.  *Id.* at 1, 9.  Orion went so far to argue that the

23    notion that it engaged in "some form of testing" of the Accused Product months after

24    initiating sales is "logically and factually baseless."  *See id.* at 11.  Orion also

25    specifically asserts that the software and firmware for certain functionalities of the

26    Accused Products were incomplete at least as of December 10, 2025. *See Eight Sleep*

27    *I*, Dkt. 23-1 (Dec. 10, 2025) at 4.

28

55.    Orion further asserts that the user testimonials on its website—on the *product purchase page for the Accused Product*—are *not* actually for the Accused Product.  *See* Ex. 23.  Rather, Orion alleges that these testimonials are for "early prototypes of its mattress cover" that did not have the same features as the Accused Product.  *Id.* at 4.  Orion's customer testimonials are, therefore, highly misleading because Orion placed them directly below marketing material describing the Accused Product, including the representation that "AI and advance sensors adjust your temperature before you notice you're uncomfortable."  Ex. 17.  Any reasonable consumer would have inferred that the testimonials on the product purchase page were describing the product described directly above the testimonials on the same webpage (and, in fact, the only product that Orion sold).

56.    Orion was not offering testimonials by accident; these testimonials were offered intentionally, to induce purchases by consumers.  Orion's misleading reviews and testimonials would have influenced consumers to pre-order Orion rather than purchase Eight Sleep's competing product.  Further, customers would have inferred from the customer testimonials that the Accused Product existed, was reliable, was available for immediate purchase, and contained the advertised features.

57.    Orion also posted an endorsement video from Stephen Ellsworth to Instagram.  A screenshot of Mr. Ellsworth's video is reproduced below.



58.    In violation of FTC's Enforcement Guidelines, nowhere in Mr. Ellsworth's Instagram video does Orion disclose that Mr. Ellsworth was an early investor in Orion or that Mr. Ellsworth owns an equity stake in Orion.  His video was designed to give the false impression that he was an early customer and intended to leverage his status as an online influencer to give the false impression of an arms-length unbiased user review to drive sales away from Eight Sleep and to Orion.

59.    On February 2, 2026, a Reddit account "SDmtbDad" posted a review of the Accused Product.  *See* Ex. 24.  The review included that "The app claims it will learn my sleep patterns over time, but there is no true 'auto mode' (unlike Eight Sleep), so it's unclear how this learning is supposed to work — or whether that functionality is planned for a future update."  *See id.*  That same day, a Reddit account "Praveen_OrionSleep" (which, upon information and belief, belongs to Praveen Nagaraj, a software engineer at Orion) posted a comment responding to SDmtbDad's post described above.  *See id.*  Mr. Nagaraj stated that "there's definitely a lot we need to work on from the software side.  . . .  We are working on improving our sleep schedules features to be more automatic.  We wanted to start simple and get the fundamentals right before moving on to more automatic schedules based on our own sleep science."  *Id.*  Mr. Nagaraj's posting constitutes an admission by Orion that it was still "working on improving [its] sleep schedule features to be more automatic" and did not currently have any "automatic schedules based on [its] own sleep science."  This establishes that Orion knew that its statements about offering "Automatic temperature adjustments all night" and "AI powered adjustments" were false when made, since they could not have been delivered to initial customers.

60.    On February 8, 2026, a Reddit account "braboftw" posted a comment stating that "Orion sets temps based off prior sleep patterns versus reactive temp changes like the 8 sleep does?  Seems like a bad way to do it.  Makes me lean towards 8 sleep."  Ex. 25.  That same day, Mr. Nagaraj responded to this comment, stating "fully accept our software needs more work.  However, everything you mentioned is coming soon!  We just couldn't launch a lot of intelligence features from day 1 (because we needed more data to learn from and train our models).  Our app is going to be massively improving over the next 2 months[.]"  *Id.*  Mr. Nagaraj's posting constitutes an admission by Orion that it "couldn't launch a lot of intelligence features from day 1."  This establishes that Orion knew that its statements about offering

"Automatic temperature adjustments all night" and "AI powered adjustments" were false when made, since they could not have been delivered to initial customers.

61.     These repeated false statements are not accidents. Orion's false claims are the core of its marketing strategy. Orion even has the audacity to advertise itself as "the first smart sleep system truly personalized to you based on your sleep data and comfort profile." *See* Ex. 15. Orion knows this is false: far from "first," Orion **copied** the Eight Sleep Pod.

