Amy H. Candido (SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
**SIMPSON THACHER & BARTLETT LLP**
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

*Counsel for Defendants Orion Longevity Inc.
and Blue Fuzion Group Ltd.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| EIGHT SLEEP INC.,<br><br>               Plaintiff,<br><br>     v.<br><br>ORION LONGEVITY INC., and BLUE FUZION GROUP LTD.<br><br>               Defendants. | Case No. 2:26-cv-02460-SB-KS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Hon. Stanley Blumenfeld, Jr.<br>Date: May 1, 2026<br>Time: 8:30 a.m.<br>Courtroom: 6C |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT ON May 1, 2026 at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Stanley Blumenfeld, Jr., in Courtroom 6C of the United States District Court for the Central District of California, Western Division, located at 350 West First Street, Los Angeles, CA 90012, Defendants Orion Longevity Inc. ("Orion") and Blue Fuzion Group Ltd. ("BFG") (collectively "Defendants") will move and hereby move to dismiss all Counts of Plaintiff Eight Sleep Inc.'s ("Plaintiff" or "Eight Sleep") Complaint (Dkt. No. 1). Under Rule 12(b)(2), Defendant BFG also moves to dismiss this action for lack of personal jurisdiction.

Defendants' Motion is based on this Notice of Motion and the Memorandum of Points and Authorities submitted herewith, the Declaration of Jeff Nardinelli filed concurrently herewith, all papers cited therein, the pleadings and other papers on file in this action, and any further papers, evidence, or argument as may be submitted to the Court in connection with this Motion.

This Motion is further made following the conference of counsel pursuant to L.R. 7-3, which took place via telephonic conference on March 24, 2026 with a further conference held March 30, 2026. Defendants understand from these discussions that Plaintiff opposes the relief requested herein.

Dated: March 31, 2026

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP


By: */s/ Amy Candido*

Amy H. Candido (CA SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
**SIMPSON THACHER & BARTLETT LLP**
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
Aaron L. Plesset (SBN 352104)
aplesset@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

Mona Z. Hanna (SBN 131439)
mhanna@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Ave, 10th Floor
Irvine, California 92614
Phone: (714) 557-7990
Fax: (714) 557-7991

*Counsel for Defendants*
*Orion Longevity Inc. and Blue Fuzion Group Ltd.*

Amy H. Candido (SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
**SIMPSON THACHER & BARTLETT LLP**
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

*Counsel for Defendants Orion Longevity Inc.
and Blue Fuzion Group Ltd.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| EIGHT SLEEP INC., <br><br> Plaintiff, <br><br> v. <br><br> ORION LONGEVITY INC., and BLUE FUZION GROUP LTD. <br><br> Defendants. | Case No. 2:26-cv-02460-SB-KS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> Hon. Stanley Blumenfeld, Jr. <br> Date: May 1, 2026 <br> Time: 8:30 a.m. <br> Courtroom: 6C |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................................... 1

II.  LEGAL STANDARDS ............................................................................... 3

III.  ARGUMENT ............................................................................................. 3

   A.  The '339 Claims Are Invalid Under 35 U.S.C. § 101 (Count I). ........ 4

      1.  Step One: '339 Claim 1 Is Directed To The Abstract Idea Of Collecting And Transmitting Data To Control A Device. ................................................................................... 4

         a.  Claim 1 Recites Data Collection, Processing, And Transmission ................................................................. 4

         b.  The Asserted Patents Merely Automate A Manual Process Using Generic Computers ................................ 9

      2.  Step Two: Claim 1 Has No Inventive Concept. ........................ 9

      3.  Dependent Claims 2-30 Are Invalid. ...................................... 11

   B.  The '240 Claims Are Invalid Under 35 U.S.C. § 101 (Count II). ...... 12

   C.  Defendants Did Not Waive Their § 101 Defense. ........................... 14

   D.  Eight Sleep's UCL And FAL Claims Lack Standing (Counts III-IV). ............................................................................................... 15

   E.  Eight Sleep's UCL And FAL Claims Should Be Dismissed Because Eight Sleep Has An Adequate Remedy At Law (Counts III & IV). ...................................................................................... 16

   F.  Eight Sleep Fails To State A Claim Under The UCL, FAL Or Lanham Act (Counts III-V). ............................................................. 17

      1.  Product Comparison Chart ...................................................... 19

      2.  Multiple Comfort Options / Dual Zone Smart Alarm ............. 19

      3.  Auto/AI Powered Temperature Adjustment ............................ 19

      4.  Testimonials ............................................................................ 20

      5.  Investor Statements ................................................................ 20

   G.  The Court Does Not Have Personal Jurisdiction Over BFG. ............. 21

IV.  CONCLUSION ......................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016) ........................................................................8, 11

*Alice v. CLS Bank Int'l,*
573 U.S. 208 (2004)........................................................................................3, 10, 11

*Bd. of Trust. Leland Stanford v. Chinese Univ.,*
860 F.3d 1367 (Fed. Cir. 2017) ...............................................................................14

*Beteiro, LLC v. DraftKings Inc.,*
104 F.4th 1350 (Fed. Cir. 2024) ................................................................................9

*Bodenburg v. Apple Inc.,*
146 F.4th 761 (9th Cir. 2025) ..................................................................................20

*Botanic Tonics, LLC v. Shot of Joy,*
LLC, 2024 WL 2209773 (C.D. Cal. Apr. 1, 2024)..................................................18

*Brit. Telecomms. PLC v. IAC/InterActiveCorp,*
381 F.Supp.3d 293 (D. Del. 2019),
*aff'd,* 813 F.App'x 584 (Fed. Cir. 2020) ...................................................................6

*Broadband iTV, Inc. v. Amazon.com, Inc.,*
113 F.4th 1359 (Fed. Cir. 2024) ................................................................................9

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) ..........................................................................11, 12

