Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (SBN 241630)
patrickcurran@quinnemanuel.com
Nicola Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Jordan E. Alexander (SBN 305112)
jordanalexander@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
295 5th Avenue
New York, New York 10016-7103
Telephone:   (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Plaintiff,
EIGHT SLEEP INC.*

Ryan R. Smith (SBN 229323)
rsmith@wsgr.com
Alexander R. Miller (SBN 347827)
alex.miller@wsgr.com
**WILSON SONSINI GOODRICH &
ROSATI, P.C.**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329

Naoya Son (SBN 324444)
nson@wsgr.com
**WILSON SONSINI GOODRICH
& ROSATI, P.C.**
1900 Ave. of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| EIGHT SLEEP INC., <br><br> Plaintiff, <br><br> v. <br><br> ORION LONGEVITY INC., and BLUE FUZION GROUP LTD., <br><br> Defendants. | Case No. 2:26-CV-02460-SB-KS <br><br> **EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Hon. Stanley Blumenfeld, Jr. <br> Date:  May 1, 2026 <br> Time:  8:30 a.m. <br> Courtroom:  6C |

# TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................I

LEGAL STANDARD ................................................................................................... 2

ARGUMENT ................................................................................................................ 2

I.    DEFENDANTS DID NOT PRESERVE A SECTION 101 THEORY ........... 2

II.    THE '339 CLAIMS ARE PATENTABLE ...................................................... 2

    A.    Step One: No Abstract Idea ................................................................ 3

    B.    Step Two: The '339 Claims Have An Inventive Concept ..................... 6

III.    THE '240 CLAIMS ARE DIRECTED TO PATENT ELIGIBLE SUBJECT MATTER ................................................................................. 8

    A.    Step One: The '240 Claims Are Not Directed To An Abstract Idea ................................................................................................. 9

    B.    Step Two: The '240 Claims Include An Inventive Concept ................. 10

IV.    EIGHT SLEEP ADEQUATELY ALLEGES THAT ORION'S STATEMENTS ARE FALSE OR MISLEADING ....................................... 10

    A.    The Alleged Statements Are False And Actionable ............................ 11

        1.    Product Comparison Chart ........................................................ 11

        2.    First To Offer "Personalized" Sleep System .............................. 13

        3.    Orion Advertised Features Its Products Did Not Have ............. 13

        4.    Testimonial Campaign ............................................................... 15

        5.    Statements To Investors ............................................................. 16

    B.    Eight Sleep Adequately Alleges That Orion's Conduct Caused Harm to Eight Sleep ......................................................................... 17

V.    EIGHT SLEEP HAS STANDING UNDER THE UCL AND FAL .............. 18

VI.    THE COMPLAINT ADEQUATELY PLEADS THE INADEQUACY OF LEGAL REMEDIES ................................................................................. 20

VII.    BFG'S PERSONAL JURISDICTION CHALLENGE SHOULD BE DENIED WITHOUT PREJUDICE PENDING DISCOVERY ..................... 21

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022) ................................................................................... 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ...................................................................................... 5, 6

*Allergan USA Inc. v. Imprimis Pharm., Inc.*,
  2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ................................................... 18

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ...................................................................... 11, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 2

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .......................................................................... 7

*Botanic Tonics v. Shot of Joy, LLC*,
  2024 WL 2209773 (C.D. Cal. Apr. 1, 2024) ........................................................ 17

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
  381 F. Supp. 3d 293 (D. Del. 2019) ..................................................................... 6

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020) ........................................................... 3, 4, 6, 7, 8

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) .......................................................................... 8

*ChargePoint Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ........................................................................... 3

*Chebul v. Tuft & Needle*,
  2024 WL 5257021 (C.D. Cal. Oct. 9, 2024) ........................................................ 20

*ChowNow, Inc. v. Owner.com*,
  2026 WL 125612 (N.D. Cal. Jan. 16, 2026) .......................................... 17, 18, 19

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
  398 F. Supp. 3d 623 (N.D. Cal. 2019) ................................................................ 15

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Coffelt v. NVIDIA Corp.*,
   2016 WL 7507763 (C.D. Cal. June 21, 2016)......................................................7

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
   50 F.4th 127 (Fed. Cir. 2022) ...........................................................2, 7, 9, 10

*Diamond Resorts U.S. Collection Dev. v. Pandora Mktg., LLC*,
   2020 WL 8768056 (C.D. Cal. Nov. 9, 2020) ....................................................18

*Drake v. Toyota Motor Corp.*,
   2021 WL 2024860 (C.D. Cal. May 17, 2021).....................................................20

*Eclat Pharms., LLC v. West-Ward Pharm. Corp.*,
   2014 WL 12597594 (C.D. Cal. Feb. 12, 2014)...................................................16

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ........................................................................3

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
   69 F.4th 665 (9th Cir. 2023) ...........................................................................12

*Google LLC v. EcoFactor, Inc.*,
   602 F. Supp. 3d 1265 (N.D. Cal. 2022)....................................................4, 5, 6

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,
   2018 WL 6118440 (C.D. Cal. July 18, 2018) ...................................................15

*Guardant Health, Inc. v. Natera, Inc.*,
   580 F. Supp. 3d 691 (N.D. Cal. 2022)...............................................................12

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
   839 F. App'x 534 (Fed. Cir. 2021)......................................................................5

*Jaiyeola v. T-Mobile US*,
   2024 WL 1421283 (N.D. Cal. Apr. 2, 2024)......................................................17

*Kachuck Enters. v. Mission Produce, Inc.*,
   2026 WL 216475 (C.D. Cal. Jan. 22, 2026).......................................................19

*Kim Kempf v. Apple Inc.*,
   2026 WL 765332 (N.D. Cal. Mar. 18, 2026) ....................................................12

*MachiningCloud, Inc. v. Kennametal Inc.*,
   2025 WL 4058863 (C.D. Cal. Nov. 3, 2025).......................................................8

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*McCracken v. KSF Acquisition Corp.*,
2023 WL 5667869 (C.D. Cal. Apr. 4, 2023)............................................15, 20, 21

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ...........................................................................3, 5

