Amy H. Candido (SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
**SIMPSON THACHER & BARTLETT LLP**
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

*Counsel for Defendants Orion Longevity Inc.*
*and Blue Fuzion Group Ltd.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EIGHT SLEEP INC., <br><br> Plaintiff, <br><br> v. <br><br> ORION LONGEVITY INC., and BLUE FUZION GROUP LTD. <br><br> Defendants. | Case No. 2:26-cv-02460-SB-KS <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Hon. Stanley Blumenfeld, Jr. <br> Date: May 1, 2026 <br> Time: 8:30 a.m. <br> Courtroom: 6C |

# TABLE OF CONTENTS

**Page**

I.    ALL PATENT CLAIMS ARE INVALID UNDER 35 U.S.C. §101. ............ 1

    A.    Step One. ..................................................................................... 1

        1.    Claims Involving Physical Devices Can Be Abstract ............... 1

        2.    The Claims Are Not Directed To A Specific Technological Improvement ....................................................... 2

    B.    Step Two: The Claims Recite No Inventive Concept. ......................... 4

    C.    This Court May Dismiss The Claims Now. ......................................... 6

    D.    Defendants Preserved Their §101 Defense. ........................................ 6

II.    THE COURT SHOULD RULE ON THE MERITS OF PLAINTIFF'S FALSE ADVERTISING CLAIMS .................................................................. 7

III.    PLAINTIFF'S UCL/FAL CLAIMS FAIL BECAUSE IT HAS AN ADEQUATE REMEDY AT LAW .................................................................. 7

IV.    PLAINTIFF'S UCL/FAL CLAIMS LACK STANDING ............................ 8

V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE LANHAM ACT, UCL OR FAL ........................................................................................ 10

VI.    CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas v. DIRECTV*
 838 F.3d 1253 (Fed. Cir. 2016) ...................................................................... 3

*Alice Corp. v. CLS Bank Int'l*,
 573 U.S. 208 (2014) ......................................................................................... 4

*Amgen v. Hoechst Marion Roussel*,
 314 F.3d 1313 (Fed. Cir. 2003) ...................................................................... 4

*Beteiro v. DraftKings*,
 104 F.4th 1350 (Fed. Cir. 2024) ..................................................................... 6

*Botanic Tonics v. Shot of Joy, LLC,*
 2024 WL 2209773 (C.D. Cal. Apr. 1, 2024) ........................................... 10, 11

*CardioNet v. InfoBionic*,
 955 F.3d 1358 (Fed. Cir. 2020) ...................................................................... 2

*Chamberlain Grp. v. Techtronic Indus.*,
 (935 F.3d 1341 (Fed. Cir. 2019) ..................................................................... 1

*ChargePoint v. SemaConnect*,
 920 F.3d 759 (Fed. Cir. 2019) ........................................................................ 1

*Coop. Ent., Inc. v. Kollective Tech.*
 50 F.4th 127 (Fed. Cir. 2022) ......................................................................... 2

*Drake v. Toyota Motor Corp.*,
 2021 WL 2024860 (C.D. Cal. May 17, 2021) ................................................ 7

*Elec. Power Grp. v. Alstom*,
 830 F.3d 1350 (Fed. Cir. 2016) ................................................................... 3, 4

*Eli Lilly & Co. v. Willow Health Services, Inc.*,
 2026 WL 639976 (C.D. Cal. Feb. 3, 2026) ................................................... 11

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
 69 F.4th 665 (9th Cir. 2023) ......................................................................... 11

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
 2006 WL 1329997 (N.D. Cal. May 15, 2006) ................................................ 7

*Google v. EcoFactor*,
 602 F. Supp. 3d 1265 (N.D. Cal. 2022) .......................................................... 2

*Intell. Ventures I v. Symantec*,
 838 F.3d 1307 (Fed. Cir. 2016) ...................................................................... 5

DEFENDANTS' REPLY ISO MOTION TO DISMISS

*Kachuk Enters. v. Mission Produce, Inc.*,
2026 WL 216475 (C.D. Cal. Jan. 22, 2026) ........................................................9

*MachiningCloud v. Kennametal*,
2025 WL 4058863 (C.D. Cal. Nov. 3, 2025) ........................................................6

*McRO, Inc. v. Bandai Namco Games*,
837 F.3d 1299 (Fed. Cir. 2016) ..........................................................................1

