Alex Spiro (*phv forthcoming*)
alexspiro@quinnemanuel.com
Steven Cherny (*phv forthcoming*)
stevencherny@quinnemanuel.com
Patrick D. Curran (SBN 241630)
patrickcurran@quinnemanuel.com
Nicola Felice (*phv forthcoming*)
nicolafelice@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 5th Avenue
New York, New York 10016-7103
Telephone:   (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Plaintiff*
*Eight Sleep Inc.*

*(counsel appearances continued below)*

Amy H. Candido (CA SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
**SIMPSON THACHER & BARTLETT LLP**
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
Aaron L. Plesset (SBN 352104)
aplesset@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

*Counsel for Defendants*
*Orion Longevity Inc. and Blue Fuzion Group Ltd.*

*(counsel appearances continued below)*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EIGHT SLEEP INC., <br><br> Plaintiff, <br><br> v. <br><br> ORION LONGEVITY INC., and BLUE FUZION GROUP LTD., <br><br> Defendants. | **Case No. 2:26-CV-02460-SB-KS** <br><br> **STIPULATED [PROPOSED] ESI ORDER** <br><br> Complaint Filed: March 6, 2026 <br> Trial Date: December 14, 2026 |

Ryan R. Smith (SBN 229323)
rsmith@wsgr.com
Alexander R. Miller (SBN 347827)
alex.miller@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329

Naoya Son (SBN 324444)
nson@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1900 Ave. of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

*Attorneys for Plaintiff*
*Eight Sleep Inc.*

Mona Z. Hanna (SBN 131439)
mhanna@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Ave, 10th Floor
Irvine, California 92614
Phone: (714) 557-7990
Fax: (714) 557-7991

*Counsel for Defendants*
*Orion Longevity Inc. and Blue Fuzion Group Ltd.*

ESI ORDER                                  1                        CASE NO. 2:26-CV-02460-SB-KS

Plaintiff Eight Sleep Inc. ("Plaintiff" or "Eight Sleep") and Defendants Orion Longevity Inc. ("Orion") and Blue Fuzion Group Ltd. ("BFG") (collectively, "Defendants") hereby stipulate and agree as follows:[1]

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

3. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. **Production Formats:**  The parties agree to produce documents in accordance with Appendix A of this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

5. **Email Requests**: General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence, including text messages, instant messages, chat messages, Slack messages, or other forms of electronic correspondence (collectively "email"), absent a showing of good cause. To obtain email, parties must propound specific email production requests.

6. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

7. **Information To Exchange Before Email Requests**: Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic relevant

---

[1] As used herein, the term "party" refers to Plaintiff Eight Sleep on the one side and Defendants Orion and BFG collectively on the other side.  The term "parties" refers collectively to Plaintiff and Defendants.

ESI ORDER                                    2                        CASE NO. 2:26-CV-02460-SB-KS

documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. The parties will engage in early production of this information to promote efficient and economical streamlining of the case.

Additionally, no later than April 20, each party shall identify: (1) the 10 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely, with each custodians identified by name, title, role in the instant dispute, and the likely subject matter(s) of such information; and (2) a list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.  As part of that identification, each party will identify any project names, code names, abbreviations, acronyms, or other terms used internally by any party to refer to itself, any relevant party or third party, the accused products, the practicing products, or components of any party's products.  No sooner than April 24, the parties will choose 6 individuals from the other party's list to select as custodians and exchange initial search terms to run against those custodians' data.  The parties will provide initial hit counts by May 4.

8. **Information To Include In Email Requests**: Email production requests shall identify the custodian(s), search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

9. **Number of Custodians**: Email production requests will be limited as follows: no more than one (1) custodian for BFG; no more than five (5) custodians for Orion; and no more than six (6) custodians for Eight Sleep. The parties may jointly agree to modify these limits without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

10. **Number of Search Terms**: Each email production request shall include a total of no more than ten search terms per custodian. Different search terms and time frames may be appropriate for different custodians, and email production requests will specify which search

ESI ORDER                                    3                         CASE NO. 2:26-CV-02460-SB-KS

terms and which time frame are requested for each custodian. The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.

