Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (SBN 241630)
patrickcurran@quinnemanuel.com
Nicola Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Jordan E. Alexander (SBN 305112)
jordanalexander@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
295 5th Avenue
New York, New York 10016-7103
Telephone:   (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Plaintiff,
EIGHT SLEEP INC.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| EIGHT SLEEP INC.,<br><br>Plaintiff,<br><br>v.<br><br>ORION LONGEVITY INC., and<br>BLUE FUZION GROUP LTD.,<br><br>Defendants. | Case No. 2:26-CV-02460-SB-KS<br><br>**EIGHT SLEEP INC.'S OPPOSITION TO DEFENDANT BLUE FUZION GROUP LTD.'S MOTION TO DISMISS**<br><br>**REDACTED VERSION OF THE DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Hon. Stanley Blumenfeld, Jr. Date: July 10, 2026<br>Time:  8:30 a.m.<br>Courtroom:  6C |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND ....................................................................................................2

    A.    Eight Sleep's Patents and the Accused Product.....................................2

    B.    Orion and BFG Develop the Accused Products for the U.S. Market ................................................................................................2

    C.    BFG Sources, Ships and Invoices the Accused Products into the United States ..............................................................................4

    D.    Procedural History ................................................................................6

LEGAL STANDARDS .........................................................................................6

ARGUMENT ..........................................................................................................7

I.    BFG IS SUBJECT TO SPECIFIC JURISDICTION .......................................7

    A.    BFG Purposefully Directed its Activities at the United States ..............8

    B.    Eight Sleep's Claims Arise Out of and Relate to BFG's Activities ..................................................................................... 12

    C.    Exercising Personal Jurisdiction Over BFG is Not Unreasonable ....... 12

II.    EIGHT SLEEP STATES A CLAIM FOR PATENT INFRINGEMENT AGAINST BFG ........................................................................................ 13

    A.    The FAC Plausibly Alleges Direct Infringement ............................... 15

    B.    The FAC Plausibly Alleges Indirect Infringement ............................. 17

    C.    BFG's Rule 12(B)(6) Motion is Barred by Rule 12(g) ........................ 20

    D.    Any Dismissal Should be with Leave to Amend ................................ 21

CONCLUSION .................................................................................................... 21

EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

### Cases

*Am. GNC Corp. v. GoPro, Inc.*,
2018 WL 6074395 (S.D. Cal. Nov. 6, 2018)....................................7, 8, 9, 11, 12

*Apple Inc. v. Zipit Wireless, Inc.*,
30 F.4th 1368 (Fed. Cir. 2022) .............................................................................13

*Asahi Metal Indus. Co. v. Superior Court*,
480 U.S. 102 (1987) ...............................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................6

*Benson Ave. Co. LLC v. ARRI Americas Inc.*,
2025 WL 2684035 (C.D. Cal. Aug. 14, 2025) .....................................................17

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) ...................................................................8, 9, 12

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
444 F.3d 1356 (Fed. Cir. 2006) .......................................................................7, 12

*Carl Zeiss AG v. Nikon Corp.*,
2017 WL 7859075 (C.D. Cal. Sept. 27, 2017)..............................................10, 18

*Chang v. US Glob. Sys.*,
2025 WL 4678048 (C.D. Cal. Sept. 26, 2025)......................................................20

*Cybiotronics Ltd. v. Golden Source Electronics, Ltd.*,
130 F. Supp. 2d 1152 (C.D. Cal. 2001)................................................................17

*Deckers Outdoor Corp. v. Reed Sportswear Mfg. Co.*,
2015 WL 5167466 (C.D. Cal. Sept. 3, 2015)........................................................8

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) ...........................................................................14

*Disney Enterprises, Inc. v. Minimax*,
2026 WL 1476670 (C.D. Cal. May 22, 2026)...........................................6, 7, 10

EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS

*Ebates Performance Mktg., Inc. v. MyMail, Ltd.*,
  2021 WL 121130 (N.D. Cal. Jan. 13, 2021) ....................................................... 13

*EP Family Corp. v. Chen*,
  2020 WL 13652468 (C.D. Cal. Apr. 13, 2020).................................................... 14

*Firstface Co. v. Apple, Inc.*,
  2019 WL 1102374 (N.D. Cal. Mar. 8, 2019) ....................................................... 15

*FOX Factory, Inc. v. SRAM, LLC*,
  2017 WL 4551486 (N.D. Cal. Oct. 11, 2017) ...................................................... 10

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
  2026 WL 1593307 (U.S. June 4, 2026)........................................................ 18, 20

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ........................................................................ 13, 14

*Koala v. Khosla*,
  931 F.3d 887 (9th Cir. 2019) ............................................................................... 6