62.     The facts are clear: Eight Sleep invested a decade of research and millions of dollars to build a groundbreaking product with patented and innovative features. Orion did none of that. Orion's executives and investors instead bought Eight Sleep products, copied them, and then sold inferior knock-offs using misleading marketing and outright lies. That campaign of deceptive advertising did more than hurt Eight Sleep. It also hurt consumers—and even violated FTC Enforcement Guidelines. Orion's brazen disregard for the law is bad for everyone. Eight Sleep now asks this Court to make Orion stop.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 12,370,339

63.     Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

64.     On information and belief, Defendants directly infringed and are currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '339 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product. For example, as shown below, the Accused Product practices at least exemplary claim 29 of the '339 Patent.

65.     Claim 1 of the '339 Patent (on which claim 29 depends) recites:

A method for operating a bed device, the method comprising:

obtaining at least one first biological signal from a user, the at least one first biological signal indicating a presence of the user on the bed device;

determining a first control signal and a time to send the first control signal to the bed device, wherein the first control signal comprises a first instruction to turn the bed device on or off and a second instruction to set a temperature of the bed device to a first temperature, and wherein the time to send the first control signal to the bed device is based on a bedtime associated with the user, the presence of the user, or both;

sending the first control signal to the bed device at the determined time to turn the bed device on or off and set the bed device to the first temperature;

obtaining, while the bed device is turned on, at least one second biological signal from the user, wherein the at least one second biological signal is different from the at least one first biological signal;

determining a second control signal, wherein the second control signal comprises an instruction to the bed device to adjust the temperature of the bed device to a second temperature in response to the obtained at least one second biological signal; and

sending the second control signal to the bed device to adjust the temperature of the bed device to the second temperature.

66.    Claim 29 of the '339 Patent recites:

A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1.

67.     As illustrated below, using the Accused Product requires "operating a bed device," as the Accused Product is a pad placed on a bed mattress, to be slept on by users.



Ex. 18.

68.     Using the Accused Product requires "obtaining at least one first biological signal from a user, the at least one first biological signal indicating a presence of the user on the bed device[.]"  For instance, as shown below, "Orion's embedded sensors sense where you are in your sleep cycle and constantly adjust your body temperature to the perfect temperature based on your sleep cycle."

How does Orion improve my sleep?

Body temperature is the #1 controllable component of sleep quality, but your perfect body temperature constantly changes throughout the night. Orion's embedded sensors sense where you are in your sleep cycle and constantly adjust your body temperature to the perfect temperature based on your sleep cycle.

Ex. 26.

69.     Using the Accused Product requires "determining a first control signal and a time to send the first control signal to the bed device, wherein the first control signal comprises a first instruction to turn the bed device on or off and a second instruction to set a temperature of the bed device to a first temperature, and wherein the time to send the first control signal to the bed device is based on a bedtime

associated with the user, the presence of the user, or both[.]" For example, Dr. Michael Bruce ("Chief Sleep Officer" of Orion) states in a video on Orion's website that Orion determines your body's "thermoregulation set point" and then "thermoregulating technology" "kicks in to cool or heat your body to your personal perfect temperature." Ex. 15 (embedded video at 1:04). Orion also touts its "AI powered smart temperature adjustment" which "adjusts your body temperature to your perfect level throughout the night based on your biometrics." *See* Ex. 26.

70.    Using the Accused Product requires "sending the first control signal to the bed device at the determined time to turn the bed device on or off and set the bed device to the first temperature." Orion illustrates its practice of this limitation below:



Ex. 17.

71.    Using the Accused Product requires "obtaining, while the bed device is turned on, at least one second biological signal from the user, wherein the at least one second biological signal is different from the at least one first biological signal[.]" Orion obtains a second biological signal when, for example, a user performs a Sleep Optimization Test or when the embedded sensors obtain biological signals from the user during sleep.

72.     Using the Accused Product requires "determining a second control signal, wherein the second control signal comprises an instruction to the bed device to adjust the temperature of the bed device to a second temperature in response to the obtained at least one second biological signal[.]"  For example, Orion may adjust the user's temperature schedule based on a Sleep Optimization Test and/or recommendations from Sleep Insights.  Additionally, Orion may adjust the bedtime and/or wake-up times based on biological signals.