*Caldwell v. Nordic Nats., Inc.,*
709 F.Supp.3d 889 (N.D. Cal. 2024)........................................................................17

*CareDx, Inc. v. Natera, Inc.,*
40 F.4th 1371 (Fed. Cir. 2022) .................................................................................12

*Celgard, LLC v. SK Innovation Co.,*
792 F.3d 1373 (Fed. Cir. 2015) ................................................................................21

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
935 F.3d 1341 (Fed. Cir. 2019) ........................................................................2, 8, 9

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019) .......................................................................2, 3, 8, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) ................................................................................11

*Credit Acceptance Corp. v. Westlake Servs.,*
859 F.3d 1044 (Fed. Cir. 2017) ..................................................................................4

DEFENDANTS' MOTION TO DISMISS

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...............................................................................17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...........................................................................10

*Dyson, Inc. v. Garry Vacuum, LLC*,
  2010 WL 11595882 (C.D. Cal. July 19, 2010). ...................................................18

*Eight Sleep Inc. v. Orion Longevity Inc., et al.*,
  Case No. 2:25-09685-SB-RAO (C.D. Cal.) ("*Eight Sleep I*") .............................14

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) .............................................................................3

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .............................................................................5

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .............................................................................9

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
  69 F.4th 665 (9th Cir. 2023) ................................................................................17

*Evolutionary Intelligence LLC v. Sprint Nextel Corp.*,
  677 F.App'x 679 (Fed. Cir. 2017) .........................................................................7

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ...............................................................................15

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
  839 F.App'x 534 (Fed. Cir. 2021) ..................................................................5, 7, 9

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) .............................................................................12

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ....................................................................6, 7, 10

*Interval Licensing v. AOL*,
  896 F.3d 1335 (Fed. Cir. 2018) .............................................................................6

*Jaiyeola v. T-Mobile US*,
  2024 WL 1421283 (N.D. Cal. Apr. 2, 2024)........................................................19

*Kachuck Enters. v. Mission Produce, Inc.*,
  2026 WL 216475 (C.D. Cal. Jan. 22, 2026) ........................................................15

*Key v. Qualcomm Inc.*,
  129 F.4th 1129 (9th Cir. 2025) ............................................................................15

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ........................................................................................15

DEFENDANTS' MOTION TO DISMISS

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)..................................................................................18, 19

*Mamigonian v. Biggs*,
   710 F.3d 936 (9th Cir. 2013) ............................................................................14

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
   566 U.S. 66 (2012) ............................................................................................12

*McCracken v. KSF Acquisition Corp.*,
   2023 WL 5667869 (C.D. Cal. Apr. 4, 2023) .....................................................17

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) ..........................................................................15

*Orff v. United States*,
   358 F.3d 1137 (9th Cir. 2004) ..........................................................................14

*Pop v. Lulifama.com LLC*,
   2023 WL 4661977 (M.D. Fla. July 20, 2023), *aff'd on other grounds*, 145
   F.4th 1285 (11th Cir. 2025) ..............................................................................20

*Redbox Automated Retail, LLC v. Buena Vista Home Entertainment, Inc.*,
   399 F.Supp.3d 1018 (C.D. Cal. 2019) ..............................................................16

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999).........................................................................................14

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ..........................................................................17

*SAP Am. Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) .......................................................................3, 7

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .......................................................................16, 17

*Sonos, Inc. v. Lenbrook Industries Ltd.*,
   2020 WL 5032924 (C.D. Cal. Jan. 27, 2020).....................................................21

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ..........................................................................4

*Synthes (U.S.A.) v. GM Dos Reis Jr. Ind. Com. de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009) ........................................................................21

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
   2007 WL 1288199 (N.D. Cal. Apr.30, 2007).....................................................15

*VBS Dist., Inc. v. Nutrivita Labs., Inc.*,
   811 F.App'x 1005 (9th Cir. 2020).....................................................................18

*Williams & Cochrane, LLP v. Rosette*,
   2024 WL 1651666 (9th Cir. Apr. 17, 2024)......................................................20

DEFENDANTS' MOTION TO DISMISS

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
848 F.3d 1346 (Fed. Cir. 2017) ...............................................................................21

**Statutes**

Fed. R. Civ. P. 12(h)(1) ...............................................................................26

**Other Authorities**

*FTC's Endorsement Guides: What People Are Asking*, FED. TRADE COMM'N
(June 2023), https://www.ftc.gov/business-guidance/resources/ftcs-
endorsement-guides-what-people-are-asking#about ...........................................25

DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

The asserted patents claim the concept of using a computer to operate a heating pad when someone is in bed. That is not a patentable invention. Rather, it is a conventional, computer-driven way to automate what humans have always done manually. The claims replace manual human operation with computer signaling. Instead of a user pressing buttons to turn on the heating device and set its temperature, the patents use computer instructions to do the same thing.

Eight Sleep does not claim a better way to heat a bed. It claims the idea of using a computer to automate heating a bed. The specification admits as much. It cites electric blankets, heating pads and bed warmers, noting that an electric blanket in particular "may be used to pre-heat the bed before use or to keep the occupant warm while in bed." '339 patent at 2:5-6.[1] Then, it identifies the "problem" to be solved as users having to "remember" to turn on the blanket, and "then manually turn it on." *Id.* at 2:7-8. The '339 patent's solution is to send a computer instruction—a "control signal"—that can turn on the "bed device" and set its temperature when the user gets in bed or at "bedtime," then further adjust the temperature based on "biological signal" data received by standard sensors.

The '240 patent claims the same concept with one variation: instead of one user, there are two, each occupying a separate "zone" of the bed with independent temperature control. This is easily achieved by dividing the "heating coil … into two zones" each receiving its own control signal. '339 patent at 6:58-67. Sending two signals instead of one is analogous to two people each with a heating pad; it does not transform an abstract idea into patentable subject matter.