*Meggitt (Orange Cnty.), Inc. v. Yongzhong*,
2014 WL 5528546 (C.D. Cal. Nov. 3, 2014) ...........................................................12

*MicroPairing Techs. LLC v. Am. Honda Motor Co.*,
2021 WL 6618817 (C.D. Cal. Dec. 9, 2021)..............................................................8

*ML Prods. Inc. v. Ninestar Tech.*,
2023 WL 12171006 (C.D. Cal. Sept. 27, 2023)........................................................19

*Mod. Telecom Sys. LLC v. Earthlink, Inc.*,
2015 WL 1239992 (C.D. Cal. Mar. 17, 2015) ..........................................................2

*Monsivais v. Alhambra Unified Sch. Dist.*,
2023 WL 11999183 (C.D. Cal. Dec. 5, 2023)............................................................1

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ...............................................................................18

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)........................................................................13, 15

*Spotlight Ticket Mgmt., Inc. v. Concierge Live, LLC*,
2025 WL 235429 (C.D. Cal. Jan. 2, 2025)...............................................................11

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
2019 WL 6841992 (C.D. Cal. Oct. 30, 2019) .....................................................18, 19

*Straumann USA, LLC v. TruAbutment Inc.*,
2019 WL 6887173 (C.D. Cal. Oct. 1, 2019) ...........................................................13

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) .......................................................................4, 6, 7

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011)................................................................................17

*Vineyard Investigations v. E. & J. Gallo Winery*,
510 F. Supp. 3d 926 (E.D. Cal. 2021).................................................................7, 8

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Wrinkl, Inc. v. Facebook, Inc.*,
2021 WL 4477022 (D. Del. Sept. 30, 2021) .......................................................... 4

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Defendants' two prior motions to dismiss never mentioned Section 101. Their invalidity contentions likewise never asserted invalidity under Section 101. Defendants never moved to amend those contentions or explained why good cause or diligence would support amendment. Yet Defendants move, six months after these patents were asserted, to dismiss contending that both asserted patents are invalid under Section 101. That argument is both meritless and untimely. Even if this untimely invalidity theory is considered, it fails: there is nothing "abstract" about using embedded sensors to detect a user's biological signals, determine the user's sleep phase, and generate control signals using sensor inputs. That is tangible, not abstract, and the Federal Circuit has repeatedly held similar claims patent eligible.

Defendants' false advertising arguments fare no better. Seven days before filing this motion Defendants said they would move to dismiss, and met and conferred on Section 101 grounds alone. Dkt. 39 ¶ 4(c). Then, only *one* day before filing, Defendants suddenly disclosed they would challenge false advertising—and did not reveal *why* they would challenge those claims until the motion was filed (including failing to mention standing, falsity, or any other basis for the motion until it was filed). Defendants admit this. *Id.* ¶¶ 4(c), 9. That last-minute addition of new theories violated the Local Rules, both as to the timing and substance of the required meet and confer process, and deprived Eight Sleep of any meaningful opportunity to discuss or address issues prior to a motion. That warrants denial. *See Monsivais v. Alhambra Unified Sch. Dist.*, 2023 WL 11999183, at *1 (C.D. Cal. Dec. 5, 2023) (striking issues first raised one day before filing). In any event, the false advertising claims should proceed to discovery. The Complaint identifies specific statements—including temperature claims the product cannot achieve, or a "5-stage sleep tracker" that does not exist—and explains the impact of those statements. That is all notice pleading requires. The parties are already engaging in discovery on personal jurisdiction; false advertising should likewise proceed to discovery.

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[P]atent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences … in favor of the non-movant." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). "In applying § 101 jurisprudence at the pleading stage, the Court construes the patent claims in a manner most favorable to Plaintiff." *Mod. Telecom Sys. LLC v. Earthlink, Inc.*, 2015 WL 1239992, at *8 (C.D. Cal. Mar. 17, 2015).

**ARGUMENT**

**I.     DEFENDANTS DID NOT PRESERVE A SECTION 101 THEORY**

Defendants' operative invalidity contentions do not disclose a Section 101 invalidity theory. If Defendants want to add a new invalidity theory they should follow the Court's procedures and move to amend, including by filing a motion that makes "a specific, detailed, timely, and non-conclusory showing of diligence from the outset of the case." Dkt. 43 at 1. Defendants have not done so—and their passing request for leave (Mot. at 14) falls far short of the required standard. Should Defendants make the required motion and receive leave to amend, both sides can litigate Section 101 at the summary judgment stage or at trial.[1] But Defendants' gambit to ignore the schedule entirely and re-do contentions on the fly, via a motion to dismiss, should be denied.

**II.    THE '339 CLAIMS ARE PATENTABLE**

In the event the Court considers Defendants' untimely Section 101 argument on the merits, Eight Sleep addresses the argument below.

---

[1]  It is doubtful Defendants could make such a showing; the asserted patents have not changed, and it is hard to understand why Defendants could not have included any contention on Section 101 earlier.

## A.    Step One: No Abstract Idea

To determine what claims are "directed to," the court "consider[s,] in light of the specification, . . . whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citation omitted).  That includes "whether the claims 'focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea.'" *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).  The '339 claims easily pass that test.  They claim a physical system and specific methods of using that system to create a bidirectional physical feedback loop, including: sensors embedded in a bed device measure the user's real-time biological signals; a processor transforms that data to determine user presence and sleep phase; based on sensor data, historical data, sleep phase, and user preferences, the processor generates specific control signals; and the bed device then physically heats or cools to a specified temperature.  There is nothing "abstract" about this.  It is concrete and physical—the bed is turned on or off, its temperature set, and its temperature is adjusted based on the user's biometric state.  A physical machine performing a physical function, based on a specific combination of inputs, is patentable.  *McRO*, 837 F.3d at 1315 (no abstract idea where process "use[d] a combined order of specific rules that render[ed] information into a specific format that [was] then used and applied to create desired results").