*MicroPairing Techs. v. Am. Honda Motor Co.*,
2021 WL 6618817 (C.D. Cal. Dec. 9, 2021) ........................................................6

*Mobile Acuity v. Blippar*,
110 F.4th 1280 (Fed. Cir. 2024) ..........................................................................6

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
2019 WL 6841992 (C.D. Cal. Oct. 30, 2019) ....................................................8, 9

*Thales Visionix v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) ..........................................................................2

*Vineyard Investigations v. E. & J. Gallo Winery*,
510 F. Supp. 3d 926 (E.D. Cal. 2021) ..............................................................5, 6

## I.    ALL PATENT CLAIMS ARE INVALID UNDER 35 U.S.C. §101.

Plaintiff's Opposition (Dkt. 47, "Opp.") does not meaningfully contest that its patents are directed to collecting, analyzing, and transmitting data, as articulated in Defendants' Opening Brief (Dkt. 36, "Br.").

### A.    <u>Step One.</u>

#### 1.    Claims Involving Physical Devices Can Be Abstract

Plaintiff argues first that its claims are directed to a "concrete and physical" invention with physical components like "sensor types." Opp. 3-4; *id.* at 5 (arguing the claims "physically change the sleep environment"). That is irrelevant. There is no safe harbor for otherwise-abstract claims that drive a "physical change." In the precedential *ChargePoint* decision, the claims recited "turn[ing] the electric supply on" at an electric car-charger. *ChargePoint v. SemaConnect*, 920 F.3d 759, 766 (Fed. Cir. 2019). That is directly analogous to the on/off instruction claimed by the '339 patent. *Chamberlain* involved physical sensors and components like "alarms, displays, [and] lights," not to mention the garage door itself. *Chamberlain Grp. v. Techtronic Indus.*, 935 F.3d 1341, 1345 (Fed. Cir. 2019); *id.* at 1348 ("Without more, the mere physical nature of [a patent's] claim elements … is not enough to save the claims from abstractness."). Hardly anything is more concrete or physical than a garage door.

Plaintiff ignores *Chamberlain* and *ChargePoint*. It instead cites (Opp. 3) to *McRO* which involved no physical device but rather a ***software*** method for "for the rapid, efficient lip synchronization and manipulation of character facial expressions." *McRO, Inc. v. Bandai Namco Games*, 837 F.3d 1299, 1306-07 (Fed. Cir. 2016). The *McRO* claims "focused on a specific asserted improvement in computer animation." *Id.* at 1315.

**2.   The Claims Are Not Directed To A Specific Technological Improvement**

Plaintiff argues (Opp. 3) its method claims recite a "specific process," but every method claim recites a specific process.  The question is whether the process is abstract, which courts answer by probing whether the process describes a "specific implementation … that improves the operation of" a prior technological process. *Google v. EcoFactor*, 602 F.Supp.3d 1265, 1271 (N.D. Cal. 2022) (patent-eligible claims covered an improved HVAC system that enabled "energy savings" over existing HVAC systems).

Likewise in *Thales Visionix v. U.S.*, 850 F.3d 1343, 1348 (Fed. Cir. 2017), the claims used an "unconventional utilization of inertial sensors" to "mitigate[] errors" in prior-position tracking systems.

In *Coop. Ent. v. Kollective Tech.*, the claims recited an improved "network structure" that "saves time, improves redundancy, and also reduces or eliminates costs" over existing peer-to-peer networks.  50 F.4th 127, 132 (Fed. Cir. 2022). There, "[t]he specification explain[ed] how claim 1's dynamic P2P network structure is different from and improves upon the prior art." *Id.*

And in *CardioNet v. InfoBionic*, 955 F.3d 1358, 1370 (Fed. Cir. 2020), the Federal Circuit found the claims patent-eligible because they achieved "speedier, more accurate, and clinically significant detection" of specific cardiac conditions—a concrete improvement over prior cardiac monitoring technology.  The court rejected the notion that "the claims merely computerize pre-existing techniques." *Id.*

By contrast, the only "improvement" that Plaintiff made to bed warming was to computerize it by eliminating the user's need to "remember to manually turn on the blanket," then "manually turn it on."  '339 patent at 2:7-8.  Likewise, the only argument Plaintiff makes specific to the '240 patent is that its claimed method separately controls two zones in a bed, not just one.  Opp. 9.  This changes nothing about the nature of the claims: collecting data, generating control signals, and sending

2                                        No. 2:26-cv-02460-SB-KS

the signals to a bed device.  Plaintiff did not overcome any difficulty to implement dual-zone control.  The specification describes an elementary process of driving power to electrical coils.  '240 patent at 6:58-67.