11. **Search Term Limits & Hits**: Following receipt of custodians and search terms, the party responding to that request ("Producing Party") shall run the requested search terms for each custodian and, to the extent the Producing Party contends the search terms ought to be narrowed, provide the party making the request ("Requesting Party") with document hit counts for the requested search terms plus family members. This process of exchanging hit counts and modifying search terms shall continue until the document hit counts are 5,000 or fewer hits per term, per custodian, without including families and without de-duplication. To clarify, by way of example:  If, for a given custodian, term A returns 4,999 hits and term B returns 4,999 hits, those hit counts are the operative numbers, even if there is overlap between the 4,999 term A hits and the 4,999 term B hits.  The parties recognize that adding a layer of de-duping will add undue time and complexity, and have selected the proposed hit count caps in recognition that there will be documents that are "double counted" because they hit on more than one term.

Search term hits may be reviewed for responsiveness as well as privilege.  The Producing Party must complete production of documents for each custodian at least 14 days before that custodian's deposition or within 21 days of finalizing search terms for that custodian, whichever is earlier.

For emails, if any member of a family group is responsive, all members of that group must also be produced (if not logged as privileged and/or work product), and no such family member shall be withheld from production as a duplicate. For email productions, where multiple email messages are part of a single chain or "thread," a party is only required to review and produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not review or produce earlier, lesser inclusive otherwise identical email messages or "thread members" of that same "thread," provided that (1) any "split thread" or "branched thread" must

ESI ORDER                                    4                    CASE NO. 2:26-CV-02460-SB-KS

also be produced in its entirety, and (2) the Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The search terms shall be narrowly tailored to particular issues.

A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are conceptually related. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/#") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

Indiscriminate terms are presumed to be inappropriate unless they are combined with narrowing search criteria that sufficiently reduce the risk of overproduction by achieving a hit count for that term equal to or lesser than the presumptive limit of 5,000 hits per term per custodian.  The presumption will not apply to party names, e.g., "Orion" or "Eight Sleep."

If a proposed search term results in less than the presumptive limit of 5,000 hits the parties agree that the hit count equal to or less than 5,000 demonstrates that the proposed search term is not indiscriminate or inappropriate.

Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

12. **Search Methodologies & Technology Assisted Review**: The parties shall adopt reasonable, proportionate methodologies to identify, search, collect, cull, review, and produce ESI. The parties recognize and agree that the Producing Party is best situated to determine the most reasonable and proportionate manner to identify, apply any keyword search terms, collect, process, review, and produce responsive, non-privileged ESI. The parties further recognize and agree that each party may use one or more methodologies to identify, search, collect, cull,

ESI ORDER                                   5                         CASE NO. 2:26-CV-02460-SB-KS

review, and produce responsive and non-privileged ESI, including, but not limited to, the use of search terms and/or the use of technology assisted review ("TAR"), as discussed further herein. The parties therefore agree to meet and confer in good faith to attempt to resolve disputes over their respective search methodologies. This ESI Stipulation does not require a Producing Party, or Producing third party agreeing to this ESI Stipulation, to use a particular search methodology, nor does it require the parties to approve, or agree on, another party's methodologies. All parties reserve all rights to employ or to challenge any particular search methodology. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery so long as the methodologies employed apply with all applicable rules.

13. **Databases and Structured Data**: The terms "Database" or "Structured Data" as used herein refer to data existing and managed in databases, which may be organized by rows and columns of data, and may allow for extracted information in reports available in JSON, CSV, Excel, or other structured formats. To the extent that responsive ESI is stored in Structured Data, a Database management system, or a proprietary system or application which is directed to data storage as one of its primary functions, the Producing Party will identify the data source and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive ESI stored in such Database, where such exports and reports shall be in a reasonably usable form, and ESI may be produced in CSV format, tab-delimited text format, Microsoft Excel format, Microsoft Access format, or any other mutually agreed-to format. If there are future disputes over the production of ESI from a Database, the parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the Databases to facilitate that discussion. For the avoidance of doubt, the parties agree that collaboration platforms including a Database or containing Structured Data (*e.g.*, Jira, Salesforce, Confluence) may contain relevant or responsive information and are within the scope of discovery, subject to the limitations discussed

ESI ORDER                                6                       CASE NO. 2:26-CV-02460-SB-KS

herein. Due to the diverse technical configurations associated with various instances of these platforms, including variations in the Databases and Structured Data these platforms employ, the parties shall meet and confer regarding the format of production from any such platform(s) prior to executing any collection methodology.