*Largan Precision Co., Ltd. v. Genius Elec. Optical Co.*,
  86 F. Supp. 3d 1105 (N.D. Cal. 2015)................................................................. 16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ........................................................................................... 19

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
  402 F. Supp. 3d 450 (N.D. Ill. 2019)................................................................... 17

*Niantic, Inc. v. Global++*,
  2020 WL 8620002 (N.D. Cal. Sept. 2, 2020)...................................................... 20

*Peak Health Ctr. v. Dorfman*,
  2020 WL 887935 (N.D. Cal. Feb. 24, 2020)........................................................ 20

*Pinkerton Tobacco Co. v. Art Factory AB*,
  2021 WL 4776349 (C.D. Cal. June 18, 2021) ......................................... 8, 10, 11

*PrimeSource Bldg. Prods., Inc. v. Phillips Screw Co.*,
  2008 WL 779906 (N.D. Tex. Mar. 25, 2008) ...................................................... 10

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009)........................................................................ 7, 9

iii

*Tohono O'odham Nation v. United States Dep't of the Interior*,
138 F.4th 1189 (9th Cir. 2025) ................................................................................ 6

*Unicorn Energy AG v. Tesla Inc.*,
740 F. Supp. 3d 930 (N.D. Cal. 2024) ................................................................... 16

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ................................................................................ 14

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
848 F.3d 1346 (Fed. Cir. 2017) ............................................................................ 13

### <u>Statutes & Other Authorities</u>

35 U.S.C. § 271 .............................................................................. 15, 16, 17, 21

Fed. R. Civ. P. 4(k)(2) ................................................................................... 7

Fed. R. Civ. P. 12(g)(2) ........................................................................... 20, 21

**INTRODUCTION**

Defendant Blue Fuzion Group Ltd. ("BFG") asks this Court to dismiss Eight Sleep's patent claims on the theory that BFG is merely a passive overseas "consultant."  But BFG's documents, and the testimony of its founder and corporate designee, prove otherwise.  BFG *imported* the infringing products; ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████.  Curran Decl., Ex. 1 ("McConnochie Tr.") at 30:5-24, 44:12-24, 48:13-49:3, 55:2-57:25, 86:11-21, 123:9-124:15.  BFG did all this after ████████████ ████████████████████████████  *Id.* at 55:2-4, 55:19-22; Ex. 2.[1]  That is not a passive overseas consultant; it is the conduct of an infringer and someone who is inducing Orion's infringement.  Indeed, BFG's ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████.  McConnochie Tr. at 67:9-68:10; Exs. 3, 4.  BFG is active, not passive.

These extensive connections to Orion's infringing activities more than show BFG is subject to specific jurisdiction.  BFG purposefully directed its activities at the United States by placing the accused product into the stream of commerce through an established distribution channel that terminates here.  Eight Sleep's claims arise directly out of that conduct.  And BFG cannot carry its burden to present a "compelling case" that jurisdiction would be unfair.  BFG's argument rests entirely on a self-serving declaration its founder signed in December 2025—before

---

[1]  All exhibits are attached to the Declaration of Patrick Curran.

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS

jurisdictional discovery—that incorrectly claims BFG did not ship, import, or play any role in the accused product's U.S. distribution. That inaccurate declaration now is thoroughly contradicted by BFG's own business records and by the same declarant's sworn deposition testimony.

Eight Sleep also states a viable claim for infringement. The FAC plausibly alleges that BFG directly infringes by importing the accused product into the United States. BFG's contention that it is a mere "shipper" rather than an "importer" is both factually and legally erroneous. At a minimum, BFG's claims raise factual questions that cannot be resolved on the pleadings. The Motion should be denied.

## BACKGROUND

### A.      Eight Sleep's Patents and the Accused Product

Eight Sleep accuses the "Orion Smart Sleep System," comprising the "Control Tower" (control unit) and "Smart Cover" (mattress-support component), in all of its versions, variations, and prototypes (together, the "Accused Products")—of infringing U.S. Patent Nos. 12,370,339 and 12,377,240. *See, e.g.*, FAC ¶¶ 24, 34-46. The patents claim methods and systems for operating a bed device that obtains biological signals and adjusts the bed's temperature in response. *Id.* ¶¶ 73-74, 93-94. Because Eight Sleep accuses every version of the Orion Sleep System, the Accused Products include the prototype and beta units that BFG shipped into the United States for testing and use—not only finished retail units.