73.     Using the Accused Product requires "sending the second control signal to the bed device to adjust the temperature of the bed device to the second temperature."  For instance, Orion automatically provides control signals to adjust the temperature based on recommendations generated in response to biological signals.

74.     The Accused Product comprises "a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1."  For example, Orion operates one or more servers and provides a control tower, each of which includes a processor and memory.

75.     In addition, or in the alternative, Defendants also indirectly infringe the '339 Patent pursuant to 35 U.S.C. § 271(b) because they induced third parties, including subsidiaries, wholly or partially owned companies, related entities, distributors, retailers, and/or customers, to have made, use, offer for sale, sell, and/or import the Accused Product without Eight Sleep's express consent.  Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Product for or on behalf of said third parties.  For example, Defendants publish specifications, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product. For example, BFG induces Orion and its customer to infringe by providing support to the manufacturing and importation of the Accused Product.

76. In addition or in the alternative, the Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '339 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, the Accused Product, knowing that those products constitute a material part of the inventions of the '339 Patent, knowing that those products are especially made or adapted to infringe the '339 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

77. Defendants' infringement of the '339 Patent has been willful and deliberate based on actual knowledge of Eight Sleep. Defendants have been willfully blind and/or had actual knowledge of the '339 Patent since no later than October 9, 2025, when the original complaint in *Eight Sleep I* was filed and served.

78. Eight Sleep has been and continues to be damaged by Defendants' infringement of the '339 Patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

79. Defendants' conduct in infringing the '339 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## **COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,377,240**

80. Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

81. On information and belief, Defendants directly infringed and are currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '240 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product. For example, as shown below, the Accused Product practices at least claim 29 of the '240 Patent.

82. Claim 1 of the '240 Patent (from which claim 29 depends) recites:

A method for operating a bed device, the method comprising:

obtaining at least one first biological signal from a first user, the at least one first biological signal indicating a presence of the first user on a first zone of the bed device;

obtaining at least one second biological signal from a second user, the at least one second biological signal indicating a presence of the second user on a second zone of the bed device adjacent the first zone;

generating a plurality of control signals for the bed device in response to the obtained at least one first biological signal and the at least one second biological signal, the plurality of control signals comprising (1) a first instruction to set the temperature of the first zone to a first temperature and (2) a second instruction to set the temperature of the second zone to a second temperature that is different from the first temperature, wherein the first instruction is based at least in part on a first user-specified preference of the first user and the second instruction is based at least in part on a second user-specified preference of the second user; and

sending the plurality of control signals to at least one respective temperature control device associated with the bed device such that the first and second zones are heated or cooled differently according to the plurality of control signals.

83.    Claim 29 of the '240 Patent recites:

A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1.

84.    Using the Accused Product requires "operating a bed device," as the Accused Product is a pad placed on a bed mattress, to be slept on by users. For example:



Ex. 18.

85.    Use of the Accused Product requires "obtaining at least one first biological signal from a first user, the at least one first biological signal indicating a presence of the first user on a first zone of the bed device." For instance, the Accused Product includes "[e]mbedded smart sensors [that] track your sleep pattern and biometrics" (Ex. 18 at 1), are "[e]quipped with advanced sensors to monitor your temperature and biometrics" (*id.* at 2), and "[m]aintains your perfect temperature through all sleep stages" (*id.*), with "AI and advanced sensors adjust[ing] your temperature before you notice you're uncomfortable" (Ex. 17 at 2).

86.    Use of the Accused Product also requires "obtaining at least one second biological signal from a second user, the at least one second biological signal indicating a presence of the second user on a second zone of the bed device adjacent the first zone[.]" As shown above, Orion touts its "DUAL-ZONE COOLING TECHNOLOGY" providing "[u]nique sleep temperature profiles for each partner." Ex. 18.  The following screenshot shows that the bed device is divided into two separately controlled zones:



87.    Use of the Accused Product also requires "generating a plurality of control signals for the bed device in response to the obtained at least one first biological signal and the at least one second biological signal, the plurality of control signals comprising (1) a first instruction to set the temperature of the first zone to a first temperature and (2) a second instruction to set the temperature of the second zone to a second temperature that is different from the first temperature, wherein the first instruction is based at least in part on a first user-specified preference of the first user

and the second instruction is based at least in part on a second user-specified preference of the second user[.]" Orion's "dual-zone" feature allows for each side of the bed to be regulated independently. Further, Orion's recommendations from Sleep Insights and adjusting the bedtime and/or wake-up times based on biological signals "generat[e] a plurality of control signals" as claimed.