Moreover, the claimed "control signal" is not a technological breakthrough specific to sleep systems. It is an abstract instruction that can control any household appliance, including "an alarm, a coffee machine, a lock, a thermostat, a bed device,

---

[1] Because the patents' specifications are substantively identical, this brief cites to the '339 specification unless otherwise noted.

a humidifier, or a light." '339 patent at 10:50-61.

The specification describes the purported inventions in terms of gathering and analyzing information, which the Federal Circuit has repeatedly found to constitute abstract patent ineligible subject matter. The "Technical Field" is "human biological signal gathering and analysis." '339 patent at 1:33-35. The invention "Summary" begins: "Introduced are methods and systems for: gathering human biological signals, such as heart rate, breathing rate, or temperature; analyzing the gathered human biological signals; and controlling home appliances based on the analysis." *Id.* at 2:14-17.

Under step one of the governing *Alice* framework, the claims are directed to the abstract idea of collecting data, processing it to generate an instruction, and transmitting the instruction to a device—a pattern the Federal Circuit has repeatedly held ineligible. At step two, there is no inventive concept because the claims recite only generic sensors, networks, and processors operating in conventional ways, as repeatedly confirmed by the specification.

Fundamentally, there is no patent protection over claims directed to collecting, analyzing, and transmitting information. This includes claims that collect, analyze, and transmit data to control a physical device. The Federal Circuit has invalidated claims reciting a wireless controller that transmits status signals to control a "movable barrier" such as a garage door, *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019), and similarly claims covering computer signals that activate electric-car chargers. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019).

The claims here are not appreciably different. The asserted patents collect information about a user, analyze the information in unremarkable and undescribed ways to determine when to heat or cool the bed, and send a signal to execute the heat/cool instructions. The claims are invalid under § 101 and should be dismissed.

Eight Sleep asserts three additional causes of action for false advertising. These claims fail for lack of standing, for failure to demonstrate an inadequate remedy at law, and because each alleged false statement is either not alleged to be false or misleading, not alleged to have proximately harmed Eight Sleep, or both.

## II.   LEGAL STANDARDS

The Supreme Court's two-step *Alice* test governs patent ineligibility under § 101. *Alice v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2004). At step one, the court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id.* If the claims are directed to an abstract idea, the court advances to step two to look to the elements of the claim "both individually and as an ordered combination" to determine whether there is an "inventive concept" sufficient to "transform" the nature of the claim into a patent-eligible subject matter. *Id.* at 221.

Patent eligibility under 35 U.S.C. § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) motion." *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *ChargePoint*, 920 F.3d at 765-66 (affirming Rule 12(b)(6) dismissal). The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020).

## III.   ARGUMENT

The claims of U.S. Patent Nos. 12,377,240 (Dkt. No. 1-1, the "'240 patent") and 12,370,339 (Dkt. No. 1-2, the "'339 patent") (collectively, the "Asserted Patents") are invalid because they merely collect, analyze, and transmit data to automate the manual activity of operating an electric blanket or other bed heater.

**A.      The '339  Claims Are Invalid Under 35 U.S.C. § 101 (Count I).**

**1.      Step One: '339  Claim 1 Is Directed To The Abstract Idea Of Collecting And Transmitting Data To Control A Device.**

Claim 1—the only independent claim—automates what users have always done by hand: after getting in bed, turn on a heating device and adjust the temperature.  The claim turns on the heating device either after detecting the user's presence in bed or determining that "bedtime" has arrived.  Either way, instead of pressing a button to start the heating device, a computer sends a signal to do it.  That is not a patentable improvement; it is "mere automation of manual processes using generic computers." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (holding invalid claims that "permit automation of previously manual processing of loan applications").

*a.      Claim 1 Recites Data Collection, Processing, And Transmission*

"The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016).  Viewed as a whole, claim 1 does only three things: (1) obtain data about the user, (2) process that data to generate instructions, and (3) send the instructions to the bed device.  The claim reads in full (bracketed letters added):

1. A method for operating a bed device, the method comprising:

[a] ***obtaining*** at least one first biological signal from a user, the at least one first biological signal indicating a presence of the user on the bed device;

[b] ***determining a first control signal*** and a time to send the first control signal to the bed device, wherein the first control signal comprises a first instruction to turn the bed device on or off and a second instruction to set a temperature of the bed device to a first temperature, and wherein the time to send the first control signal to the bed device is based on a bedtime associated with the user, the presence of the user, or both;

4      No. 2:26-cv-02460-SB-KS
DEFENDANTS' MOTION TO DISMISS

[c] ***sending the first control signal*** to the bed device at the determined time to turn the bed device on or off and set the bed device to the first temperature;

[d] ***obtaining***, while the bed device is turned on, at least one second biological signal from the user, wherein the at least one second biological signal is different from the at least one first biological signal;

[e] ***determining a second control signal***, wherein the second control signal comprises an instruction to the bed device to adjust the temperature of the bed device to a second temperature in response to the obtained at least one second biological signal; and

[f] ***sending the second control signal*** to the bed device to adjust the temperature of the bed device to the second temperature.

(1)    The "Obtaining" Steps

Steps [a] and [d] recite collecting information ("biological signals") about the user. Collecting information is abstract: "collecting information, including when limited to particular content (which does not change its character as information)," falls "within the realm of abstract ideas." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). That the information here concerns biological signals rather than, say, electrical grid data does not change the analysis. *See id.* (noting the irrelevance of "limit[ing] to particular content"); *see also iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F.App'x 534, 536 (Fed. Cir. 2021) ("We have routinely held that claims directed to gathering and processing data are directed to an abstract idea.").