The specification confirms that the claims are not "abstract."  *See ChargePoint Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (looking to specification as part of "directed to" inquiry).  Its embodiments detail specific sensor types (*e.g.*, piezo sensors measuring heart rate and breathing rate), specific sensor configurations for different mattress sizes, specific inputs used to generate the claimed control signals, and the specific process to transform biological signal inputs into sleep-phase categorizations and determine temperature settings.  *See, e.g.*, Dkt. 1-1

("'339 Patent"), 6:27-31, 6:39-7:47, 8:26-37, 11:56-12:21.  The dependent claims, which Defendants fail to address meaningfully, also confirm this.  Claims 3 and 15 require using "a piezo sensor or a temperature sensor"; Claim 9 specifies using biological signals like heart rate, breathing rate, temperature, or motion; Claim 30 requires determination of the user's sleep phase from the obtained signal.  *See Wrinkl, Inc. v. Facebook, Inc.*, 2021 WL 4477022, at *5 (D. Del. Sept. 30, 2021) (assessing "dependent claims [that] add further capabilities" in Step One analysis).  None of this is abstract or conventional.  These are specific technological improvements over prior thermoregulation methods like adjusting a thermostat, modifying bedding layers, or using an electric heating blanket that did not adjust temperature based on sleep phase or individual physiology.  '339 Patent, 1:66-2:10; Compl. ¶ 31.  Defendants are miles from meeting their burden.

Similar claims have been held patent eligible.  In *CardioNet*, the Federal Circuit reversed a Section 101 invalidity finding because analyzing a heartbeat with sensors was not abstract; correlating "variability in the beat-to-beat timing" with "at least one of atrial fibrillation and atrial flutter" to achieve "speedier, more accurate, and clinically significant detection" of heart conditions was inventive, not an abstraction. 955 F.3d at 1368, 1370.  In *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017), using inertial sensors and sensor data to calculate position and orientation was not abstract but a "new and useful technique." *Id.* at 1348-49.  And in *Google LLC v. EcoFactor, Inc.*, 602 F. Supp. 3d 1265 (N.D. Cal. 2022), temperature-regulating technology did not merely automate turning HVAC on or off; the patents "focus[ed] on a specific method . . . to improve the function of the HVAC thermostat," not "a result or effect that is the abstract idea itself." *Id.* at 1272.  Thus, claims directed to "detecting and logging manual changes made to a HVAC system and, using that stored information along with predictions of temperature changes based on outside and inside temperatures, adjusting the HVAC system's setpoints," were patent-

eligible. *Id.* at 1275. So too here; the '339 likewise recites methods of using sensors and collected data to adjust temperature. That is patentable, not "abstract."

Defendants mischaracterize the claims, saying they use a computer "to automate what humans have always done manually," or that it is merely "automatically heating a bed," or is purely "data collection, processing, and transmission," or merely using "a heating pad." Mot. at 1, 13. Wrong each time; those shifting characterizations "oversimplify the claims" at "an impermissibly high level of generality." *McRO*, 837 F.3d at 1313. Indeed, there is no human or manual analog. Obtaining biological signals from bed-integrated sensors, determining sleep phase from those signals, and sending control signals to heat or cool the bed requires specific hardware, a physical thermal actuation mechanism, and an analysis of biological data to determine sleep phases. The claims enable what a sleeping human *cannot* do; one cannot remain asleep while simultaneously waking up to regulate temperature manually. It is irrelevant that the processors or sensors used in the claimed system and methods are not themselves improved; what matters is that their combined *use* is inventive. *See id.* at 1314 (finding it was "the incorporation of the claimed rules, not the use of the computer, that 'improved [the] existing technological process'") (citation omitted).

Defendants' element-by-element decomposition of claim 1 likewise fails. Under *Alice*, claims must be evaluated "as a whole." *McRO*, 837 F.3d at 1312 (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)). Defendants contend steps [a] and [d] merely "recite collecting information" and are therefore abstract. Mot. at 5. But the claims do not gather data as an end in itself—they use sensor data to physically change the sleep environment. As anybody sleeping in a bed that is too hot knows, this is far from abstract. Having a device implement physical changes to avoid sleep disruption is valuable technology—as evidenced by Defendants' desire to sell products that do this. *Compare iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 536 (Fed. Cir. 2021) (claims that generated undefined "tolerance indicia"

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

with no tangible application were abstract) *with Thales*, 850 F.3d at 1348-49 (finding not abstract "a particular method of ***using*** the [sensor] raw data" to calculate position and orientation) (emphasis added).  Nor can the claimed sensors "sense just about anything about the user," as Defendants suggest.  Mot. at 5.  They sense a defined set of biological signals—like heart rate, breathing rate, or temperature—in a "bed device."  '339 Patent, 4:65-67.

Defendants call steps [b] and [e] "simply the processor's output after receiving data" with "no further explanation."  Mot. at 6.  Not so.  The claims define what each control signal contains (on/off instructions plus specific temperature settings), when it is sent (based on the user's bedtime or detected presence), and what triggers the second adjustment (a different biological signal obtained during operation).

Defendants say this is simply "'selecting certain information,' then 'analyzing it' and 'reporting or displaying the results.'"  Mot. at 7.  This is like saying a pacemaker merely "listens" and "reports."  The claims describe a specific combination of biometric sensing, control-signal computation, and physical thermal actuation—all patentable.  *See EcoFactor*, 602 F. Supp. 3d at 1273-74; *CardioNet*, 955 F.3d at 1368.  Defendants' reliance on cases involving the tailoring of information content to users, like *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 312 (D. Del. 2019), is misplaced; rather than tailor content, the '339 physically changes the state of a device.  Even Defendants agree the claim recites physical changes: "detect a user in bed (or the arrival of 'bedtime'), ***activate the heater***, then ***adjust the temperature*** based on feedback."  Mot. at 10-11 (emphasis added).

### B.    Step Two: The '339 Claims Have An Inventive Concept

Because there is no "abstract idea" at Step One, the "inquiry ends and the claim is eligible."  *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022).  But even at Step Two the claims pass muster.  The claim language, intrinsic record, and well-pled allegations demonstrate an inventive concept sufficient to "'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217-18.