Plaintiff protests (Opp. 5) there is "no human or manual analog" to its claims because humans "cannot remain asleep while simultaneously" adjusting temperature.  The premise fails because no claim requires the person to be asleep.  Setting that aside, the simple analog is a caretaker taking a sleeping person's temperature (or heart rate, or respiration rate, etc.) and adjusting their electric blanket.  That Plaintiff's claims automate this task with "bed-integrated sensors" and "control signals" (Opp. 5) does not help.  The question is whether in doing that automation, Plaintiff developed an "advance over conventional computer and network technology." *Elec. Power Grp. v. Alstom*, 830 F.3d 1350, 1351 (Fed. Cir. 2016).  It did not.  Plaintiff merely used "existing computer capabilities." *Id.* at 1354.

Plaintiff's attempts to paint its claims as highly-specific confirm the only "specificity" is cabining the abstract idea to the bed-warming field.  That type of limiting is irrelevant under §101.  *See Affinity Labs of Texas v. DIRECTV*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract.").

Plaintiff ignores *Affinity Labs* by referencing claim terms that simply limit the claimed data collection processing to the field of bedtime temperature regulation.  For example, Plaintiff asserts (Opp. 6) the claimed "biological signals" are limited to "heart rate, breathing rate, or temperature."  That is incorrect.[1]  But even if the term were so limited (as it is for some dependent claims), that merely restricts the "collected data" to biological data, no different than limiting to power grid

---

[1] The specification does not define "biological signals" but includes "motion" and "presence" among them.  '339 patent at 4:65-67.

3                        No. 2:26-cv-02460-SB-KS

DEFENDANTS' REPLY ISO MOTION TO DISMISS

information. *See Elec. Power Grp.*, 830 F.3d at 1351 (Fed. Cir. 2016) (holding it irrelevant that data collection is limited to a "particular field").

In purporting to limit the scope of its claims, Plaintiff proposes different claim scope for §101 than it does for infringement. This is improper. *Amgen v. Hoechst Marion Roussel*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement."). For example, in its §101 brief, Plaintiff says the "claimed signals" must be gathered "in a 'bed device'" and "during operation." Opp. 6. Plaintiff says the opposite in its contentions, asserting that the "second biological signal" is captured by a separate patch the user wears ***outside of the bed device*** before the Orion is even ***delivered***— Orion uses data from this patch to pre-configure the Orion so it works for the user the first night it arrives. Ex. 1 ('339 contentions, annotated) at 8-9.

The scope of the claims under Plaintiff's infringement contentions would all but preempt the entire industry of automated bed warmers. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014) (noting "the pre-emption concern that undergirds our §101 jurisprudence"). For example, the claims do not recite a "specific" temperature setting as Plaintiff argues (Opp. 6), but only setting the bed device "to a first temperature" with no limits on what that temperature is or how it is determined. '339 patent, cl. 1. Plaintiff points out (Opp. 6) the temperature instruction must be sent at a time that is "based on the user's bedtime or detected presence," but that covers everything but a product designed to adjust bed temperature only when the user is ***not*** in bed.

### B.      Step Two: The Claims Recite No Inventive Concept.

The foundational inquiry under *Alice* Step Two is whether anything "in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer" technology. *Elec. Power Grp.*, 830 F.3d at 1355. Plaintiff never contends its claimed patents use anything other than existing computer

capabilities.  Indeed, claim 29 of both patents confirms that method claim 1 can be implemented with a generic processor.  *See* '339 patent cl. 1 and '240 patent cl. 1; *see also* '339 patent at 6:4-5 ("The processor … is any type of microcontroller.").

Instead, Plaintiff offers the non sequitur that the patent examiner found the claims novel over the prior art.  Opp. 7.  It is fallacy to suggest a claim recites an inventive concept because the claim issued; if that were the case, no claim could ever be held invalid under the *Alice* test.  The "novelty of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the §101 categories of possibly patentable subject matter."  *Intell. Ventures I v. Symantec*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (cleaned up).