14. **Discovery of Expert Material:** Drafts of reports of testifying experts are not discoverable, regardless of the form in which the report is drafted. Communications between counsel and testifying experts are also not discoverable, except to the extent that the communications identify information or assumptions relied upon by the experts in formulating the opinions expressed in a report, deposition, or at trial in this case.   Other than as provided in Fed. R. Civ. P. 26, parties may not take discovery of the opinions, reports, drafts of reports or communications with non-testifying or consulting experts.  Reports and materials exempt from discovery under this Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order. The prohibitions set forth in Fed. R. Civ. P. 26 on discovery of communications between a party's attorney and expert witnesses shall apply whether such communications were made in connection with this case or any other judicial or administrative proceeding, including any IPR or PGR proceedings.

15. **Privileged Documents or Information**: A party claiming privilege or protection over documents or ESI otherwise discoverable must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the merits of the claim. A party may do so with a privilege log (including a categorical, metadata, or email threads log) or index in any appropriate way that allows other parties to evaluate the merits of the claim. The parties do not need to log privileged or otherwise protected communications created on or after October 9, 2025, the filing date of the Complaint in *Eight Sleep Inc. v. Orion Longevity Inc, et al.*, No: 2:25-cv-09685-SB-RAO (C.D. Cal.). The parties agree to meet and confer on additional methods to reduce the burden and cost of privilege logs, including, but not limited to, date limitations and carve-outs on categories of items that need not

be logged.

16. **Amendments**; **No Waiver**: The parties may, by written agreement, amend or otherwise modify this Stipulation. Nothing in this Stipulation is intended to, or does, waive any objections to discovery or admissibility, or any other privileges or immunities or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence, including Federal Rule of Evidence 502(d). Pursuant to Fed. R. Evid. 502(d), the production of a privileged and/or work-product-protected document, whether inadvertently or otherwise, is not a waiver of the attorney-client privilege, work product protection or any other protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged and/or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Rule 502(b) do not apply. The parties recognize additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Stipulation is intended to, or does, restrict the ability of any party to request additional information or seek additional relief from the Court. The parties each retain the right to seek exceptions, amendments, or modifications to this Stipulation from the Court.

**IT IS SO STIPULATED**, through the undersigned Counsel of Record.

Dated: April 27, 2026        /s/ *Patrick Curran*
_____

                                Counsel for Plaintiff

Dated: April 27, 2026        /s/ *Jeffrey Nardinelli*
_____

                                Counsel for Defendant

**IT IS SO ORDERED.**

Dated:
_____
                        HON. KAREN L. STEVENSON
                        CHIEF U.S. MAGISTRATE JUDGE

ESI ORDER                      8                   CASE NO. 2:26-CV-02460-SB-KS

**APPENDIX A: PRODUCTION FORMAT**

**1.      Production Format**

Subject to the exceptions for documents to be produced in Native Format, documents will be produced as Bates-stamped tagged image file format ("Tiff") images accompanied by an image load file, a data load file with fielded metadata, document-level extracted text for ESI, and OCR text for scanned hard copy documents and ESI that does not contain extractable text.  Detailed requirements, including files to be delivered in Native Format, are below.

**a.      De-duplication**.  The parties will use industry standard MD5 or SHA hash values at the Family level to globally deduplicate all files identified for production.  Stand-alone Electronic Documents will not be compared to email attachments for deduplication purposes. Hard copy documents containing handwritten notes will not be considered duplicative of any other document.

**b.      Document Unitization**.  Attachments will be produced with parent documents. Unless documents within a family contain solely Privileged Information, parties will produce complete Document Families where any portion of the Family contains relevant information. Where documents are produced and the full Family is not included, the Producing Party will identify the missing attachments by means of a "place holder" file explaining why the document was not produced.

Where the Producing Party converts hard copy documents into electronic format, distinct documents must not be merged into a single record, and single documents must not be split into multiple records.

Hard copy Documents that are segregated or separated from other documents, whether by inclusion of binders, files, dividers, tabs, clips or any other method, will be produced in a manner that reflects these divisions.