### B.      Orion and BFG Develop the Accused Products for the U.S. Market

Defendant Orion Longevity Inc. ("Orion") is a Delaware corporation headquartered in Santa Monica, California; it sells the accused product in the United States and does not contest jurisdiction. FAC ¶¶ 12, 18. BFG is a Hong Kong company that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 80-1 ("McConnochie Decl.") ¶ 9. But BFG was no passive consultant.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

Case No. 2:26-CV-02460-SB-KS



EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS



**C.    BFG Sources, Ships and Invoices the Accused Products into the United States**

EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS



EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

### D.     Procedural History

The Court denied BFG's motion to dismiss Eight Sleep's original Complaint without prejudice and permitted Eight Sleep to file the operative First Amended Complaint. Dkt. 69. Eight Sleep then took jurisdictional discovery, including BFG's document productions and the Rule 30(b)(6) deposition of McConnochie, BFG's Founder and Executive Director.

## LEGAL STANDARDS

***Rule 12(b)(2).***  "Where, as here, the defendant's motion [to dismiss] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Disney Enterprises, Inc. v. Minimax*, 2026 WL 1476670, at *4 (C.D. Cal. May 22, 2026) (Blumenfeld, J.) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)).  While a plaintiff may not rest on "bare" allegations in its complaint, "uncontroverted allegations in the complaint must be taken as true, and conflicts in the parties' evidence must be resolved in the plaintiff's favor." *Id.*  The Court may consider evidence outside the pleadings on a Rule 12(b)(2) motion. *Id.*

***Rule 12(b)(6).***  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor[.]" *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019).  "To survive a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Tohono O'odham Nation v. United States Dep't of the Interior*, 138 F.4th 1189, 1199 (9th Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.    BFG IS SUBJECT TO SPECIFIC JURISDICTION

Federal Rule of Civil Procedure 4(k)(2) "allow[s] a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1290 (Fed. Cir. 2009). The first two requirements are not in dispute: Eight Sleep asserts a federal patent claim, and BFG has identified no State whose courts could exercise jurisdiction over it. *See Am. GNC Corp. v. GoPro, Inc.*, 2018 WL 6074395, at *5-6 (S.D. Cal. Nov. 6, 2018). The only question is due process, which under Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes*, 563 F.3d at 1295. That inquiry asks whether (1) BFG purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006).

BFG's jurisdictional argument rests on the McConnochie declaration's sweeping conclusory denials—that "BFG does not manufacture, market, offer for sale or sell, import, distribute, or advertise Orion products in or into the United States." Mot. 2 (citing McConnochie Decl. ¶ 6). "But at the pleading stage, conflicts of evidence must be resolved in Plaintiffs' favor." *Disney Enterprises, Inc.*, 2026 WL 1476670, at *4. Here, BFG's records and deposition testimony squarely contradict the McConnochie declaration's denials. BFG's contention that Orion is not its "agent" (Mot. 9-10) is beside the point: BFG is subject to jurisdiction because of its own purposeful conduct.

EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS

### A.    BFG Purposefully Directed its Activities at the United States

Purposeful direction exists where a foreign defendant places the accused product "into the stream of commerce through an established distribution channel that terminates in the forum." *Am. GNC Corp. v. GoPro, Inc.*, 2018 WL 6074395, at *7 (S.D. Cal. Nov. 6, 2018).  Under that test, "due process requires only that the allegedly infringing defendants, acting in consort, placed the accused [products] in the stream of commerce, [that] they knew the likely destination of the products, and [that] their conduct and connections with the forum . . . were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994).[2]

That is what occurred here, and then some. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████    *Id.*  BFG thus did not merely "know the likely destination" of the accused product; it shipped the product to California itself.  *Deckers Outdoor Corp. v. Reed Sportswear Mfg. Co.*, 2015 WL 5167466, at *2 (C.D. Cal. Sept. 3, 2015) (finding the defendant purposefully directed activities at California because it shipped the infringing product to California).  ██████████████████

████████████████████████████████████████████

████████    McConnochie Tr. at 147:1-6.  BFG's intentional act of shipping and invoicing the Accused Product to California is anything but "random, fortuitous, or

---

[2]    Courts apply two formulations of the stream-of-commerce test.  *See Pinkerton Tobacco Co. v. Art Factory AB*, 2021 WL 4776349, at *3-4 (C.D. Cal. June 18, 2021). BFG is subject to personal jurisdiction regardless of which test the Court applies here. BFG did not merely place a product into the stream while aware it might reach the United States; it helped design the accused product for the U.S. market, packaged and shipped prototypes here, and served as the named shipper and invoicing party for the U.S.-bound shipment—precisely the "additional conduct" Justice O'Connor described. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987).

attenuated" contact. *Am. GNC*, 2018 WL 6074395, at *7. The Federal Circuit has held that where a defendant "purposefully shipped the accused [product] into [the forum] through an established distribution channel" and the patent-infringement claim "is alleged to arise out of those activities," "[n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan*, 21 F.3d at 1565. A defendant may be subject to specific jurisdiction "even if [its] contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts." *Synthes*, 563 F.3d at 1297. BFG's contacts here are neither isolated nor sporadic.