88. Use of the Accused Product also requires "sending the plurality of control signals to at least one respective temperature control device associated with the bed device such that the first and second zones are heated or cooled differently according to the plurality of control signals." The Accused Product offers "[p]ersonalized cooling for each sleeper[,]" with "[d]ual-zone temperature control allow[ing] separate sleep climates for you and your partner" and "[a]utomatic temperature adjustment all night" via "AI and advanced sensors adjust[ing] your temperature before you notice you're uncomfortable." Ex. 17 at 2.

89. The Accused Product comprises "a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1." For example, Orion operates one or more servers and provides a control tower each of which includes a processor and memory.

90. In addition, or in the alternative, Defendants also indirectly infringe the '240 Patent pursuant to 35 U.S.C. § 271(b) because they induced third parties, including subsidiaries, wholly or partially owned companies, related entities, distributors, retailers and/or customers, to have made, use, offer for sale, sell, and/or import the Accused Product without Eight Sleep's express consent. Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Product for or on behalf of said third parties. For example, Defendants publish specifications, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product. For example, BFG induces

Orion and its customer to infringe by providing support to the manufacturing and importation of the Accused Product.

91.     In addition or in the alternative, Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '240 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, the Accused Product, knowing that those products constitute a material part of the inventions of the '240 Patent, knowing that those products are especially made or adapted to infringe the '240 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

92.     Defendants' infringement of the '240 Patent has been willful and deliberate based on actual knowledge of Eight Sleep.  Defendants have been willfully blind and/or had actual knowledge of the '240 Patent since no later than October 9, 2025, when the original complaint in *Eight Sleep I* was filed and served.

93.     Eight Sleep has been and continues to be damaged by Defendants' infringement of the '240 Patent, and will suffer irreparable injury unless this Court enjoins the infringement.

94.     Defendants' conduct in infringing the '240 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT III: UNFAIR COMPETITION
### (Pursuant to Cal. Bus. & Prof. Code § 17200)

95.     Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

96.     Orion has been, and is engaged in "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.* of the California Business & Professions Code and acts of unfair competition in violation of the common law.

97.     Specifically, Orion and its representatives engaged in "fraudulent business practices" pursuant to Section 17200 by making, publishing, disseminating,

and circulating false, deceptive and misleading statements and advertisements in California misrepresenting the features and availability of the Accused Product. For example, as of or around December 10, 2025, Orion asserts that the Accused Product remained incomplete and under development. *See* ¶ 54, *supra*. Thus, any statements by Orion or its representatives (*e.g.*, its CEO, Mr. Gestetner, and software engineer, Mr. Nagaraj) stating or implying that the Accused Product was complete, available, or "ready to ship" prior to December 10, 2025 (*see, e.g.*, ¶¶ 5, 35, 50, *supra*) are false and/or misleading. This includes, for instance, "testimonials" found on the purchase page for the Accused Product (*see, e.g.*, ¶¶ 52, 55–57, *supra*), as a user testimonial about on a product page reasonably implies that said product is complete and available. Additionally, certain features and functionalities of the Accused Products were still under development on or around December 9, 2025. *See Eight Sleep I*, Dkt. 23-1 at 4 (December 10, 2025). Some of these features, including achieving high and low temperature of 115ºF and 50ºF, "5-Stage Sleep Tracker," and "AI-Powered Thermoregulation", have never been available (*see, e.g.*, ¶¶ 46–50, 53, 59–61, *supra*). Thus, any statements by Orion or its representatives stating or implying that the Accused Product possessed these features and functions prior to them being available were false when made and/or misleading to a reasonable consumer who would have found the availability of such features as important in deciding whether to purchase Orion or Eight Sleep.