The specification confirms the abstract nature of obtaining data. The sensor can sense just about anything about the user, from anywhere. It can monitor any of "the bio signals associated with a user, such as the heart rate, the breathing rate, the temperature, motion, or presence." '339 patent at 4:65-67. And it "can be built into the mattress," "part of a bed pad device," or "part of any other piece of furniture, such as a rocking chair, a couch, an armchair etc." *Id.* at 5:17-23.

### (2)    The "Control Signal" Steps

Steps [b] and [e] generate a "control signal," which is an instruction telling the bed device to turn on and/or adjust its temperature.  The claimed control signals are simply the processor's output after receiving data: "the processor ... determines, based on the bio signals associated with said user, historical bio signals associated with said user, user-specified preferences, exercise data associated with said user, or the environment properties received, a control signal, and a time to send said control signal to a bed device." '339 patent at 5:9-14.  There is no further explanation for how to generate the control signals.  *See Interval Licensing v. AOL*, 896 F.3d 1335, 1343 (Fed. Cir. 2018) (finding claims abstract that lack "the specificity required to transform a claim from one claiming a result to one claiming a way of achieving it").

The only limit on [b] is the on/off time must be based on either the user being in bed or the user's "bedtime."  Again, this mimics standard human activity, and does so with rudimentary techniques.  Any standard temperature sensor can detect the user's presence in bed with "substantially 100% accuracy."  '339 patent at 5:26-31.  Bedtime is determined with elementary arithmetic such as "the average bedtime the user went to sleep for each day of the week."  *Id.* at 8:7-12.

Tailoring a bedtime to a user does not save the claim from abstraction because personalization based on user data is still abstract.  A notable opinion from Judge Bryson, sitting by designation, surveyed several cases all holding that tailoring a product based on user information is an abstract idea—then held invalid patents directed to "customization of information based on the location of the user."  *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 381 F.Supp.3d 293, 312 (D. Del. 2019), *aff'd*, 813 F.App'x 584 (Fed. Cir. 2020).  Similarly, in *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015), the Federal Circuit held invalid claims directed to tailoring information displayed on a website based on the time of day: "Tailoring information based on the time of day of viewing is also an

abstract, overly broad concept long-practiced in our society." *Id.* at 1370; *see also Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, 677 F.App'x 679 (Fed. Cir. 2017) (claims invalid because directed to "methods for allowing computers to process data that are dynamically modified based on external-to-the-device information, such as location and time").

Nor does step [e]'s use of a "biological signal" to determine a target temperature setting save the claim from abstraction.  Again, the claim does not specify how the biological signal is used, only that it *is* used as an input to generate the control signal.  Claims directed to "selecting certain information," then "analyzing it" and "reporting or displaying the results of the analysis" are also abstract.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *see also iLife*, 839 F.App'x at 536 (claim abstract where "processor generates tolerance indicia in response to" determination based on sensor data).

### (3)   The "Sending" Steps

Steps [c] and [f] send the computer "control signal" to the device to control the device, replacing the manual control that the specification distinguishes.  '339 patent at 2:5-9 (discussing manual operation).  The specification confirms the control signal is a generic instruction that can control any household appliance in response to data received:

> For example, the system detects that the user has fallen asleep, the system sends a control signal to the lights to turn off, to the locks to engage, and to the thermostat to lower the temperature …. [I]f the system detects that the user has woken up and it is morning, the system sends a control signal to the coffee machine to start making coffee.

'339 patent at 10:54-61; *id.* at 2:27-30 (appliance can be a "bed device … a thermostat, a light, a coffee machine, or a humidifier"); *id.* at 10:52-54 (appliance can be "an alarm, a coffee machine, a lock, a thermostat, a bed device, a humidifier,

or a light").

Transmitting a signal to control a device is abstract. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (holding invalid claims directed to "wirelessly communicating … content" without specifying any "particular way of performing that function").  Eight Sleep cannot escape this conclusion by pointing to the "bed device" limitation because limiting a claim to a specific environment does not change the abstract nature of the claim.  "The Supreme Court and [the Federal Circuit] have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Id.* at 1259.

*ChargePoint* is analogous.  There, the patents related to charging stations for modern electric vehicles. *ChargePoint*, 920 F.3d at 763.  To promote efficient use of energy in the car-charging context, the claims recited a "control device to turn electric supply on and off" to an electric car charger, which was in turn controlled by a separate "controller" acting on data received from a server. *Id.* at 766.  The Federal Circuit affirmed dismissal under Rule 12(b)(6), holding the claims were directed to the "abstract idea of network communication for device interaction." *Id*. at 770.  Just as a car charging station needs to pull electricity from the grid only when a car plugs in, an electric blanket requires activation only when a user is in bed.  Substitute "bed heater" for "car charger" and the analysis is identical: when a user gets into bed, a controller sends a signal to activate the heater.

Other cases confirm the point.  In *Chamberlain*, the Federal Circuit held claims over using signals to control a device were abstract. *Chamberlain*, 935 F.3d at 1348. The patent involved a "controller" of a "movable barrier" (such as a garage door). *Id.* at 1345.  As here, "sensors" were used to gather data used to transmit a "status condition signal" describing the barrier's status. *Id.*  The Court ruled the claims invalid as "directed to the wireless communication of status information using off-

the-shelf technology for its intended purpose." *Id.* at 1348. Similarly, in *iLife*, the claims recited a "sensor" to detect body movement and a "processor" to analyze the sensor data to determine whether the body movement was within "tolerance," where the "tolerance indicia" was then transmitted. *iLife*, 839 Fed. App'x at 536. The Federal Circuit held the claims invalid because they amounted to only a system for "sensing information, processing the collected information, and transmitting processed information." *Id.*

> ### b. The Asserted Patents Merely Automate A Manual Process Using Generic Computers

Taken in combination, the claim elements automate the familiar process of climbing into bed and using a heating device, a "fundamental practice long prevalent." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (cleaned up). The specification identifies the "problem" as requiring the user "to remember to manually turn on the blanket, and then manually turn it on." '339 patent at 2:7-8; *see ChargePoint*, 920 F.3d at 767 (holding that the "directed to" inquiry may look to the specification to "understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention"). The claims, in turn, recite using computer signals to "remember" to turn on the blanket and then turn it on.