At the very least, there exists a factual dispute that precludes resolution of the motion at this early stage. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

The specification and Complaint confirm the claimed system and methods were previously unknown in the field. '339 Patent 1:39-2:10; Compl. ¶¶ 1-4, 30-33. The prosecution history supports this: the examiner allowed the claims after Eight Sleep added limitations specifying the content, timing, and physical effect of the control signals, conceding that the prior art lacked these limitations and the combination as a whole. Declaration of Nicola Felice, Ex. 1.[2] The examiner's finding, which is entitled to deference, belies Defendants' allegation (which must be proven by clear and convincing evidence) that the elements were well-understood, routine, and conventional. Dependent claims add further inventive concepts—specific sensor types (cls. 3, 15), bandpass or low-pass filtering to extract biological signals from compound signals (cls. 22-24), and sleep-phase determination (cl. 30)—none of which Defendants demonstrate was conventional. *Vineyard Investigations v. E. & J. Gallo Winery*, 510 F. Supp. 3d 926, 943 (E.D. Cal. 2021) (finding inventive claims that "incorporate[d] external data and appear[ed] to use that data, in combination with the in-field sensors," for tangible effects).[3]

---

[2] Courts routinely consider the publicly available patent file history in this context. *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1372-73 (Fed. Cir. 2020) ("[A] court may well consult the plain claim language, written description, and prosecution history."). Eight Sleep thus requests that the Court take judicial notice of the '339 and '240 patent file histories. *Coffelt v. NVIDIA Corp.*, 2016 WL 7507763, at *2 n.3 (C.D. Cal. June 21, 2016) (taking judicial notice of patent prosecution history).

[3] Defendants complain that the claims "do not recite any *specialized* hardware or software" and are allegedly "carried out with *generic* computer components." Mot. at 10 (emphasis added). As described in Section II.A., this is both inaccurate and irrelevant; technological improvements are patentable regardless of whether the system utilizes standard equipment or custom hardware. *Coop. Ent. Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 135 (Fed. Cir. 2022); *Thales*, 850 F.3d at 1349.

Defendants also make the conclusory *assertion* that the ordered combination of elements adds nothing inventive. Mot. at 11. But that argument, which ignores the presumption of validity, again reads at too high a level of generality. It ignores the tangible result of the claimed method, the method's use of two different biological signals, and the specifics of the two different control signals at different time points.

At the very least, factual disputes remain regarding whether the combination of elements in the '339 claims contain an inventive concept, which precludes dismissal. The '339 patent, like all patents, is presumed valid, making it Defendants' burden to prove by clear and convincing evidence that the '339 patent claims are directed to unpatentable subject matter. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). Eight Sleep pled, supported by the patents and prosecution history, that the claimed methods were not conventional, well-understood, or routine. *See Vineyard Investigations*, 510 F. Supp. 3d at 943 ("At the pleadings stage, plaintiff's plausible assertion that such improvements were not available in the prior art is sufficient."); *CardioNet*, 955 F.3d at 1374. These allegations must be presumed true and viewed in the light most favorable to Eight Sleep, which precludes dismissal. Defendants may dispute those allegations, but those are factual questions inappropriate for resolution at the pleading stage and best resolved after *Markman* proceedings and expert discovery. *MicroPairing Techs. LLC v. Am. Honda Motor Co.*, 2021 WL 6618817, at *7 (C.D. Cal. Dec. 9, 2021) (denying motion to dismiss due to factual questions regarding inventive concept); *MachiningCloud, Inc. v. Kennametal Inc.*, 2025 WL 4058863, at *1 (C.D. Cal. Nov. 3, 2025) ("[S]tep two of the *Alice* framework examines the elements of the claim to determine whether it contains an 'inventive concept,' which requires an understanding of the preexisting technology or industry practices.") (citation omitted).

Defendants' motion to dismiss Count I should be denied.

## III.    THE '240 CLAIMS ARE DIRECTED TO PATENT ELIGIBLE SUBJECT MATTER

Like the '339 patent, the '240 claims also are directed to an improvement over prior thermoregulation methods: dynamic thermoregulation for **two** different individuals with different physiologies in the same bed.  Many prior methods of regulating the temperature of a sleep environment were one-size-fits-all.  The heat and AC adjusted the temperature for an entire room; a heating blanket does not have separate zones separately adjustable for two individuals based on their unique physiology (including gender differences).  Compl. ¶ 31; Dkt. 1-2 ("'240 Patent"), 1:39-2:10.  The claimed improvement over those systems is neither abstract nor conventional.

### A.    Step One: The '240 Claims Are Not Directed To An Abstract Idea

Claim 1 of the '240 patent, like that of the '339 patent, details a specific bidirectional physical feedback loop between biological sensors embedded in a novel bed device and the physical thermal actuation of that device.  The bed device has two distinct zones; each zone is set to different temperatures and "heated or cooled differently"; and the temperature instructions are in response to each user's individual biological signals and based "at least in part" on each user's specified preferences. That is not an "abstract idea."  It is a specifically ordered process with physical inputs and tangible outputs, analogous to the kind of "specific network structure" or "specific arrangement" courts have found non-abstract.  *See Coop. Ent.*, 50 F.4th at 135.

The '240 patent specification confirms this. The specification provides specific details about the claimed bed device and method, including dividing the bed into different zones and subzones–a specific means to achieve the claimed method, not just a generic result. *See, e.g.*, '240 Patent, 6:39-7:47, Figs. 5A, 5B, 6A, 6B, 6C.

Defendants mischaracterize claim 1 as directed to "using computer signals to control a device" (Mot. at 13), ignoring the control signal's specific triggering condition, defined content, and the tangible result then caused.  The details Defendants ignore are not small details.  They solved problems associated with prior art electric blankets, which were not automated, not divided into individually

controllable zones, and not customizable to multiple users' preferences and physiology. *See* '240 patent at 2:7-8; Compl. ¶ 31. Claim 1 is thus directed not to an "abstract idea" but to a specific improvement in temperature regulation for two distinct individuals.