Plaintiff then argues the dependent claims add inventive concepts like "specific sensor types."  Opp. 7 (citing '339 claims 3, 15).  This argument is not credible.  Claims 3 and 15, for example, recite using a "temperature sensor," *i.e.* a thermometer.  Using a thermometer to take someone's temperature is not inventive.  The specification concedes existing thermometers already detect user presence with "substantially 100% accuracy."  '339 patent at 5:26-31.

Likewise, Plaintiff identifies no inventive concept in its claimed use of piezo sensors, data-filtering, or sleep phase determination.  The specification describes these all familiarly, with no suggestion of novelty.  *See* '339 patent at 6:27-30 (describing the standard signals measured by a piezo sensor); *id.* at 9:10-16 (describing "low-pass filtering" and "bandpass filtering"); *id.* at 11:56-60 (listing the data used to determine sleep phase without specifying a new or improved way to do so).

Plaintiff receives no help from *Vineyard Investigations v. E.&J. Gallo Winery*, 510 F.Supp.3d 926, 943 (E.D. Cal. 2021) (cited at Opp. 7).  There, the specification described specific improvements over prior art irrigation systems, and the district

court ***distinguished*** the claims at issue from claims that simply use a "computer and software" to "make routine calculations to monitor and analyze … data." *Id.* at 943 & n.5 (citation omitted). As discussed, the patents here identify no such improvement.

### C.    This Court May Dismiss The Claims Now.

Finally, Plaintiff asks the Court to defer ruling. But Plaintiff offers no legitimate reason to delay. Plaintiff argues (Opp. 8) dismissal is "preclude[d]" because it "pled" that the asserted claims "were not conventional, well-understood, or routine." But Plaintiff does not identify any specific pleading, let alone the required "plausible, non-conclusory allegation." *Beteiro v. DraftKings*, 104 F.4th 1350, 1357 (Fed. Cir. 2024). Nor did Plaintiff submit a declaration on the state of the art, as the patentees did in the cases Plaintiff cites. *See MicroPairing Techs. v. Am. Honda Motor Co.*, 2021 WL 6618817, at *5 (C.D. Cal. Dec. 9, 2021) ("expert declaration submitted by MicroPairing"); *MachiningCloud v. Kennametal*, 2025 WL 4058863, at *2 (C.D. Cal. Nov. 3, 2025) (Benko declaration).

Plaintiff's proposal that the Court wait until "after *Markman* proceedings" (Opp. 8) rings hollow because Plaintiff did not "propose a specific claim construction" or explain why its meaning "must be resolved before the scope of the claims can be understood for §101 purposes." *Mobile Acuity v. Blippar*, 110 F.4th 1280, 1294 (Fed. Cir. 2024).

### D.    Defendants Preserved Their §101 Defense.

Plaintiff cites no law to support its argument (Opp. 2) that Defendants waived their §101 defense despite raising it in their initial Rule 12(b)(6) motion, which is the appropriate time to raise affirmative defenses. *See Mobile Acuity*, 110 F.4th at 1289 ("a challenge to patent eligibility on §101 grounds is an affirmative defense to a claim of patent infringement"). Further, "district courts are strongly encouraged to decide

issues pertaining to invalidity when presented." *Fresenius Med. Care Holdings v. Baxter Int'l*, 2006 WL 1329997, at *7 (N.D. Cal. May 15, 2006).

## II. THE COURT SHOULD RULE ON THE MERITS OF PLAINTIFF'S FALSE ADVERTISING CLAIMS

Plaintiff contends (Opp. 1) the parties did not timely meet and confer regarding its false advertising claims. As previously described, Defendants retained new counsel on March 25, 2026, fewer than seven days before the expedited March 31, 2026 response deadline agreed to by prior counsel. *See* Dkt. 39 ¶¶3, 5, 9. Defendants' new counsel met and conferred on the false advertising claims as soon as practicable and, in so doing, effectuated the purpose underlying Local Rule 7-3. *Id.* Under these circumstances, it would be appropriate for the Court to exercise its discretion to rule on the merits. *See, e.g.*, *Sermeno v. Int'l Paper*, 2026 WL 183853, at *1 n.1 (C.D. Cal. Jan. 22, 2026) (addressing the merits despite noncompliance with L.R.7-3 in the interest of judicial economy and efficiency).