**c.      Production Delivery**.  Productions shall be delivered via secure online data

ESI ORDER                                         9                        CASE NO. 2:26-CV-02460-SB-KS

transfer or on an external hard drive if the size of a production makes online transfer impractical.

d.       **Encryption**.  To maximize the security of information in transit, the parties shall encrypt any media on which documents are produced.  In such cases, the Producing Party will transmit the encryption key or password and applicable instructions to the Receiving Party, upon receipt of the encrypted media.

e.       **Tiff Image Requirements**.

i.       Tiff images will be produced in black and white, 300x300 dpi Group IV single-page format and will be consecutively Bates-stamped, whereas color images should be produced as .jpg files.

ii.       Apart from Privileged Information, images will include the following content where present:

1.       For word processing files (e.g., Microsoft Word): Comments, "tracked changes," similar in-line editing and all hidden content.

2.       For presentation files (e.g., Microsoft PowerPoint): Speaker notes, comments, and all other hidden content.

3.       For spreadsheet files (e.g., Microsoft Excel – if applicable): Hidden columns, rows, and sheets; comments, and any similar in-line editing or hidden content.

f.       **Native Production Requirements**.

i.       Spreadsheet files (e.g., Microsoft Excel and .csv files) shall be provided in Native Format with a single placeholder image bearing the Bates number and confidentiality designation.

ii.       The parties may use a Native File redaction tool (e.g. "Blackout") to redact Privileged Information from documents produced in Native Format as long as the Receiving Party can easily identify the redactions.

iii.       When redaction of a spreadsheet is necessary in image format, a redacted full Tiff version may be produced if the spreadsheet is manually formatted for optimal printing.

If the spreadsheet requiring redaction is not reasonably usable in Tiff format, the parties will meet-and-confer to determine a suitable production format.

      **iv.** Media files (e.g. .mp3, .wmv, etc.) will be produced in Native Format with a single placeholder image bearing the Bates number and confidentiality designation.

      **v.** The parties will meet-and-confer to discuss a suitable production format for any proprietary or non-standard file types that require special software or technical knowledge for review, Databases and Database reports, and any document types that cannot be accurately rendered or reviewed in image format.

      **vi.** The parties may request color or higher resolution copies of any documents that cannot be accurately reviewed in black and white Tiff format or because of low resolution issues. Reasonable requests for color documents will not be refused.

      **vii.** Parties may also produce documents in native format as they so desire or to resolve concerns of the type set forth in subparagraph 1(f)(vi) above.

    **g.** **Load Files**. A Concordance compatible data load file will be provided with each production volume containing a header row listing all metadata fields included in the volume. Image load files will be produced in Concordance/Opticon compatible format.

    **h.** **Extracted Text/OCR**

      **i.** Electronically Extracted Text must be provided if available for documents collected from electronic sources. Text generated via OCR shall be provided for all documents that do not contain electronically extractable text (e.g. non-searchable PDF files or JPG images), for documents redacted in image format, and hard copy documents. The parties will not degrade the searchability of documents as part of the document production process.

      **ii.** Document text will be produced as separate, document-level text files and will not be embedded in the metadata load file.

      **iii.** Text files will be named according to the beginning Bates number of the document to which they correspond.

ESI ORDER                     11                 CASE NO. 2:26-CV-02460-SB-KS

**iv.**       If a document is provided in Native Format, the text file will contain the Extracted Text of the native file.

**i.**       **Metadata Fields**. Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields in the table below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) DEDUPED_CUSTODIAN, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, each of which (a) through (k) should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ALLCUSTODIAN(S) | Individual(s) from whom the documents originated |
| CONFIDENTIALITY | Confidentiality designation assigned to document[2] |
| NATIVEFILEPATH | Path to Native File  for document (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| MD5HASH | MD5 hash value of document |
| FILENAME | Name of original file including extension |

| Field Name | Field Description |
|---|---|
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY HH:MM:SS) |
| DATESENT | Date email was sent (format: MM/DD/YYYY HH:MM:SS) |
| FILESIZE | The original file size of the produced document |
| REDACTED | Indicate Yes/No if document redacted |
| TIMEZONE | The time zone that the data was processed in within the eDiscovery processing platform. |

## SIGNATURE ATTESTATION

I, Patrick D. Curran, attest that the other signatories to this document concur in its content and authorize its filing.

/s/ *Patrick D. Curran*
Patrick D. Curran