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

Courts routinely sustain jurisdiction where, as here, the foreign defendant has "deliberately" "engaged in significant activities" directed at that market. *Am. GNC*, 2018 WL 6074395, at *7. *See Carl Zeiss AG v. Nikon Corp.*, 2017 WL 7859075, at

---

[3] That BFG directly shipped prototypes and materially assisted in shipping beta versions—as opposed to commercial versions—of the Orion system is immaterial to the analysis. This is still infringing conduct directed at this country. Indeed, it is conduct directed at this country from which this cause of action arises. Eight Sleep accuses every version of the Orion Sleep System—including the prototypes and beta units BFG shipped. Thus, BFG's coordination and shipping of those units into the United States for testing and use is conduct that gives rise to both BFG's and Orion's alleged infringement.

*3 (C.D. Cal. Sept. 27, 2017) (stream-of-commerce jurisdiction over foreign manufacturer whose accused products reached California through an established distribution channel, where the defendant "knew, or reasonably could have foreseen, that a termination point of the channel was [California]"); *FOX Factory, Inc. v. SRAM, LLC*, 2017 WL 4551486, at *6 (N.D. Cal. Oct. 11, 2017) (foreign manufacturer that transferred title abroad nonetheless purposefully availed itself by, "acting in consort" with SRAM, "deliberately and purposefully ship[ping] the accused products" into California through an established distribution chain).

Although McConnochie's declaration says otherwise, a sworn denial contradicted by BFG's own business records does not entitle BFG to dismissal. In *Minimax*, the defendant's declaration disclaimed any U.S. sales, distribution, or marketing, yet its own sworn USPTO filing supplied prima facie evidence that it operated the accused service here. 2026 WL 1476670, at *4. This Court resolved the conflict in the plaintiffs' favor and denied dismissal at the pleading stage. *Id*. The contradiction here is even starker. Regardless, the conflict between McConnochie's declaration and BFG's records is, at minimum, a fact issue that should not be resolved at the motion to dismiss stage.

BFG's authorities are inapposite. BFG cites *PrimeSource* and *Pinkerton*, but both involved defendants who never placed product into the stream of commerce. In *PrimeSource*, the defendant was a licensor that "does not manufacture or sell any products" and merely supplied "technical and engineering information," tested samples, and visited licensees' facilities. *PrimeSource Bldg. Prods., Inc. v. Phillips Screw Co.*, 2008 WL 779906, at *4-5 (N.D. Tex. Mar. 25, 2008). In *Pinkerton*, the two foreign defendants—a Swedish contract manufacturer (TAF) and its former parent holding company (TillCe)—were dismissed because neither controlled the path of any product into California. *Pinkerton Tobacco Co*, 2021 WL 4776349, at *4-5. TillCe "did not place any [accused] products in the stream of commerce at all." *Id*. at *5. And TAF was dismissed because it merely "provided a manufacturing

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS

service, fulfilling discrete purchase orders," delivered the finished goods in Sweden, and left "Kretek"—the brand owner—"to distribute the purchased product in its sole discretion."   TAF neither controlled the distribution channel nor "designed the product for the California market," so the only act "purposefully directed toward California was undertaken by Kretek, not TAF." *Id.* at *4-5. BFG, in contrast, designed the accused product for the U.S. market and itself sourced, inspected, packed, shipped, and invoiced it into California. ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

BFG fails to distinguish *American GNC*. Mot. 6. BFG argues that the foreign defendant there manufactured the accused products and reached the United States through a wholly owned subsidiary. But the *American GNC* holding does not turn on manufacturing or corporate affiliation; the court held that the "observance of corporate formalities" and the "arm's length" or "limited" nature of the defendant's role are "irrelevant" and "inconsequential." 2018 WL 6074395, at *10. If anything, BFG's contacts are *more* direct than the defendant's in *American GNC*: that defendant routed products through subsidiaries and never itself shipped to the forum, whereas BFG itself appears on the air waybill, commercial invoice, and packing list for the U.S.-bound commercial shipments, not to mention the prototypes that BFG shipped to California. And BFG's *ipse dixit* that "the accused products are Orion products, not BFG products" (Mot. 5) cannot be squared with BFG's ████████████

████████████████████████████████████████████

████████████████████████(McConnochie Decl. ¶ 10)████

████████████████████████████████████████████

██████████Dkt. 80-2. Indeed, the agreement BFG invokes as proof of mere "overseas

11

consulting" refutes that label on its own terms. ███████████████████ ████████████████████████████████████████ *Id.* § 3.11, ████████████████████████████████████████ *id.* § 16. BFG's claim to be "independently owned and operated" at arm's length from Orion (McConnochie Decl. ¶ 5) is further undercut by the fact that █████████



McConnochie Tr. at 26:4-27:25, 42:1-4, 67:14-68:10.