98.     Additionally, Orion has compared, and continues to compare, the Accused Product to Eight Sleep's product relying on non-existent features and deceptive testimonials. *See, e.g.*, ¶¶ 46–61, *supra*. Indeed, Orion readily admits that said testimonials are not even for the product whose page the testimonials appear on (*see* ¶ 55, *supra*)—a fact no reasonable consumer would know. These advertisements are also deceptive because the public is likely to believe that, contrary to the truth, the product contains the advertised features and is ready to ship. Further, Orion did not

disclose that the testimonials were from affiliated individuals. Consumers would have found this information crucial in deciding whether to purchase Orion or Eight Sleep.

99.     On information and belief, Orion has also previously made, and continues to make, false statements to investors about Eight Sleep's products and business. Both Eight Sleep and Orion are private venture-backed companies. Eight Sleep and Orion compete for the same investor funding in the marketplace for venture funding. On information and belief, Orion has made, and continues to make, false statements to actual investors and potential investors regarding Eight Sleep's products, Eight Sleep's margins and profitability, and Orion's products. Those false and deceptive statements to investors were designed to, and on information and belief did, divert venture funding away from Eight Sleep, including diverting funding to Orion--funding that could otherwise have been invested in Eight Sleep.

100.     As a direct and proximate result of Orion's wrongful conduct, Eight Sleep has suffered injury in fact, which losses include damage to Eight Sleep's good will with its existing, former and potential customers. For example, Eight Sleep was seen as having a unique product offering in combination with a distinct look and feel associated with its website. Orion has copied both the product offering and the overall look and feel while misleading customers to believe that the product offering existed when it began offering the product for pre-order. Additionally, Eight Sleep lost sales because customers who would have otherwise purchased its products, instead purchased Orion. Eight Sleep also lost investment opportunities that would otherwise have been available from investors who would have, but for Orion's false statements to investors, invested in Eight Sleep.

101.     Orion has caused and will continue to cause immediate and irreparable injury to Eight Sleep, including injury to its business, reputation and goodwill, for which there is no adequate remedy at law. Eight Sleep is entitled to an injunction restraining Orion from engaging in further such acts and forbidding Orion from

advertising the Accused Product as containing features which Orion now claims the Accused Product does not have, from making false and deceptive statements regarding Eight Sleep or Orion to potential investors, and from making other false statements in connection with Orion's marketing, sales, and fundraising efforts.

102.    Eight Sleep is further entitled to restitution from Orion.

### COUNT IV: FALSE ADVERTISING
### (Pursuant to Cal. Bus. & Prof. Code § 17500)

103.    Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

104.    Orion has been and is engaged in making and disseminating "untrue or misleading" statements in violation of §§ 17500 *et seq.* of the California Business & Professions Code.

105.    Specifically, Orion knew, or in the exercise of reasonable care should have known, that their disseminated statement and omissions relating to the Accused Product were false or misleading.  Orion's false and/or misleading statements are detailed above.  *See* ¶¶ 97–101, *supra*.

106.    By reasons of Orion's conduct, Eight Sleep has suffered injury in fact and has lost money or property.

107.    Orion has caused and will continue to cause immediate and irreparable injury to Eight Sleep, including injury to its business, reputation and goodwill, for which there is no adequate remedy at law.  Eight Sleep is entitled to an injunction restraining Orion from engaging in further such acts and forbidding Orion from advertising the Accused Product as containing features which Orion now claims the Accused Product does not have, and from making other false statements in connection with the product.

108.    Eight Sleep is further entitled to restitution from Orion.

### COUNT V: FALSE ADVERTISING
### (Pursuant to Lanham Act § 43(a), 15 U.S.C. 1125(a))

109.    Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

110.    Orion has been and is engaged in making and disseminating in interstate commerce and in this District, advertisements that contain false and/or misleading statements of fact regarding the Accused Product.  Orion's false and/or misleading statements are detailed above.  *See* ¶¶ 97–101, *supra*.

111.    Upon information and belief, these false statements actually deceive, or have a tendency to deceive, a substantial segment of Eight Sleep's customers and potential customers.

112.    Orion's false and misleading advertising statements and omissions injure both consumers and Eight Sleep.

113.    These statements violate the Lanham Act § 43(a), 15 U.S.C. 1125(a).

114.    Orion has caused, and will continue to cause, immediate and irreparable injury to Eight Sleep, including injury to its business, reputation, and goodwill for which there is no adequate remedy at law.  As such, Eight Sleep is entitled to an injunction under 15 U.S.C. § 1116 restraining Orion from engaging in further such acts and forbidding Orion from advertising the Accused Product as containing features which Orion now claims the Accused Product does not have, and from making other false statements in connection with the product.