Further, claim 1 does not include any "improvement in computer capabilities." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Where, as here, "computers are invoked merely as a tool," "the analysis proceed[s] to the second step of the *Alice* inquiry." *Id.*

### 2. Step Two: Claim 1 Has No Inventive Concept.

At step two, the question is whether the claims recite anything "significantly more" than an abstract idea sufficient to "transform" the claim into patent-eligible subject matter. *ChargePoint*, 920 F.3d at 773. Automation alone does not suffice. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1370 (Fed. Cir. 2024)

("Automation of an abstract idea does not constitute an inventive concept."). Nor does implementing an abstract idea with "generic computer elements performing generic computer tasks." *Intell. Ventures I*, 792 F.3d at 1368. Indeed, "after *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).

Claim 1 does not recite any specialized hardware or software, and the specification confirms that every method step is carried out with generic computer components. Far from describing any inventive breakthrough, the specification is emphatic that every step of the claimed method is performed using standard, known techniques. *See, e.g.*, '339 patent at 15:22-18:62. In particular:

The sensors that gather data can be "[a]ny number of user sensors" or "any number of environment sensors," and "can be built into the mattress," "can be part of a bed pad device," or "can be a part of any other piece of furniture, such as a rocking chair, a couch, an armchair." *Id.* at 5:20-23.

After obtaining the data, sensors communicate the data to a standard "processor" via "a computer bus" or by a "communication network." *Id.* at 5:37-45. For the network, the specification lists virtually every known protocol including "LAN," "WAN," "the Internet," "WiFi," "Bluetooth," "LTE," "CDMA," "WiMAX," "satellite," or "any combination thereof." *Id.* at 5:45-6:3. The processor is "any type of microcontroller, or any processor in a mobile terminal, fixed terminal, or portable terminal"—in fact, the specification lists 24 device types ranging from "mobile handset" to "desktop computer" to "electronic book device," plus "peripherals of these devices, or any combination thereof." *Id.* at 6:4-15.

Finally, the ordered combination of elements adds nothing inventive. *See Alice*, 573 U.S. at 217. The claim recites a sequence anyone would expect: detect a user in bed (or the arrival of "bedtime"), activate the heater, then adjust temperature

based on feedback.  This is not "inventive."  This is the predictable application of conventional technology to automate a manual task.  *See, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018); *Alice*, 573 U.S. at 221-22.  The '339 claims fail *Alice* step two.

### 3.    Dependent Claims 2-30 Are Invalid.

The dependent claims add nothing of patentable significance.  Each recites only "well-known, routine, and conventional functions."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

Design choices.  Many dependent claims specify which sensors, signals, or device forms to use—unpatentable "choices from within the range of existing content or hardware."  *Affinity Labs*, 838 F.3d at 1264.  Claims 2-3 and 14-15 specify known sensor types (a piezo or temperature sensor).  Claim 4 specifies the form of the bed device (a mattress or mattress cover).  Claims 5-8 specify how to determine "bedtime" (*e.g.*, set by the user, an average etc.).  Claims 9-13 specify which biological signal to use (heart rate, breathing rate, temperature, or motion), while claims 22-24 recite a "compound" biological signal filtered using known techniques.  Claims 25-27 set temperature based on environmental data like room temperature or humidity, detected by a known environmental sensor.  None of these choices transforms the abstract idea into patentable subject matter.

Historical data.  Claims 17-21 base temperature setting on a "historical temperature range" for the user.  Using historical data is not patent-eligible.  *BSG Tech*, 899 F.3d at 1286 (invalidating patents "directed to the abstract idea of considering **historical usage information** while inputting data") (emphasis added).

Sleep phase detection.  Claims 16 and 30 use the biological signal to determine "sleep phase," but disclose no technique for doing so.  This is just data analysis, and no more than "applying conventional diagnostic methods to observe a natural

correlation," which "is not patent eligible subject matter." *CareDx, Inc. v. Natera, Inc.*, 40 F.4th 1371, 1378 (Fed. Cir. 2022) (summarizing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 82 (2012)).

Data storage. Claim 28 recites storing the biological signal(s) in a database, a purely abstract idea. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (invalidating claims directed to "classifying and storing" information "in an organized manner").

System claim. Claim 29 reads in its entirety: "A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1." Each method step can be carried out by a computer "of any applicable known or convenient type." '339 patent at 15:34-35. Claim 29 is a further indictment of claim 1, because it confirms that claim 1 "only performs an abstract idea on a generic computer" thus is "directed to an abstract idea at step one." *BSG Tech*, 899 F.3d at 1285.

### B.   The '240 Claims Are Invalid Under 35 U.S.C. § 101 (Count II).

The '240 patent shares the same specification as the '339 patent and claims the same abstract concept—collecting data, generating a control signal, and sending it to a bed device. It also has only one independent claim, which differs from '339 claim 1 only by involving two users occupying two "zones" of the bed, each with an independent temperature setting:

1. A method for operating a bed device, the method comprising:

[a] ***obtaining at least one first biological signal*** from a first user, the at least one first biological signal indicating a presence of the first user on a first zone of the bed device;

[b] ***obtaining at least one second biological signal*** from a second user, the at least one second biological signal indicating a presence of the second user on a second zone of the bed device adjacent the first zone;

No. 2:26-cv-02460-SB-KS
DEFENDANTS' MOTION TO DISMISS

[c] *generating a plurality of control signals* for the bed device in response to the obtained at least one first biological signal and the at least one second biological signal, the plurality of control signals comprising (1) a first instruction to set the temperature of the first zone to a first temperature and (2) a second instruction to set the temperature of the second zone to a second temperature that is different from the first temperature, wherein the first instruction is based at least in part on a first user-specified preference of the first user and the second instruction is based at least in part on a second user-specified preference of the second user; and

[d] *sending the plurality of control signals* to at least one respective temperature control device associated with the bed device such that the first and second zones are heated or cooled differently according to the plurality of control signals.