**B.      Step Two: The '240 Claims Include An Inventive Concept**

Defendants provide no evidence that the '240 patent's novel two-zone bed device, or the ordered combination of steps described by the method of use for that device, was conventional—and its conclusory assertion that the claims use only "generic" components is again unavailing. *See Coop. Ent.*, 50 F.4th at 135.

The intrinsic record undermines Defendants' position. Eight Sleep amended claim 1 during prosecution to include the limitation "wherein the first instruction is based at least in part on a first user-specified preference of the first user and the second instruction is based at least in part on a second user-specified preference of the second user…" Felice Decl., Ex. 2, Office Action at 8. The patent examiner allowed the claims, conceding that the prior art lacks this element. *Id.* at 9. And the specification and Complaint confirm the unconventional, innovative nature of Eight Sleep's invention. '240 Patent, 1:39-2:10; Compl. ¶¶ 1-4, 30-33. As with the '339 patent, this evidence at least creates a factual dispute precluding dismissal.

Defendants also have not demonstrated that the additional limitations in the dependent claims are routine and conventional. Defendants try to dismiss all dependent claims as conventional "design choices," but for all the same reasons discussed on the '339 patent, this cursory argument fails.

**IV.   EIGHT SLEEP ADEQUATELY ALLEGES THAT ORION'S STATEMENTS ARE FALSE OR MISLEADING**

As noted above, Defendants did not comply with the Local Rules on any of their challenges to Plaintiff's false advertising claims. Dkt. 39 ¶¶ 4(c), 9. In the event the Court considers these untimely arguments, Plaintiff addresses them below.

## A.    The Alleged Statements Are False And Actionable

The Complaint adequately alleges that Orion's false and misleading statements about its own product and Eight Sleep's are actionable under the Lanham Act, the UCL, and the FAL.  Because these claims are "substantially congruent," the analysis below addresses them together.  *Spotlight Ticket Mgmt., Inc. v. Concierge Live, LLC*, 2025 WL 235429, at *3 (C.D. Cal. Jan. 2, 2025).

### 1.    Product Comparison Chart

Orion's side-by-side chart comparing the Accused Product to Eight Sleep's Pod contains several false and misleading statements.  Compl. ¶¶ 38, 45, 47.

*First*, the comparison chart falsely represents that the Eight Sleep Pod is not "Personalized to you" and does not offer "Thermoregulation mode."  *Id.* ¶ 38.  These statements are literally false and "likely to influence a consumer's purchasing decision," *id.* ¶¶ 45-47, and Defendants apparently do not contend otherwise in their Motion.  *See* Mot. at 17-21.  Indeed, the Complaint alleges that the Eight Sleep Pod "provides individualized temperature regulation . . . on each side of the bed at three different points in the night" and "independently regulates temperature on each side of the bed, which adjusts during sleep based on biological signals of each user, such as sleep stage, heart rate, and respiratory rate," driven by "proprietary algorithms which take user's biological signals and optimizes temperature, and the timing of temperature changes."  Compl. ¶ 31.  Eight Sleep has obtained patents on precisely these functionalities, including the '240 and '339 Patents.  Orion's advertisement that Eight Sleep's Pod is *not* "personalized" and does not offer "thermoregulation mode" to its user is thus a verifiable statement of fact that the Complaint's allegations directly refute.  *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1122 (9th Cir. 2021) (holding comparative advertisement was actionable because it made "specific and measurable statements").

*Second*, Orion advertised that the Accused Product could "[c]ools as low at 50°F" and "[h]eats as high as 115F."  Compl.  ¶ 46.  That claim is false, and at

11

minimum likely to mislead consumers.  The Complaint alleges that the Accused Product could not achieve those temperatures "at normal room temperatures," and could not achieve both temperatures at any room temperature.  *Id*.  Defendants mischaracterize these allegations as supposedly "acknowledg[ing]" that each temperature claim "might be true separately."  Mot. at 19.  But that is not what the Complaint says.  In any event, whether the Accused Product actually could achieve the advertised temperature, and what an average consumer would understand Orion's claim to mean, are disputed issues of fact that cannot be resolved at the pleading stage.  *Kim Kempf v. Apple Inc.*, 2026 WL 765332, at *11 (N.D. Cal. Mar. 18, 2026) ("Courts routinely find that the reasonable consumer standard is a factually intensive inquiry unsuitable for determination on a Rule 12(b)(6) motion."); *see also Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 706 (N.D. Cal. 2022) (false advertising "adequately plead[ed]" where "factual dispute" remained about whether at-issue statements were actually "supported by the [referenced study]").  Orion's temperature claims are "specific and measurable" statements about the "specific or absolute characteristics of a product," and are thus actionable.  *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671-72 (9th Cir. 2023) (citation omitted).

*Third*, the comparison chart's claim that Orion offers a "5-stage sleep tracker" is categorically false.  As the Complaint alleges, and as the Court must assume to be true at the motion to dismiss stage, "[t]his feature never existed."  Compl. ¶ 47.  When Orion eventually shipped the Accused Product, it did not offer a 5-stage sleep tracker; it offered only a 3-stage sleep schedule.  *Id.*  Orion advertised its product as having a feature that it never actually had.  That is a textbook "literally false" statement.  *See Meggitt (Orange Cnty.), Inc. v. Yongzhong*, 2014 WL 5528546, at *6-7 (C.D. Cal. Nov. 3, 2014) ("advertising was false because the catalogues and data sheets advertised products that did not exist").

The Complaint's comparison chart allegations plainly satisfy Rule 9(b).  Specifically, the Complaint alleges that Orion (who) advertised specific temperature

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

and sleep tracker capabilities (what) beginning as early as October 2025 through the present (when) even though independent testing and Orion's own product launch confirm the Accused Product could not and cannot achieve the advertised features (how the statements are false and misleading). Compl. ¶¶ 44-48; *see Straumann USA, LLC v. TruAbutment Inc.*, 2019 WL 6887173, at *5 (C.D. Cal. Oct. 1, 2019) (false advertising claims satisfied Rule 9(b) where plaintiff identified specific statements, their source, and why they were false).