## III. PLAINTIFF'S UCL/FAL CLAIMS FAIL BECAUSE IT HAS AN ADEQUATE REMEDY AT LAW

Plaintiff attempts (Opp. 20) to save its UCL/FAL claims by withdrawing its "request for restitution." But, this is no cure. Contrary to Plaintiff's contention, *Sonner v. Premier Nutrition*, 971 F.3d 834, 844 (9th Cir. 2020), has ***not*** been limited to equitable restitution for ***past*** harm.

This Court rejected that exact argument in *Drake v. Toyota Motor*, cited by Plaintiff, as "out of step with the weight of authority applying *Sonner*." 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (Blumenfeld, J.). Rejecting plaintiffs' argument that *Sonner* does not apply to a claim for injunctive relief, the *Drake* Court considered plaintiffs' argument that injunctive relief was necessary to prevent future harm, but found they had not pled "any substantive allegations" as to why legal remedies, like damages, would be insufficient in the future. *Id.*

Here too, Plaintiff must properly plead that it "lack[s] an adequate remedy at law to seek injunctive relief."  *See, e.g.*, *Clark v. Am. Honda Motor Co.*, 528 F.Supp.3d 1108, 1121-22 (C.D. Cal. 2021) (collecting cases).  Plaintiff has not done so.  Plaintiff argues (Opp. 21) it has "alleged *ongoing* deceptive advertising that is actively diverting its customers—harm that backward-looking damages cannot stop."  But, that threadbare assertion is *not* actually in the Complaint.  The Complaint merely parrots the legal standard, alleging Orion will cause "immediate and irreparable injury" for which there is no adequate legal remedy, and no more.  Complaint ¶¶101, 107.

## IV.    PLAINTIFF'S UCL/FAL CLAIMS LACK STANDING

Plaintiff misleadingly asserts (Opp. 18) that "[c]ourts in this circuit have concluded that 'a competitor plaintiff may allege false advertising claims under UCL and FAL without alleging its own reliance.'"  But, Plaintiff's own authority concedes this "remains an open question," and "[a] *majority* of courts have concluded that *competitor plaintiffs must allege their own reliance* on the alleged misrepresentation." *Allergan USA v. Imprimis Pharms.*, 2017 WL 10526121, at \*13 (C.D. Cal. Nov. 14, 2017) (emphasis added); *SPS Techs. v. Briles Aerospace*, 2019 WL 6841992, at \*6 (C.D. Cal. Oct. 30, 2019) (same).

For the reasons discussed in *Nifty Techs. v. Mango Techs.*, the majority approach should be adopted here and Plaintiff should be required to demonstrate actual reliance for its fraud-based UCL/FAL claims "in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."  2025 WL 1826430, at \*11-13 (S.D. Cal. July 1, 2025).  However, Plaintiff's claims also fail under the minority approach because it has not alleged "a *sufficient causal connection* between the challenged misconduct and the injury suffered." *Chownow v. Owner.com*, 2026 WL 125612, at \*6 (N.D. Cal. Jan. 16, 2026).  The minority view

still requires "reliance of plaintiff's potential customers." *Kachuk Enters. v. Mission Produce*, 2026 WL 216475, at *5 (C.D. Cal. Jan. 22, 2026).

Plaintiff's cursory allegation that it lost sales due to Orion's conduct is insufficient. Plaintiff's reliance on *Chownow* and *SPS Techs.* is misplaced as those plaintiffs both pled specific examples of third-party consumer reliance—namely, "consumers who ha[d] actually seen and relied on the alleged misrepresentations." *See Kachuk*, 2026 WL 216475, at *6. For example, Chownow allegedly lost sales from customers who left for Owner.com because of Owner.com's false statements, "directly result[ing] in Chownow losing actual customers, sales and revenue," including its customer, Metro Pizza. *Chownow*, 2026 WL 125612, at *4-5. In *SPS Techs.*, the court found reliance where the plaintiff "allege[d] that Boeing and other customers relied on [Defendant's] statements in choosing to do business with [Defendant] rather than with Plaintiff." 2019 WL 6841992, at *7.