### B. Eight Sleep's Claims Arise Out of and Relate to BFG's Activities

The relatedness prong is easily met. Eight Sleep's claims are that BFG and Orion infringed its patents by making, using, selling, offering to sell, and/or importing the accused Orion Sleep System. FAC ¶¶ 24, 41-43. Like in *American GNC*, where the patentee's infringement claims "clearly arise out of or relate to" the defendant's stream-of-commerce activities, 2018 WL 6074395, at *11, Eight Sleep's claims arise out of BFG's placement of the accused product into the U.S. market.

### C. Exercising Personal Jurisdiction Over BFG is Not Unreasonable

Because Eight Sleep has made a prima facie showing on the first two prongs, the burden shifts to BFG to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Breckenridge*, 444 F.3d at 1363 (citation omitted). Such cases are "limited to the rare situation in which the plaintiff's interest and the [forum's] interest in adjudicating the dispute . . . are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568. This is not that rare case.

The five reasonableness factors all favor jurisdiction. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354-57 (Fed. Cir. 2017). First, the

burden on BFG is slight: its founder and Executive Director, McConnochie, ███████████████████████, has already sat for deposition as BFG's Rule 30(b)(6) designee, and BFG is litigating in this District alongside Orion. McConnochie Tr. at 26:5-27:25, 42:1-4. Second, the United States, and California, has a strong interest in adjudicating infringement of U.S. patents by foreign actors who direct accused products into this country. *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1380 (Fed. Cir. 2022) ("California has "definite and well-defined interests in commerce and scientific development," and that it has "a substantial interest in protecting its residents from unwarranted claims of patent infringement.") (citation omitted). Third, Eight Sleep has a substantial interest in convenient and effective relief against all who infringe its patents, including BFG. Fourth and fifth, the judicial system's interest in efficient resolution and the shared interest in protecting U.S. patent rights are best served by adjudicating Eight Sleep's claims against BFG and Orion together in a single action, rather than splintering them across fora. *See Ebates Performance Mktg., Inc. v. MyMail, Ltd.*, 2021 WL 121130, at *12 (N.D. Cal. Jan. 13, 2021) (finding the "most efficient resolution of the instant case would be possible in this district" where the court had already issued a decision addressing the validity of the asserted patents). BFG's contrary showing is a single page of conclusory assertions that defending here would be "burdensome" and that the forum lacks an "interest."

## II.    EIGHT SLEEP STATES A CLAIM FOR PATENT INFRINGEMENT AGAINST BFG

As an initial matter, BFG wrongly claims that Eight Sleep's infringement contentions "add nothing" and cannot be incorporated into the FAC. Mot. 14-15. The law is clear, however, that courts may consider documents referenced and relied on in a complaint on a motion to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Incorporation is proper where "the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th

Cir. 2003). Here, the FAC not only references the contentions, but expressly "incorporate[s] [them] herein by reference," FAC ¶ 41, and invokes them throughout, FAC ¶¶ 42-44, 84-87, 101-104. Moreover, the contentions are integral to Eight Sleep's claim of infringement against both BFG and Orion—they map the accused Orion system, element by element, onto each asserted claim and explain, with reference to specific documents, how BFG infringes under § 271(a), (b), and (c). *EP Family Corp. v. Chen*, 2020 WL 13652468, at *4 (C.D. Cal. Apr. 13, 2020) (crediting "claim charts attached to, and incorporated by reference into, the Complaint" in finding infringement adequately alleged).

BFG contends that the doctrine is limited to the situation where a defendant seeks to incorporate a document into a complaint "to prevent artful pleading by plaintiffs," (Mot. 14), but the case law does not support that assertion. Courts routinely hold that documents referenced and relied on in a complaint can be properly considered when ruling on a motion to dismiss, and there is no suggestion in those cases (including the case BFG cites) that the doctrine applies only to a **Defendant's** request for incorporation. *Khoja*, 899 F.3d at 1003 (explaining only that Defendants should not overuse the doctrine to turn a motion to dismiss into a premature summary judgment preview). Such a rule would make no sense. Under BFG's logic, if a plaintiff relies on a critical document to establish their claim but does not physically attach it, the plaintiff is forbidden from relying on it, but the defendant is perfectly allowed to pull that exact same document into the record to try and dismiss the case. The Ninth Circuit does not treat incorporation by reference in that one-sided manner.