115.    Pursuant to 15 U.S.C. §1117, Eight Sleep is entitled to recover from Orion the damages sustained by Eight Sleep as a result of Orion's acts in violation of Lanham Act § 43(a), including lost profits associated with all sales made by Orion. Eight Sleep is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Orion's acts.

116.    Pursuant to 15 U.S.C. §1117, Eight Sleep is further entitled to recover from Orion the gains, profits and advantages that they have obtained as a result of

their acts.  Eight Sleep is at present unable to ascertain the full amount of the gains, profits and advantages Orion has obtained by reason of its acts.

117.    Pursuant to 15 U.S.C. §1117, Eight Sleep is further entitled to recover the costs of this action.  Moreover, Eight Sleep is informed and believes, and on that basis alleges, that Orion's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Eight Sleep to recover additional damages and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

118.    WHEREFORE, Eight Sleep respectfully requests the Court to enter judgment in favor of Eight Sleep and against the Defendants as to all claims asserted herein as follows:

A.    That Defendants infringed each of the Asserted Patents;

B.    That Defendants' infringement of each of the Asserted Patents has been willful;

C.    That Eight Sleep be awarded damages, including without limitation on the basis of a reasonable royalty and/or for lost profits, adequate to compensate it for Defendants' past infringement and any continuing or future infringement of the Asserted Patents until the date such judgment is entered, including pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

D.    That any award of damages be enhanced under 35 U.S.C. § 284 because of Defendants' willful infringement;

E.    That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that Eight Sleep be awarded the attorneys' fees, costs, and expenses incurred in connection with this action;

F.    That Eight Sleep be awarded a preliminary injunction;

G.  That Eight Sleep be awarded either a permanent injunction, or, at least, a compulsory ongoing license fee; and

H.  For temporary, preliminary and permanent injunctive relief prohibiting Orion, from engaging in false or misleading advertising with respect to the Accused Product and/or violating Lanham Act § 43(a), which relief includes but is not limited to removal of all false or misleading advertisements and corrective advertising to remedy the effects of Orion's false advertising.

I.  For an order requiring Orion to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of the Accused Product, including without limitation, the placement of corrective advertising and providing written notice to the public.

J.  That Orion be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Eight Sleep by using false, deceptive or misleading statements of fact that misrepresent the nature, quality and characteristics of the Accused Product.

K.  That Orion be adjudged to have unlawfully and unfairly competed against Eight Sleep under the laws of the State of California, Cal. Bus. & Prof. Code § 17200, *et seq*.

L.  That Orion be adjudged to have unfairly competed against Eight Sleep by engaging in false or misleading advertising under the laws of the State of California, Cal. Bus. & Prof. Code § 17500, *et seq*.

M.  That Eight Sleep be awarded damages and restitution sustained as a consequence of Orion's conduct

N.  That such damages and profits be trebled and awarded to Eight Sleep as a result of Orion's willful, intentional and deliberate acts in violation of Lanham Act § 43(a).

1      O.     That Eight Sleep be awarded such other and further relief at law or equity

2              as this Court deems just and proper.

3                      **DEMAND FOR JURY TRIAL**

4      119.    Eight Sleep hereby demands a jury trial on all issues so triable

5   pursuant to Fed. R. Civ. P. 38 and L.R. 38-1.

Dated: March 6, 2026     **WILSON SONSINI GOODRICH & ROSATI**
                         **Professional Corporation**

                         By:   */s/ Ryan R. Smith*
                               Ryan R. Smith
                               Naoya Son
                               Alex Miller

Dated: March 6, 2026     **QUINN EMANUEL URQUHART &**
                         **SULLIVAN, LLP**

                         By:   */s/ Alex Spiro*
                               Alex Spiro
                               Steven Cherny
                               Patrick D. Curran
                               Nicola Felice

                         *Attorneys for Plaintiff*
                            *EIGHT SLEEP INC.,*


## SIGNATURE ATTESTATION

I, Ryan R. Smith, attest that the other signatories to this document concur in the filing's content and have authorized the filing.


    */s/ Ryan R. Smith*
    Ryan R. Smith