Under the *Alice* step one analysis, dual-zone control is just another implementation of the abstract idea. Instead of unified temperature control over the entire bed, the claim separately heats two zones of the bed. The mechanism is the same: collect user information and respond by adjusting a temperature setting. The abstract idea of using computer signals to control a device does not become concrete merely because signals are sent to two zones instead of one.

The specification confirms dual-zone control is carried out using basic electrical engineering: "the heating coil … is divided into two zones … each corresponding to one user of the bed…. To achieve independent heating of the two zones …, the power supply associated with the heating coil … is divided into two zones, each power supply zone corresponding to a single user zone." '240 patent at 6:58-67.

The '240 patent fares no better at *Alice* step two. The specification, shared with the '339 patent, confirms that every component is generic. *See supra* Section III.A.2. The ordered combination (detect two users, send two signals, adjust two temperatures) is the predictable duplication of the same abstract process. Claim 29 mirrors claim 29 of the '339 patent, confirming that a generic processor and memory can perform the entire method of '240 patent claim 1.

The remaining dependent claims mirror those of the '339 patent: design choices about which biological signals to use, which sensors to use, and the form of the bed device (claims 2-10); using historical data (claims 11-18, 21-23); using environmental signals (claims 19-20, 24-26); subzones (claims 27-28); and data storage (claim 30).

## C.    Defendants Did Not Waive Their  § 101 Defense.

Eight Sleep has suggested Defendants waived their § 101 defense by not including it in invalidity contentions served in a ***different*** case that was dismissed for lack of subject matter jurisdiction—*Eight Sleep Inc. v. Orion Longevity Inc., et al.*, Case No. 2:25-09685-SB-RAO (C.D. Cal.) ("*Eight Sleep I*").   Eight Sleep is wrong. First, because *Eight Sleep I* was dismissed for lack of subject matter jurisdiction, "jurisdiction [was] lacking at the outset, [and] the district court ha[d] no power to do anything with the case except dismiss." *Mamigonian v. Biggs*, 710 F.3d 936, 942 (9th Cir. 2013) (quoting *Orff v. United States*, 358 F.3d 1137, 1149 (9th Cir. 2004)). The Court and the parties agreed at a hearing in *Eight Sleep I* to follow its schedule in this new action; but as a legal matter, other activities in *Eight Sleep I*, such as the parties' contentions, "are a nullity." *Bd. of Trust. Leland Stanford v. Chinese Univ.*, 860 F.3d 1367, 1374-75 (Fed. Cir. 2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).  A new case requires service of new contentions.

Second, after *Eight Sleep I* was dismissed, Eight Sleep served a new complaint with modified infringement allegations.  On March 20, two weeks after that complaint was filed (and less than a month after serving its invalidity contentions in *Eight Sleep I*), Defendants notified Plaintiff that they intended to raise a § 101 defense in this Rule 12 motion, the earliest opportunity to do so in this case.

Finally, even if Defendants' invalidity contentions in a dismissed case were somehow operative here, Defendants should be given leave to amend.  Allowing amendment at this stage causes no prejudice and accords with the Ninth Circuit's

policy of "extreme liberality" in granting leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 WL 1288199, at \*2 (N.D. Cal. Apr.30, 2007) (permitting amendment of invalidity contentions early in the case to "promote the fair resolution of [the case] without causing any prejudice").

**D.    Eight Sleep's UCL And FAL Claims Lack Standing (Counts III-IV).**

Eight Sleep's claims alleging false advertising in violation of the UCL (Count III) and FAL (Count IV) must be dismissed because they lack statutory standing. *Kachuck Enters. v. Mission Produce, Inc.*, 2026 WL 216475, at \*5-6 (C.D. Cal. Jan. 22, 2026). A UCL or FAL plaintiff must have "suffered an injury in fact and has lost money or property as a result of" the alleged injury. *See id.* at \*4 (citing Cal. Bus. & Prof. Code §§ 17204, 17535; *Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018) (noting the UCL and FAL standing requirements are identical)). The California Supreme Court thereafter affirmed that the language "as a result of" imposes a causation requirement, meaning that a plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kachuck*, 2026 WL 216475, at \*5 (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)).

Here, Eight Sleep's UCL and FAL claims based on Defendants' allegedly false and misleading advertising fail because Eight Sleep has not alleged that *it* relied on *any* of Defendants' statements—it alleges only that third party potential customers may have. In *Key v. Qualcomm Inc.*, the Ninth Circuit recently reaffirmed the California Supreme Court's holding in *Kwikset*, noting that the "plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." 129 F.4th 1129, 1141 (9th Cir. 2025) (quoting *Kwikset*, 51 Cal. 4th at 327, n.10). Eight Sleep does not

15                          No. 2:26-cv-02460-SB-KS
DEFENDANTS' MOTION TO DISMISS

allege reliance on Defendants' statements; thus, its UCL and FAL claims lack standing and should be dismissed. *See also, e.g.. Redbox Automated Retail, LLC v. Buena Vista Home Entertainment, Inc.*, 399 F.Supp.3d 1018, 1034 (C.D. Cal. 2019).