### 2.      First To Offer "Personalized" Sleep System

Orion's claim to be "the first smart sleep system truly personalized to you based on your sleep data and comfort profile" is a specific and measurable statement that the Complaint alleges is false and deceptive. Compl. ¶ 61. Unlike vague qualitative boasts (*e.g.*, "best" or "most advanced"), a claim of being "first" is objectively measurable: either Orion preceded with a "truly personalized" sleep system, or it did not. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (claims capable of being proven true or false are not puffery). The Complaint further alleges that Eight Sleep has been commercializing precisely this category of product—a smart, biometric-sensor-driven, sleep system that "provides individualized temperature regulation"—since well before Orion existed: the Eight Sleep Pod was named a TIME 100 Best Invention in 2019 and won a Red Dot Design Award in 2020 before Orion's founding. Compl. ¶ 33. These allegations establish, with particularity, that a competing product offering a "personalized" "sleep system" predated Orion's entry into the market by years, thereby making Orion's "first" claim literally false at the time it was made.

### 3.      Orion Advertised Features Its Products Did Not Have

Defendants mischaracterize the Complaint as simply alleging that Orion's "overall product was under development" when Orion claimed to offer certain features, and on that basis, argue that these allegations do not plead falsity. Not so. The Complaint's allegations are specific, concrete, and corroborated by Orion's own

admissions—not just about readiness, but about whether the advertised features ever existed at the time Orion was promoting them (or even exist today).

**AI auto-temperature adjustment:** The Complaint alleges that in 2025, Orion advertised "Automatic temperature adjustment all night," "AI and advanced sensors adjust your temperature before you notice you're uncomfortable," and "AI-powered smart temperature adjustment." Compl. ¶¶ 37, 53, 59-60, 70. The Complaint further alleges that months *after* Orion claimed that its product offered those specific features, on February 2, 2026, a customer who had purchased Orion's product complained on social media that the product did not actually have a "true 'auto mode.'" *Id.* ¶ 59. An Orion engineer admitted that the review was correct and that Orion was still "working on improving [its] sleep schedule features to be more automatic." *Id.* Six days later, the same engineer confirmed Orion "couldn't launch a lot of intelligence features from day 1." *Id.* ¶ 60.

These admissions by Orion's engineer are qualitatively different from the general "under development" allegations this Court found insufficient in the *Eight Sleep I* complaint. Those post-launch admissions confirm, sufficiently to proceed with discovery, that the specific claim about auto-adjustment was false and deceptive when made. *See Ariix LLC.*, 985 F.3d at 1122 (reversing 12(b)(6) dismissal of Lanham Act claim based on statements that were "specific, measurable, and capable of being falsified").

**Comfort Options, Dual-Zone, Smart Alarm:** Orion advertised on its website that the Accused Product "offers multiple comfort options [*i.e.*, different firmness levels] for added customization" and touted "comfort options" as a differentiating feature over Eight Sleep—then removed the feature without explanation. Compl. ¶ 48. In other words, Orion told customers that its product offered comfort options, only to delete that claim from its website and proceed to ship products without that feature. Further, Orion publicly promoted Orion's product as presently offering "dual zone temperature control" (December 10, 2025) and a "smart alarm" (on November

19, 2025) in direct comparison with Eight Sleep, despite the fact that Orion has since claimed there was no Orion product with those features at the time it made those statements. *Id*. ¶¶ 49-50, 54. These allegations satisfy Rule 9(b). *See McCracken v. KSF Acquisition Corp.*, 2023 WL 5667869, at *6-7 (C.D. Cal. Apr. 4, 2023) (Blumenfeld, J.) (Rule 9(b) satisfied where complaint identified the "precise language" challenged and contained "numerous allegations explaining" why the statements falsely conveyed the challenged message).

### 4.    Testimonial Campaign

Defendants contend that the Complaint fails to allege that its testimonials reflect false statements. Wrong again. Orion's testimonials are false and misleading in two respects, both of which are identified in the Complaint. *First*, Orion placed testimonials on the page where customers go to purchase the Accused Product—but those testimonials are *not* for the Accused Product. Compl. ¶¶ 55-56, Ex. 23. Any reasonable consumer viewing testimonials on a product's purchase page alongside its marketing copy, would understand the testimonials to describe the product available for purchase. *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636-37 (N.D. Cal. 2019) ("It is reasonable to infer that these words [and] images, considered in context, necessarily imply [the] false message[.]") (citation omitted). That is a straightforward false representation of fact that, tellingly, Orion *does not even try to dispute*. *See* Mot. at 20.

*Second*, Orion passed off its CFO Josh Minnick, investor James Moriarty, Jr., and early investor Stephen Ellsworth as actual customers giving neutral endorsements, without disclosing their affiliations with Orion—in violation of the FTC's Enforcement Guidelines. Compl. ¶¶ 55-58. Presenting affiliated individuals as independent reviewers is an affirmative false representation of fact about the character of the product's reception. *Southland Sod Farms*, 108 F.3d at 1140 ("Even if an advertisement is not literally false," it can support a false advertising claim if it "misle[ads], confuse[s], or deceive[s] the consuming public."). Although not binding

on the Court, a "plaintiff may and should rely on FTC guidelines as a basis for asserting false advertising under the Lanham Act." *Grasshopper House, LLC v. Clean & Sober Media, LLC*, 2018 WL 6118440, at *6 (C.D. Cal. July 18, 2018) (citation omitted). And while Orion does not appear to challenge this advertising claim under Rule 9(b), the Complaint identifies each individual by name, discloses their affiliation, and pinpoints the specific purchase page on which the misleading testimonials appeared. Compl. ¶¶ 55-58.