Here, Plaintiff never alleges facts sufficient to draw a causal connection between any of the alleged false advertising and any actual lost sales. Unlike *Chownow* and *SPS Techs.*, Plaintiff never alleges that any consumers were ***actually*** deceived or misled, let alone that any consumers who then made purchase decisions in reliance of a challenged statement. Plaintiff alleges only that Orion's statements were "likely," "intended" or "designed" to deceive consumers or that consumers "would have been" misled or "would have inferred" false information. Complaint ¶52-53, 55-58, 97-98. Moreover, despite this information being in Plaintiff's control, Plaintiff does not allege specific customers lost to Orion or declines in its sales figures that correlate with Orion's statements.

Plaintiff contends (Opp. 19-20) that allegations regarding the location of alleged false statements on Orion's website and timing relative to Black Friday are somehow sufficient to transform speculative allegations into allegations about what specific consumers actually relied on to their detriment. They are not. The

Complaint lacks facts sufficient to plead a causal connection between any alleged false advertising and any reliance by consumers.  Even Plaintiff's single conclusory allegation that it "lost sales because customers who would have otherwise purchased its products, instead purchased Orion," flows from an allegation that Orion copied the look and feel of Plaintiff's product, not any false advertising.  Complaint ¶100.

Finally, because Plaintiff withdrew its request for restitution, Plaintiff should not be permitted to rely on its purported economic injuries to satisfy the UCL/FAL statutory standing requirement.  Plaintiff cannot have its cake and eat it too.

## V.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE LANHAM ACT, UCL OR FAL

### A.  Plaintiff Fails To Plead Proximate Causation.

Plaintiff argues (Opp. 17) that it has pled proximate causation by repeatedly pointing to the *one same* conclusory allegation regarding lost sales.  Complaint ¶100. But, to allege Lanham Act proximate causation, Plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Diamond Resorts v. Pandora Mktg.*, 2020 WL 8768056, at *4 (C.D. Cal. Nov. 9, 2020).  Plaintiff invokes the presumption of commercial injury between direct competitors to show economic injury, *see TrafficSchool.com v. Edriver*, 653 F.3d 820, 826 (9th Cir. 2011), but it has not pled *any facts* showing the required direct causal link between false advertising and lost sales.  Plaintiff's naked recitation of a legal conclusion couched as a factual allegation is insufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The case law is consistent that such conclusory allegations are insufficient.  In *Botanic Tonics v. Shot of Joy*, for example, the plaintiff similarly alleged that defendant's advertisements "'deceptively lure[d] consumers to purchase [Defendant's] products instead of purchasing [Plaintiff's products],'" and "led to 'lost sales and profits it would have made but for [the false advertising].'"  2024 WL

2209773, at *4 (C.D. Cal. Apr. 1, 2024). But, this was found lacking factual allegations "demonstrating a causal link." *Id.*; *see also Eli Lilly & Co. v. Willow Health Services*, 2026 WL 639976, at *7 (C.D. Cal. Feb. 3, 2026) (same).

On the other hand, in *Diamond Resorts*, the court found proximate cause where Diamond had pled "a direct link" between the false advertisements and at least some individuals ceasing payments to Diamond. Diamond, a timeshare owner and manager, alleged a scheme whereby Exit Defendants placed false advertisements regarding timeshare exit services, enticing consumers to engage Lawyer Defendants to cancel their timeshare contracts with Diamond. *Id.* at *2. Diamond alleged it suffered contractual losses and other lost sales as a result. *Id.* at *5. The court found Diamond's allegations sufficient because there are "a limited number of Diamond Owners who stopped paying Diamond as a result of engaging the Exit Defendants' services." *Id.* at *5-6. Plaintiff has no comparable allegations here.

Because Plaintiff's allegations fall far short of establishing the required direct causal link between Orion's alleged false advertising and any consumer choosing an Orion Sleep System over Plaintiff's product, they must be dismissed.

### B. The Alleged False Statements Are Not Actionable.

Plaintiff's claims fail for the independent reason that the statements are not alleged *in the Complaint* to be false or misleading. Plaintiff cannot save its deficient Complaint with attorney argument.

### 1. Product Comparison Chart

Plaintiff argues (Opp. 11) that a product comparison chart "contains several false and misleading statements." First, Plaintiff claims the chart "falsely represents" that the Eight Sleep Pod does not have certain characteristics. *Id.* But, the Complaint *never* mentions these supposed falsehoods or complains about what the chart says about Plaintiff.