BFG dismisses the contentions as mere "argumentative discovery documents," (Mot. 14), but that misapprehends their notice pleading function. The purpose of a complaint is to place the alleged infringer on notice of what activity is being accused of infringement. *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). A complaint that "incorporates by reference each of the patents at issue," "calls out the specific claims that have been infringed," names the accused

product, and "pinpoints the infringing components and functions" gives the defendant "fair notice . . . which is all that is required to meet the plausibility standards of *Iqbal* and *Twombly*." *Firstface Co. v. Apple, Inc.*, 2019 WL 1102374, at *1 (N.D. Cal. Mar. 8, 2019). There is no question that BFG is on notice through Eight Sleep's well-pleaded FAC, as well as the incorporated infringement contentions, which BFG was served with on May 15, 2026. BFG knows exactly what documents are being discussed, has copies of them, and their authenticity is not in question. Requiring the contentions to be physically attached to the complaint would serve no function other than to clog the Court's docket with dozens of pages of dense technical material that would need to be filed under seal without reason. The Court can and should look to the complaint, including materials expressly incorporated by reference in the complaint, when considering a motion challenging a supposed lack of notice pleading in that complaint.

### A.    The FAC Plausibly Alleges Direct Infringement

Section 271(a) reaches anyone who, without authority, "makes, uses, offers to sell, or sells" the patented invention "within the United States" or "***imports***" it into the United States. 35 U.S.C. § 271(a). The FAC alleges that BFG "participated in the manufacturing and importation" of the accused product; engaged in "direct involvement in making, importing, and selling the Accused Products"; "imports the Accused Products . . . from China to the United States"; and "directly infringes" each asserted patent "by importing the Accused Products . . . into the United States." FAC ¶¶ 24, 41, 42, 84, 101. Eight Sleep's infringement contentions go beyond alleging the infringing acts; they even identify the specific BFG business records evidencing the accused acts of importation, including BFG's ██████████████████████████ ███████████████████████████████████████████████ ████████. Infringement Contentions at 3-4; *see also* Dkt. 80-3. The contentions further allege that BFG's own "shipment of [the] Accused Products . . . into the United

EIGHT SLEEP INC.'S OPPOSITION TO BLUE FUZION GROUP'S MOTION TO DISMISS

States . . . independently constitutes infringement under § 271(a)." *Id.* at 4. That is more than enough at the pleading stage.

BFG argues that, whatever its role in shipping, it is not an "importer" because Orion is the "importer of record" and "ultimate consignee" on the customs forms. Mot. 17-18. The argument fails for three reasons.

*First*, "importation simply means '[t]he bringing of goods into a country from another country.'" *Largan Precision Co., Ltd. v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105, 1115-16 (N.D. Cal. 2015), *aff'd*, 646 F. App'x 946 (Fed. Cir. 2016). Courts construing § 271(a) read "import" according to its plain meaning, without grafting on a commercial-purpose or title requirement. *Unicorn Energy AG v. Tesla Inc.*, 740 F. Supp. 3d 930, 960 (N.D. Cal. 2024) ("[T]he legislative history "does not establish that Congress clearly intended 'importation' in § 271(g) to mean conduct or activity other than that which the plain meaning of the term implies" nor did it "intend the term 'importation' to turn upon extremely intricate concepts of title and sales contracts.") (citation omitted). The FAC alleges exactly that: BFG "imports the Accused Products . . . from China to the United States," and BFG's "shipment of [the] Accused Products . . . into the United States . . . independently constitutes infringement under § 271(a)." FAC ¶¶ 42, 84, 101. A customs designation of "importer of record" or "ultimate consignee"—regulatory labels that fix duty liability and identify the party taking delivery, not patent liability—does not determine who "imports" for purposes of § 271(a).

*Second*, *Largan* forecloses BFG's title argument. There, the court held that the foreign defendant directly infringed by ***sending*** product samples into the United States, rejecting its contention that the U.S. ***recipient*** was the importer, because "there [was] no third party to whom [the defendant] transferred the samples to abroad before they were sent to" the recipient, and "no indication that title to the samples [was] transferred to the recipient abroad." 86 F. Supp. 3d at 1115. The FAC pleads the same here: it alleges that BFG itself sends the Accused Products from China into the United

States, FAC ¶¶ 42, 84, 101, and does not allege any intervening transfer of the goods to a third party—or any passage of title—abroad.  BFG's "importer of record" and title theory turns on matters outside the FAC that, on a Rule 12(b)(6) motion, cannot displace those well-pleaded allegations.