Even if Eight Sleep's UCL and FAL claims could be based on the alleged reliance of third-party consumers, Eight Sleep has failed to adequately plead such reliance.[2] Like the plaintiff in *Kachuck*, Eight Sleep does "not offer any examples of consumers who have actually seen and relied on the alleged misrepresentations, or any other facts or allegations supporting their generalized assertions regarding consumer reliance." 2026 WL 216475, at *6. Instead, Eight Sleep broadly alleges that Defendants have made false or misleading statements to "a reasonable consumer," Complaint ¶¶97-98, "the public," *id.* ¶98, "[c]onsumers," *id.* ¶98, ¶112, "actual investors and potential investors," *id.* ¶¶99-101, and "existing, former and potential customers," *id.* ¶100, ¶111. Throughout the Complaint, these consumers and investors remain anonymous and there are no allegations bearing on whether any purported misrepresentation was actually material to any individual consumer's purchase decision or any individual investor's investment decision, let alone whether any consumer or investor was even exposed to it. *See Kachuck*, 2026 WL 216475, at *6, n.8. Eight Sleep has failed to allege UCL and FAL standing under any standard.

### E. Eight Sleep's UCL And FAL Claims Should Be Dismissed Because Eight Sleep Has An Adequate Remedy At Law (Counts III & IV).

Eight Sleep must establish that it lacks an adequate remedy at law before it is entitled to secure equitable remedies under the UCL and FAL. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL … in a

---

[2] This has been characterized as the "minority view." *Kachuck*, 2026 WL 216475, at *5.

diversity action"). Eight Sleep's UCL, FAL and Lanham Act claims are all based on the same allegedly false and misleading advertising and allege the same harms. Eight Sleep seeks equitable remedies, such as restitution and injunctive relief, for its UCL and FAL claims, *see* Complaint ¶¶101-102, 107-108, but has not established the unavailability of an adequate remedy at law. To the contrary, it claims it is entitled to the "full extent of the monetary damages it has suffered by reason of Orion's acts" as damages under the Lanham Act. *Id.* ¶115. There is no plausible scenario in which Eight Sleep would prevail on its false advertising claims and be entitled to equitable relief on its UCL and FAL claims but would not be entitled to damages under the Lanham Act. *See, e.g.*, *McCracken v. KSF Acquisition Corp.*, 2023 WL 5667869, at *8 (C.D. Cal. Apr. 4, 2023) (Blumenfeld, J.).

> **F.** **Eight Sleep Fails To State A Claim Under The UCL, FAL Or Lanham Act (Counts III-V).**

Eight Sleep fails to state actionable claims for unfair competition and false advertising because the Complaint does not include even a single non-conclusory allegation that Defendants made a statement that was "literally false, either on its face or by necessary implication," or "literally true but likely to mislead or confuse consumers." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th Cir. 2023); *see Caldwell v. Nordic Nats., Inc.*, 709 F.Supp.3d 889, 897 (N.D. Cal. 2024) ("[T]o state a viable claim under [the FAL or UCL], Plaintiffs must allege facts showing that the advertisement in question is misleading to a reasonable consumer."). Because Eight Sleep's false-advertising claims sound in fraud, they are subject to Rule 9(b)'s heightened pleading standard. *See, e.g., Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Thus, Eight Sleep must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). The plaintiff must

also "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," judged under a "proximate-cause" standard. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

Eight Sleep's conclusory allegations fall far short of the mark. Despite adding a few new allegations to its largely recycled contentions from *Eight Sleep I*, Eight Sleep still has not identified even one purported misstatement with particularity, by alleging (a) when, where and to whom it was made, (b) how it was false and misleading *and* (c) what economic injury, if any, it proximately caused.[3] Throughout the complaint, Eight Sleep never identifies anyone who actually relied on any of the alleged false advertising. Eight Sleep fails to allege that challenged statements are false or why they are false. For example, Eight Sleep notes that Orion advertises "the first smart sleep system truly personalized to you based on your sleep data and comfort profile" without explaining why the statement is purportedly false or even addressing any product features. Complaint ¶61. Additionally, it has not pled any specific injury proximately caused by the allegedly false statements. Eight Sleep's boilerplate and conclusory contentions that it lost sales and potential investor funding do not satisfy this requirement. *See, e.g.*, Complaint ¶100. This deficiency alone requires dismissal. *See e.g., VBS Dist., Inc. v. Nutrivita Labs., Inc.,* 811 F.App'x 1005, 1007-08 (9th Cir. 2020) (holding that mere conclusory statements that the plaintiff lost sales due to a competitor's allegedly misleading statement are insufficient); *Botanic Tonics, LLC v. Shot of Joy, LLC*, 2024 WL 2209773, at *4 (C.D. Cal. Apr. 1, 2024) (finding allegations lacking "a causal link between Defendant's false advertising and the injury suffered" were too conclusory).

Defendants now address each of Eight Sleep's allegations in turn.

---

[3] Plaintiff's failure to plead Counts III-IV with sufficient specificity in accordance with Rule 9(b) is reason alone to dismiss these claims. *See, e.g., Dyson, Inc. v. Garry Vacuum, LLC*, 2010 WL 11595882, at *10 (C.D. Cal. July 19, 2010) (Blumenfeld, J.).

### 1. Product Comparison Chart

Eight Sleep complains about two statements in an Orion product comparison chart. *See* Complaint ¶38 (chart). First, that the Orion product "cools as low as 50 degrees" or "heats as high as 115 degrees." Complaint ¶¶45-46. There is no allegation of falsehood; the temperature claims are made separately and the Complaint acknowledges each might be true separately. *Id.* Nor does Eight Sleep plausibly allege proximate harm. The allegation that the statement "is likely to influence a customer's purchasing decision" (*id.* ¶46) is speculative and insufficient. *See Jaiyeola v. T-Mobile US*, 2024 WL 1421283, at *4 (N.D. Cal. Apr. 2, 2024) (dismissing false advertising claim where plaintiff failed to adequately allege economic injury).