### 5.    Statements To Investors

Eight Sleep and Orion are competing private venture-backed companies drawing from the same pool of institutional investors. Compl. ¶ 99. The Complaint alleges that Orion has made, and continues to make, false statements to actual and potential investors about Eight Sleep's products and business to divert investment opportunities from Eight Sleep to Orion. *Id*. ¶¶ 7, 99-100. Eight Sleep makes these allegations on information and belief because the content of those investor communications lies exclusively within Orion's possession. In these circumstances, courts relax Rule 9(b) particularity, where a plaintiff who "makes allegations on information and belief must state the factual basis for the belief" "cannot be expected to have personal knowledge of the relevant facts." *Eclat Pharms., LLC v. West-Ward Pharm. Corp.*, 2014 WL 12597594, at *6-7 (C.D. Cal. Feb. 12, 2014) (citation omitted). The Complaint provides the factual basis for Eight Sleep's belief: both companies compete in the same venture-capital market for sleep-technology investment, and Orion has made false statements about its own and Eight Sleep's products in public settings. Compl. ¶¶ 99-100. Based on Orion's demonstrated willingness to copy Eight Sleep's technology and make false statements in an attempt to out-compete in the marketplace, Eight Sleep has a good faith belief that Orion has also made false statements to potential investors, including false statements regarding Eight Sleep's operations and margins, and that those false statements have diverted to Orion investment that would otherwise have been available to Eight Sleep. *Id.*

**B.    Eight Sleep Adequately Alleges That Orion's Conduct Caused Harm to Eight Sleep**

Orion contends that Eight Sleep has not adequately pled that Orion's deceptive statements caused it harm.  But Eight Sleep alleges that "customers who would have otherwise purchased its products, instead purchased Orion."  Compl. ¶ 100.  That is far more than the conclusory assertion of lost profits that Defendants' cited authority found insufficient.  *Botanic Tonics v. Shot of Joy, LLC*, 2024 WL 2209773, at *4 (C.D. Cal. Apr. 1, 2024) (dismissing proximate cause where plaintiff alleged lost profits "rather conclusory and without any further allegations demonstrating a causal link").  Here, the Complaint alleges that Orion's CEO "personally took to social media and Reddit to steer customers away from Eight Sleep" and "timed its blitz of false statements to coincide with the busiest shopping days of the year."  Compl. ¶¶ 7, 38, 47.  Eight Sleep further ties those statements to consumers who chose Orion over Eight Sleep as a result.  *Id*. ¶ 100.  This is the "paradigmatic direct injury from false advertising."  *ChowNow, Inc. v. Owner.com*, 2026 WL 125612, at *5 (N.D. Cal. Jan. 16, 2026) (citation omitted); *see also TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 826-27 (9th Cir. 2011) ("when plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury").

Orion argues that Eight Sleep has not shown that specific statements "proximately caused injury."  Its few cited authorities are inapposite.  *Jaiyeola v. T-Mobile US*, 2024 WL 1421283 (N.D. Cal. Apr. 2, 2024), involved a consumer plaintiff, who alleged false advertising regarding the construction of an iPhone, who had not even purchased that product.  *Id*. at *2-4.  By contrast, Eight Sleep is Orion's direct competitor with alleged lost sales and investment opportunities caused by false comparative advertising that identifies Eight Sleep's product in every column of a published comparison chart.  Compl. ¶¶ 7, 38, 97-100.  In fact, *Jaiyeola* supports Eight Sleep, not Defendants—it found that plaintiff's "Lanham Act claim cannot be cured because [plaintiff] pled that he is a consumer, not a competitor."  2024 WL

1421283, at *4.  And Orion's reliance on *Williams & Cochrane* fares no better: that non-precedential decision turned on the undisputed fact that the diverted customer never saw the allegedly false advertisement.  2024 WL 1651666 (9th Cir. Apr. 17, 2024).  The opposite is true here:  Orion's comparison chart was displayed at the point of purchase.  *See Diamond Resorts U.S. Collection Dev. v. Pandora Mktg., LLC*, 2020 WL 8768056, at *5 (C.D. Cal. Nov. 9, 2020) (denying motion to dismiss where plaintiff alleged general losses due to defendant's false advertising).

## V.    EIGHT SLEEP HAS STANDING UNDER THE UCL AND FAL

Defendants now argue, for the first time, that Eight Sleep lacks standing to bring its UCL and FAL claims.  These statutes, however, are intended to protect not just consumers, but also "competitors by promoting fair competition in commercial markets."  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quotation omitted).  Defendants insist that Eight Sleep must allege *it personally relied* on Orion's statements.  But that requirement applies to *consumers* who claim they were deceived into purchasing a product—it has no application here. *See Allergan USA Inc. v. Imprimis Pharm., Inc.*, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017) (declining to extend *Kwikset* because that case involved "consumer claims, not claims between competitors").  Eight Sleep is not alleging that *it* was misled; it is alleging that Orion's deceptions misled consumers, causing them to purchase Orion's product instead of Eight Sleep's, thereby diverting sales that would have gone to Eight Sleep but for Orion's conduct.

Courts in this circuit have concluded that "a competitor plaintiff may allege false advertising claims under UCL and FAL without alleging its own reliance." *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 6841992, at *6-7 (C.D. Cal. Oct. 30, 2019); *accord ChowNow, Inc.*, 2026 WL 125612, at *6 ("So long as the plaintiff has alleged a sufficient causal connection" between the defendant's false advertising and the plaintiff's economic injury, standing is established under the UCL and FAL without a competitor plaintiff alleging its own reliance).  This makes sense given that

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

imposing a reliance requirement on a competitor would "effectively shut[] down a competitor's ability to bring any UCL claim based on false advertising." *ML Prods. Inc. v. Ninestar Tech.*, 2023 WL 12171006, at *13 (C.D. Cal. Sept. 27, 2023).

Here, Eight Sleep has alleged precisely the type of economic injury that satisfies the causal connection requirement. *See id.*, at *14 n.16 (denying motion to dismiss where plaintiff "sufficiently alleged harm, as it alleges that, as a result of consumer reliance on Defendants' conduct, [plaintiff] has lost revenue"). The Complaint identifies specific false statements that Orion timed to coincide with Black Friday to maximize their impact on consumer purchasing decisions. Compl. ¶¶ 7, 46-50, 53, 59-61. The Complaint further alleges that Orion placed deceptive "testimonials" from its own CFO and an equity investor on their product's purchase page without disclosing those affiliations, and that Eight Sleep lost sales as a direct result of Orion's conduct. *Id.* ¶¶ 9, 51-58, 97-100, 111-12. These allegations are more than enough to confer standing. *See ChowNow*, 2026 WL 125612, at *6 (finding standing based on alleged "lost money (customer revenue) as a result of Defendants' conduct"); *SPS Techs.*, 2019 WL 6841992, at *6-7 (finding standing based on allegations that customers relied on the defendant's false statements "in choosing to do business with [defendant] rather than with Plaintiff").