Second, Plaintiff argues statements that Orion's product "[c]ools as low as

50°F" and "[h]eats as high as 115°F" are false, claiming there is some "specific and measurable" claim here, but there is not. The Complaint does not allege that Orion's product cannot heat or cool to those temperatures, rendering the claims false. Rather, it alleges that Orion's product cannot achieve these temperatures "at normal room temperatures" or "in a room of the same temperature," but only in "unstated prerequisite conditions." *Id.* Plaintiff does not allege *that* product claim is false.

Third, Plaintiff claims statements about the existence of a "5-stage sleep tracker" in Orion's pre-release product were false. Complaint ¶47. But, differences between pre-release and released products do not make Orion's statements false when made. At the time, Orion's current product did not exist, and Orion has since removed reference to a "5-stage sleep tracker." *Id.*

## 2.     "Truly Personalized" Sleep System

Plaintiff misleadingly suggests (Opp. 13) that Orion's claim to be "the first smart sleep system ***truly personalized*** to you" is a specific and measurable statement by dropping "truly" and claiming that Orion's claim to be "first" was false when made. This ignores the important distinction between claiming to be the "***first*** smart sleep system" and the "***first*** smart sleep system ***truly personalized*** to you," which is "classic, non-actionable opinion[] or puffery." *See Ariix v. NutriSearch*, 985 F.3d 1107, 1121-22 (9th Cir. 2021).

## 3.     Auto/AI Powered Temperature Adjustment

Orion's statements in 2025 regarding automatic/AI temperature adjustment are not actionable false statements because the statements of Orion's engineer do not demonstrate falsity. To the contrary, Orion advertised "automatic temperature adjustment," and he stated that Orion was working on making it "***more*** automatic." Complaint ¶59. Similarly, Orion advertised smart temperature features, and he stated that Orion "couldn't launch ***a lot*** of intelligence features from day 1," not that they couldn't launch any. *Id.* ¶60.

### 4.    Comfort Options, Dual-Zone, Smart Alarm

Plaintiff complains (Opp. 14) that Orion advertised or described product features on social media for its pre-release product during its development that it did not ultimately include in its product when shipped. Nothing about that makes Orion's statements false or misleading at the time they were made.

### 5.    Testimonials

Plaintiff contends that a reasonable consumer "would understand the testimonials to describe the product available for purchase" (Opp. 15), but does not allege any ways that the testimonials' description of the product available for purchase were false. Plaintiff likewise fails to allege that the individuals' affiliations would be "material, in that it is likely to influence the purchasing decision" of consumers, as required. *Southland Sod Farms v. Stover Seed*, 108 F.3d 1134, 1139 (9th Cir. 1997).

### 6.    Investor Statements

Plaintiff argues (Opp. 16) that it is excused from Rule 9(b) regarding Orion's hypothesized "false statements to investors" because "both companies compete in the same venture-capital market for sleep-technology investment." That is beside the point. Even if Orion made false statements to venture-capital investors (and it did not), that would not be actionable "commercial advertising or promotion" under the Lanham Act. *See, e.g.*, *RPost Holdings v. Trustifi*, 2012 WL 12952728, at *7 (C.D. Cal. May 11, 2012) (statements to potential investors not actionable because they are not made "for the purpose of influencing consumers to buy defendant's goods or services" and not "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion'") (citing *Rice v. Fox Broad*, 330 F.3d 1170, 1181 (9th Cir. 2003)).

## VI.   CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion.

Dated: April 17, 2026                    Respectfully submitted,


By: */s/  Amy Candido*

Amy H. Candido (CA SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
**SIMPSON THACHER & BARTLETT LLP**
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
Aaron L. Plesset (SBN 352104)
aplesset@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

Mona Z. Hanna (SBN 131439)
mhanna@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Ave, 10th Floor
Irvine, California 92614
Phone: (714) 557-7990
Fax: (714) 557-7991

*Counsel for Defendants*
*Orion Longevity Inc. and Blue Fuzion*
*Group Ltd.*

15

DEFENDANTS' REPLY ISO MOTION TO DISMISS

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,966 words, which complies with the 4000 word limit set by Section 6.c.i. of the Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr. updated January 6, 2026.

Dated: April 17, 2026

By: */s/ Amy Candido*
Amy H. Candido
(CA SBN 237829)
amy.candido@stblaw.com