*Third*, the shipper-versus-importer question BFG poses cannot be resolved on the pleadings.  For example, in one of BFG's out-of-circuit cases, *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 402 F. Supp. 3d 450, 457-58 (N.D. Ill. 2019), the court confronted a similar argument—that the foreign defendant was a mere "shipper," not an "importer," under *Cybiotronics*—and found that it "cannot, at the pleadings stage, determine whether [the defendant] serves as a 'shipper' rather than an 'importer,' as a matter of law."  402 F. Supp. 3d at 458.  BFG's reliance on *Cybiotronics* is also misplaced, as that case was decided at summary judgment after a "detailed, post-discovery analysis."  *Id.* (citing *Cybiotronics Ltd. v. Golden Source Electronics, Ltd.*, 130 F. Supp. 2d 1152, 1173-76 (C.D. Cal. 2001)).  The FAC plausibly alleges importation, and that ends the Rule 12(b)(6) inquiry as to direct infringement.

BFG's authorities do not require a different result at the pleading stage.  In *Benson Ave. Co. LLC v. ARRI Americas Inc.*, 2025 WL 2684035, at *2 (C.D. Cal. Aug. 14, 2025), the court dismissed a § 271(a) claim because the plaintiff pleaded only "on information and belief" that a foreign-made device was "imported into the United States," with no supporting facts and no discovery—"threadbare recitals" that the court evaluated on the complaint "standing alone."  2025 WL 2684035, at *2-3.  Eight Sleep's importation allegations, by contrast, are not pleaded on information and belief.  The FAC affirmatively alleges that "BFG imports the Accused Products . . . from China to the United States."  FAC ¶¶ 42, 84, 101.

## B.   The FAC Plausibly Alleges Indirect Infringement

Induced infringement under § 271(b) requires three things: an act of direct infringement by another, the defendant's knowledge that the induced acts constitute

infringement, and "active steps . . . to encourage direct infringement." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 2026 WL 1593307, at *4 (U.S. June 4, 2026) (citation omitted). The predicate direct infringement is not in dispute: Orion—which sells the accused Orion Sleep System in the United States and does not contest jurisdiction—directly infringes here by making, using, offering to sell, and selling the accused product. FAC ¶¶ 12, 18, 22, 83, 100.

The FAC adequately alleged knowledge. Knowledge of the patents "obtained through the complaint" is itself sufficient to support an indirect-infringement claim at the pleading stage. *Carl Zeiss AG*, 2017 WL 7859075, at *4 (allegation that a defendant "became aware of the patent-in-suit, at the latest, when it was served with the complaint" supports indirect infringement) (citation omitted, cleaned up). The FAC alleges more: that BFG "is on notice of the asserted patents, including through the prior suit accusing Orion and BFG of infringement," and has been on notice of the Asserted Patents "no later than October 9, 2025," when Eight Sleep filed and served its complaint in *Eight Sleep I*. FAC ¶¶ 44, 46. The FAC further alleges that, to the extent BFG lacked actual knowledge, its failure to investigate Eight Sleep's patents before undertaking "a direct product comparison" constituted willful blindness. FAC ¶ 45. Accepted as true, those allegations establish the requisite knowledge.[4]

The FAC also alleges the requisite affirmative conduct and intent. It alleges that "BFG's coordination of design, manufacturing, and delivery of the Accused Products . . . to Orion supports inducement liability under § 271(b)," and that "by developing the Accused Products . . . , sourcing components, overseeing factory production, and delivering finished goods in the United States—knowing Orion will then use, offer to sell, and sell those products domestically—BFG actively encourages and facilitates Orion's infringing acts" with "specific intent to facilitate acts of infringement." FAC ¶ 44; *see also* FAC ¶¶ 24, 41-42 (BFG "participated in the

---

[4]  In fact, discovery has confirmed the accuracy of Eight Sleep's allegations.

manufacturing and importation" of the Accused Products and had "direct involvement in making, importing, and selling" them); *id.* ¶¶ 85, 102 (BFG "induces Orion and its customer to infringe by providing support to the manufacturing and importation of the Accused Products"). Those are not the "ordinary acts incident to product distribution, such as offering customers technical support or product updates," that *Grokster* places outside the inducement rule. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005). Developing the accused product, sourcing its components, overseeing its manufacture, and coordinating the delivery of finished, commercial finished goods while knowing the recipient will sell them domestically is "purposeful, culpable . . . conduct." *Id.*

In *Sound N Light Animatronics Co. v. Cloud B, Inc.*, the court denied a motion to dismiss an induced-infringement claim where the complaint alleged that the defendant "subcontracted with [a manufacturer] to manufacture [the patentee's] products." 2017 WL 3081685, at *12-13 (C.D. Cal. Apr. 7, 2017). The court explained that "specific intent may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement," and that allegations of arranging the manufacture of the accused product "suffice[] to plead specific intent to induce infringement." *Id.* The FAC likewise alleges that BFG developed the Accused Products, sourced their components, oversaw their factory production, and delivered the finished goods toward U.S. consumers. FAC ¶¶ 24, 41-44. If the subcontracting allegations in *Sound N Light* sufficed, Eight Sleep's allegations of deeper involvement do.

BFG's citation to *Fluidigm Corp. v. IONpath, Inc.* is misplaced. *Fluidigm* dismissed an inducement claim because the complaint alleged only that the defendant's article and brochure "describe[d]" an infringing mode—"broad descriptions of the field" that were "too generic" to show affirmative intent—and because the complaint did not plead pre-suit knowledge of the patents. 2020 WL 408988, at *3-4 (N.D. Cal. Jan. 24, 2020). As that court explained, "[m]erely

19

describing an infringing mode is not the same as recommending, encouraging, or promoting." *Id.* at *3. The FAC pleads the opposite of "merely describing": it alleges that BFG developed the Accused Products, sourced their components, oversaw their manufacture, and delivered finished goods into the United States knowing Orion would sell them domestically—and it pleads BFG's knowledge. FAC ¶¶ 24, 41-46. At bottom, the FAC alleges BFG's own purposeful conduct and active encouragement of Orion's infringement—not merely "how others may understand" BFG's statements. *Cf. Hikma*, 2026 WL 1593307, at *6 n.3.

### C.     BFG's Rule 12(B)(6) Motion is Barred by Rule 12(g)

BFG's argument that Eight Sleep has not stated a claim for patent infringement is barred by Rule 12(g). When a party makes a Rule 12 motion, it "must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Consistent with that rule, "[i]t is black letter law that arguments on a motion to dismiss which could have been raised previously, but were not, cannot be raised in a subsequent motion to dismiss for an amended complaint." *Chang v. US Glob. Sys.*, 2025 WL 4678048, at *6 (C.D. Cal. Sept. 26, 2025); *see also Niantic, Inc. v. Global++*, 2020 WL 8620002, at *3 (N.D. Cal. Sept. 2, 2020). The filing of an amended complaint does not change that rule when "the allegations of the [amended complaint] do not differ substantially from those of the [earlier complaint]." *Peak Health Ctr. v. Dorfman*, 2020 WL 887935, at *5 (N.D. Cal. Feb. 24, 2020).

When BFG moved to dismiss the original Complaint, it argued only that Eight Sleep's patents are invalid under 35 U.S.C. § 101 and that the Court lacks personal jurisdiction over BFG. *See* Dkt. 36; *see also* Dkt. 69 at 4 (noting that, "[t]o avoid waiver, Defendants included in their motion a brief argument that the Court lacks personal jurisdiction over BFG," and denying that argument "without prejudice" pending jurisdictional discovery). BFG suggests it moved to dismiss in "*Eight Sleep I*, but the Court did not resolve that motion because the Court dismissed the entire

action for lack of subject matter jurisdiction and instructed Eight Sleep to file a new complaint." Mot. 2.  But BFG omits that—like its first Rule 12 motion here—its Rule 12 motion in *Eight Sleep I **did not argue*** that Eight Sleep failed to state a claim under 35 U.S.C. § 271.  Yet, Eight Sleep's complaints have consistently alleged, *inter alia*, that BFG "provid[ed] product development, overseas manufacturing support, and importation and logistics for importing Orion's knock-off products into the United States." *Compare* Dkt. 1 ¶¶ 8, 41 *with* Dkt. 71 ¶¶ 8, 41, *with Eight Sleep I*, Dkt. 25 ¶ 35.  BFG's failure-to-state-a-claim defense was thus "available to [BFG] but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).

The Court's caution that, "[i]f Plaintiff continues to assert its patent infringement claims against BFG, the Court expects the FAC to identify the infringing acts by BFG on which the claims are based," was not an invitation to use the FAC as an occasion for a new merits attack on infringement claims it had earlier declined to challenge.  Dkt. 69.  The Court should not entertain BFG's successive merits challenge.

### D.    Any Dismissal Should be with Leave to Amend

Eight Sleep has developed a substantial jurisdictional and factual record through discovery, and any pleading deficiency the Court identifies could readily be cured by conforming the FAC to that record.  Should the Court grant any portion of the Motion, Eight Sleep respectfully requests leave to amend.

### CONCLUSION

Eight Sleep respectfully requests that the Court deny BFG's Motion.

Dated:  June 18, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:  /s/ Patrick D. Curran
     Alex Spiro
     Steven Cherny

21

Patrick D. Curran
Nicola Felice

*Attorneys for Plaintiff,*
*EIGHT SLEEP INC.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Eight Sleep Inc., certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 18, 2026                    By:    */s/ Patrick D. Curran*
                                                Patrick D. Curran

                                                *Attorneys for Plaintiff,*
                                                *EIGHT SLEEP INC.*