Second, Eight Sleep calls out a claim of "5-stage sleep tracker." Complaint ¶47. Here, the unsupported allegation that this feature "never existed" is insufficient to show literal falsehood, and even if it were, Eight Sleep fails to allege that the claimed "5-stage" tracker proximately caused injury. Rather, Eight Sleep acknowledges that Orion removed this feature from its released product and the comparison chart. *See id.*

### 2. Multiple Comfort Options / Dual Zone Smart Alarm

Eight Sleep complains of a statement advertising "comfort options," a "smart alarm" feature, and "dual zone temperature control." Complaint ¶48-50. These allegations fail because Eight Sleep does not allege that any of these statements were false or misleading, or proximately caused injury.

### 3. Auto/AI Powered Temperature Adjustment

Eight Sleep alleges that on November 11, 2025, Orion advertised "AI powered adjustment through the night." Complaint ¶53. There is no allegation that this statement proximately injured Eight Sleep, which alone renders this claim insufficient. *Lexmark*, 572 U.S. at 133. Regarding falsehood, Eight Sleep apparently

contends the statement must have been false because an Orion engineer posted on social media that the product was actively being worked on. *Id.* ¶¶54, 59-60. But even if the overall product was under development, that does not show that statements about specific features were false when made; nothing in the Complaint shows that the specific features were not ready to ship.

### 4.    Testimonials

Eight Sleep also alleges that Orion failed to disclose that certain testimonials originated from affiliated individuals, purportedly in violation of FTC's Enforcement Guidelines. Complaint ¶¶51-52, 55-58. But Eight Sleep does not allege that the endorsements are false or misleading, or that any disclosed affiliation would have been material or impacted the weight or credibility of the endorsement. Nor does Eight Sleep plead that the testimonials caused any injury to Eight Sleep. *See Williams & Cochrane, LLP v. Rosette*, 2024 WL 1651666, at *1 (9th Cir. Apr. 17, 2024) (affirming summary judgment because the "allegedly false advertisement was not a proximate cause" of harm). Finally, the cited FTC Enforcement guidelines are non-binding in this Court. *See FTC's Endorsement Guides: What People Are Asking*, FED. TRADE COMM'N (June 2023), https://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking#about, ("The Guides themselves don't have the force of law."); *see also Pop v. Lulifama.com LLC*, 2023 WL 4661977, at *4 (M.D. Fla. July 20, 2023), *aff'd on other grounds*, 145 F.4th 1285 (11th Cir. 2025) ("Section 255.5 is a guide that does not proscribe conduct, and, as such, it is not a rule promulgated pursuant to the FTC Act or a regulation that proscribes unfair methods of competition.").

### 5.    Investor Statements

Finally, Eight Sleep complains of "false statements to investors" but does not identify a single purportedly false statement. Complaint ¶99. Absent any identification of a specific false statement, this allegation fails at the pleading stage

under the heightened standard for claims sounding in fraud. *Bodenburg v. Apple Inc.*, 146 F.4th 761, 771 (9th Cir. 2025) (holding that plaintiff's pleadings did satisfy Rule 9(b)'s heightened pleading requirements because plaintiff "cannot point to any statements … that are truly deceptive" and "cannot set forth facts showing that these statements are false").

### G.   The Court Does Not Have Personal Jurisdiction Over BFG.[4]

Plaintiffs did not plead a theory of general jurisdiction, and BFG is not subject to specific jurisdiction. BFG does not place any products into the United States. Nor has BFG purposefully availed itself of, or purposefully directed its actions to, California: BFG does not engage in any activities in California and provides only consulting services to Orion. Orion is responsible for selling and importing the accused products, but to establish personal jurisdiction over BFG, Eight Sleep must point to actions by BFG (not Orion). *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1380 (Fed. Cir. 2015).

Exercising specific jurisdiction over BFG would be unreasonable under the 5-factor test of *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1355 (Fed. Cir. 2017). None of the factors favor exercising jurisdiction: (1) it is burdensome to require a Hong Kong company to defend a lawsuit here; (2) neither California nor the U.S. has an interest in adjudicating actions against foreign consultants; (3) Eight Sleep's interests are adequately addressed by its suit against Orion; and (4)-(5) the judicial system has no particularized interest in adjudicating claims against a foreign consulting entity.

Finally, BFG is not subject to personal jurisdiction under Rule 4(k)(2), which requires sufficient contacts with the United States. *Synthes (U.S.A.) v. GM Dos Reis*

---

[4] BFG understands the Court will hold the personal jurisdiction dispute in abeyance, or deny it without prejudice, until the parties conduct jurisdictional discovery and submit further briefing. In an abundance of caution, BFG includes this defense in this brief to ensure it is not waived. Fed. R. Civ. P. 12(h)(1); see *Sonos, Inc. v. Lenbrook Industries Ltd.*, 2020 WL 5032924, at *2 (C.D. Cal. Jan. 27, 2020).

*Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009).  No such contacts are present here.  As discussed above, BFG's limited overseas work for Orion is not directed to the United States.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion.

DEFENDANTS' MOTION TO DISMISS

Dated: March 31, 2026

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: */s/ Amy H. Candido*

Amy H. Candido (CA SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
SIMPSON THACHER & BARTLETT LLP
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
Aaron L. Plesset (SBN 352104)
aplesset@mrllp.com
MICHELMAN & ROBINSON, LLP
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

Mona Z. Hanna (SBN 131439)
mhanna@mrllp.com
MICHELMAN & ROBINSON, LLP
17901 Von Karman Ave, 10th Floor
Irvine, California 92614
Phone: (714) 557-7990
Fax: (714) 557-7991

*Counsel for Defendants*
*Orion Longevity Inc. and Blue Fuzion Group Ltd.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,787 words, which complies with the 7000 word limit set by Section 6.c.i. of the Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr. updated January 6, 2026.

Dated: March 31, 2026

By: */s/ Amy H. Candido*
Amy H. Candido
(CA SBN 237829)
amy.candido@stblaw.com