None of Defendants' cited cases support dismissal. *Key v. Qualcomm* involved reliance by consumer plaintiffs; it has no application here. 129 F.4th 1129, 1141 (9th Cir. 2025). And the court in *Kachuck* found plaintiffs had failed to sufficiently allege standing where they offered only "generalized assertions regarding consumer reliance" on sustainability claims. *Kachuck Enters. v. Mission Produce, Inc.*, 2026 WL 216475, at *6 (C.D. Cal. Jan. 22, 2026). Even then, *Kachuck* expressly left open "whether individual reliance is required or whether 'reliance of [plaintiff's] potential customers' is sufficient." *Id.* at *5. Eight Sleep's allegations are categorically different. While the *Kachuck* plaintiffs made no allegations that the product's packaging itself contained any of the representations, *id.*, Orion's false statements

19

appeared on the very product purchase page where consumers were deciding between Orion and Eight Sleep—including a side-by-side comparison chart identifying Eight Sleep's Pod by name in every column, deceptive testimonials from Orion's own CFO and an equity investor posted directly below the product description, and claims of nonexistent features like "5-Stage Sleep Tracker" timed to coincide with Black Friday. Compl. ¶¶ 35, 38, 45-58, 100. And the Complaint alleges the resulting harm: Eight Sleep "lost sales because customers who would have otherwise purchased its products, instead purchased Orion." *Id.* ¶ 100. A consumer deceived by those claims into purchasing Orion's product is a consumer diverted directly from Eight Sleep. *Id.*

## VI.   THE COMPLAINT ADEQUATELY PLEADS THE INADEQUACY OF LEGAL REMEDIES

Defendants argue that Lanham Act damages provide Eight Sleep with an adequate remedy at law such that the Court should dismiss Eight Sleep's UCL and FAL claims, which seek equitable relief. Mot. at 16-17. Eight Sleep hereby withdraws the Complaint's request for restitution, and clarifies that it seeks only injunctive relief under the UCL and FAL. *See* Compl. ¶¶ 101, 107. Defendants' argument is thus moot as to restitution and should be denied.

*Sonner v. Premier Nutrition Corporation*, on which Defendants base their argument, requires a plaintiff to "establish that [it] lacks an adequate remedy at law before securing equitable restitution for ***past*** harm." 971 F.3d 834, 844 (9th Cir. 2020) (emphasis added). A plaintiff must therefore "include substantive allegations in the complaint that explain why money damages are not an adequate remedy." *Chebul v. Tuft & Needle*, 2024 WL 5257021, at *3 (C.D. Cal. Oct. 9, 2024) (citation omitted). This Court has applied that principle to dismiss equitable claims where the plaintiff failed to make any such showing. *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (Blumenfeld, J.) (dismissing equitable claims where complaint was "devoid of substantive allegations" showing legal remedies were inadequate); *McCracken*, 2023 WL 5667869, at *8 (dismissing restitution claim

where plaintiff could "not identify any possible—much less plausible—scenario in which she would prevail on her claims and be entitled to restitution or disgorgement but would not be entitled to damages").

Eight Sleep's Complaint satisfies that standard. Unlike the plaintiffs in *Drake* and *McCracken*, Eight Sleep has alleged ***ongoing*** deceptive advertising that is actively diverting its customers—harm that backward-looking damages cannot stop. The Complaint alleges that Orion "has caused and will continue to cause immediate and irreparable injury to Eight Sleep, including injury to its business, reputation and goodwill, for which there is no adequate remedy at law." Compl. ¶¶ 101, 107. Orion's deceptive conduct is ongoing. *Id.* ¶¶ 49-50, 59-60. Defendants point to Eight Sleep's request for Lanham Act damages, but those damages address ***past*** lost sales and profits—they cannot compel Orion to remove false claims from its product page, cease advertising features that do not exist, or correct the deceptive impressions already created. Only injunctive relief can do that. Indeed, in *McCracken* this Court declined to dismiss the plaintiff's claim for injunctive relief because it was "not clear that any adequate legal remedy exists to compensate Plaintiff for future harm." 2023 WL 5667869, at *8 n.7.

## VII. BFG'S PERSONAL JURISDICTION CHALLENGE SHOULD BE DENIED WITHOUT PREJUDICE PENDING DISCOVERY

The portion of Defendants' Motion seeking to dismiss Eight Sleep's claims against BFG should be dismissed without prejudice, as the parties agreed and as BFG concedes. *See* Mot. at 21 n.4. After Defendants provide relevant discovery, with the Court's permission, BFG may either answer Eight Sleep's operative complaint or renew its request to dismiss on personal jurisdiction grounds.

## CONCLUSION

Eight Sleep respectfully requests that the Court deny Orion's Motion in its entirety. Should the Court grant any portion, Eight Sleep requests leave to amend.

Dated:  April 10, 2026

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

By:   */s/ Naoya Son*
       Ryan R. Smith
       Naoya Son
       Alex Miller

Dated:  April 10, 2026

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**

By:   */s/ Patrick D. Curran*
       Alex Spiro
       Steven Cherny
       Patrick D. Curran
       Nicola Felice
       Jordan E. Alexander

*Attorneys for Plaintiff,*
*EIGHT SLEEP INC.*

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to Local Rule 5-4.3.4 of the United States District Court for the Central District of California, I test that Co-Counsel of **QUINN EMANUEL URQUHART & SULLIVAN, LLP**, concur in the content of, and have authorized the filing of this document and supporting papers.

*/s/ Naoya Son*
Naoya Son

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Eight Sleep Inc., certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 10, 2026                    */s/ Naoya Son*
                                          Naoya Son

EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS