Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (SBN 241630)
patrickcurran@quinnemanuel.com
Nicola Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Jordan E. Alexander (SBN 305112)
jordanalexander@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
295 5th Avenue
New York, New York 10016-7103
Telephone:   (212) 849-7000
Facsimile:   (212) 849-7100

*Attorneys for Plaintiff,
EIGHT SLEEP INC.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EIGHT SLEEP INC., <br><br> Plaintiff, <br><br> v. <br><br> ORION LONGEVITY INC., and BLUE FUZION GROUP LTD., <br><br> Defendants. | Case No. 2:26-CV-02460-SB-KS <br><br> **EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** <br><br> Hon. Stanley Blumenfeld, Jr. <br> Date: July 10, 2026 <br> Time: 8:30 a.m. <br> Courtroom: 6C |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 4

  A.  "bed device" ............................................................................................. 4

  B.  "temperature control device" ................................................................. 10

  C.  "sleep system" ........................................................................................ 15

  D.  "the processor" ....................................................................................... 19

III.  CONCLUSION ................................................................................................ 22

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................................................................... 3, 10

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008) ............................................................................ 19

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ............................................................................ 14

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*,
998 F.3d 1320 (Fed. Cir. 2021) .............................................................................. 8

*Convolve, Inc. v. Compaq Computer Corp.*,
812 F.3d 1313 (Fed. Cir. 2016) ....................................................................... 19, 20

*FMC Corp. v. Sharda USA, LLC*,
145 F.4th 1326 (Fed. Cir. 2025) ............................................................................. 9

*In re Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*,
423 F.3d 1343 (Fed. Cir. 2005) ............................................................................ 19

*GPNE Corp. v. Apple Inc.*,
830 F.3d 1365 (Fed. Cir. 2016) .............................................................................. 9

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ....................................................................... 2, 5, 7

*In Skky, Inc. v. MindGeek, s.a.r.l.*,
859 F.3d 1014 (Fed. Cir. 2017) ............................................................................ 16

*KCJ Corp. v. Kinetic Concepts, Inc.*,
223 F.3d 1351 (Fed. Cir. 2000) ............................................................................ 19

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
29 F.4th 1376 (Fed. Cir. 2022) ............................................................................... 7

*MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) .............................................................................. 7

*McCarty v. Lehigh Val R Co*,
160 U.S. 110 (1895) ................................................................................................ 9

i

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

*In re McFadden*,
   2025 WL 2553720 (Fed. Cir. Sept. 5, 2025)........................................................16

*Myco Indus., Inc. v. BlephEx, LLC*,
   955 F.3d 1 (Fed. Cir. 2020) ......................................................................................1

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
   287 F.3d 1062 (Fed. Cir. 2002) ................................................................................1

*Oatey Co. v. IPS Corp.*,
   514 F.3d 1271 (Fed. Cir. 2008) ................................................................................7

*Parity Networks v. Edgecore USA Corp.*,
   2020 WL 8569299 (C.D. Cal. Dec. 22, 2020)........................................................18

*Rockwell Int'l Corp. v. United States*,
   147 F.3d 1358 (Fed. Cir. 1998) ................................................................................9

*Salazar v. AT&T Mobility LLC*,
   64 F.4th 1311 (Fed. Cir. 2023) ..............................................................................21

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 (Fed. Cir. 1985) ..............................................................................13

*Syneron Med. Ltd. v. Invasix, Inc.*,
   2018 WL 4696971 (C.D. Cal. Sept. 5, 2018).....................................................17, 18

*In re Varma*,
   816 F.3d 1352 (Fed. Cir. 2016) ..............................................................................21

*VDPP LLC v. Vizio, Inc.*,
   2022 WL 885771 (Fed. Cir. Mar. 25, 2022) ..........................................................17

*Wonderland Switzerland AG v. Evenflo Co., Inc.*,
   162 F.4th 1346 (Fed. Cir. 2025) ...............................................................................9

*X One, Inc. v. Uber Techs., Inc.*,
   440 F. Supp. 3d 1019 (N.D. Cal. 2020)...................................................................21

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

## I.   INTRODUCTION

The issue presently before the Court is claim construction, and claim construction has a settled methodology.  Courts start with the plain English meanings of the words in question in light of the record intrinsic to the asserted patents—the claims, the specification, and the prosecution history.  Defendants' Opening Brief studiously avoids that methodology.  Instead of starting with words of the claims or the specification, it begins with a narrative about an early Eight Sleep product from 2015, the accused Orion product, and the contention that the asserted claims are invalid if read to reach Orion's product.  None of that has any bearing on claim scope and this is an invitation to error.  Claim scope is not measured against the inventor's commercial prototype, [1] against the accused device,[2] or based on Defendants' untested invalidity contentions. In substance, Defendants' brief is a premature motion for summary judgment of non-infringement and invalidity that fails to assist the Court in determining what the disputed claim terms mean, a threshold determination to assess those liability issues.  The intrinsic record answers that question without resort to any of the extrinsic, invalidity- and infringement-driven material Defendants make the focus of their brief.

---

[1] A patent is not confined to the embodiment the applicant happened to have built when the application was filed or any commercial embodiment. *See Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 15 (Fed. Cir. 2020) ("The law is clear, however, that infringement is determined on the basis of the claims, not on the basis of a comparison with the patentee's commercial embodiment of the claimed invention"). An inventor need not build anything at all to obtain a patent, and the claims—not any embodiment or prototype—define the invention. If a patent reached no further than the first product, there would be little reason to obtain one protection for decades after the application was filed.

[2] Defendants' attempt to measure claim scope based on the operation of the accused device is contrary to black-letter law; "[i]t is well settled that claims may not be construed by reference to the accused device." *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002).

Case No. 2:26-CV-02460-SB-KS
EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Defendants' real objective is apparent—artificially limit the asserted terms to create non-infringement defenses.  For "bed device," Defendants expressly agree with Plaintiff that the plain and ordinary meaning of "bed device" *includes* "other hardware to drive functionality, such as sensors, a computer processor, and heating coils," yet they ask the Court to narrow the term because they think "*fundamentally* it is the device the user sleeps on." For "temperature control device," Defendants concede the device may be "*closely integrated* with the bed device," yet ask the Court to rewrite the claim to require that it be "*separate from*" the bed device. For claim 29, Defendants ask the Court to treat a claim that never says the word means as means plus function and that expressly recites "a processor and a memory" as though it recited no structure at all, so that it can be cabined under § 112(f). And for "a processor," Defendants ask the Court to depart from the settled canon of construction that "a" means "one or more" and to require a single processor to perform every step of a multi-step, multi-user, multi-zone method even though the claims never say that. Each proposal shares a common feature: it would carve the accused product out of the claims, not by reference to anything in the intrinsic record, but by reference to where Defendants want the line to fall.

That is not how claim construction works. Departing from the ordinary meaning of a term requires either lexicography or a clear and unmistakable disavowal in the intrinsic record.  *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).  Defendants identify neither. There is no definition in the specification that limits "bed device" to the sleeping surface, and no statement anywhere in the patents disclaiming the components Defendants would exclude. To the contrary, the specification affirmatively describes "bed device[s]" that include processors and environment sensors that are not part of the sleeping surface, and temperature control structures that are integral to the bed device.  Simply put, Defendants' constructions expressly contradict the intrinsic record.

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Defendants try to justify their constructions by citing *02 Micro* and arguing that, where the parties dispute the plain and ordinary meaning of a term, it is the Court's duty to resolve it.  But what Defendants' brief makes clear is that the parties actually agree on the plain and ordinary meanings of the claim terms —the "bed device" includes hardware to drive functionality, the "temperature control device" is a device that controls the temperature that is "integral" with the bed device, claim 29 includes structure because it must have at least one processor, and "an indefinite article 'a' or 'an' . . . typically means 'one or more'" in the context of claim 29.  The only dispute is whether the claim terms should be narrowed beyond these agreed-on meanings, in the manner Defendants propose, in order to avoid infringement.  That is not a legitimate dispute over claim scope requiring a more specific construction than plain and ordinary meaning.[3] *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) ("The district court did not err in concluding that these terms have plain meanings that do not require additional construction. ActiveVideo's proposed construction erroneously reads limitations into the claims and the district court properly rejected that construction and resolved the dispute between the parties.").

---

[3]   Defendants suggest (Br. 4) that the Court already has determined that the claims require *temperature adjustment* in "real time," quoting the Order on Defendants' motion to dismiss that discussed *collecting signals* in "real time"—troubling sleight of hand.  The Court's prior order noted that the patent describes "a device that repeatedly adjusts temperatures in response to both real time biological signals and environmental factors." The Court's observation that biological *signals* are obtained in real time is not equivalent to Defendants' repeated assertions that the claimed temperature *adjustment* must occur in real time.  No claim term requires it, and the patents and claims repeatedly discuss temperature adjustment based on *historical* data. Defendants have not asked the Court to construe any term to require real time temperature adjustment, and this is an irrelevant and argumentative thematic point Defendants repeatedly insert into their briefs regardless of the issue before the Court.

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

For the reasons below, the Court should reject Defendants' proposed constructions and adopt the plain and ordinary meaning of "bed device," "temperature control device," and "a processor / the processor," and should hold that claim 29 is not governed by 35 U.S.C. § 112(f).

## II.    ARGUMENT

### A.    "bed device"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "bed device" ('339 Patent cls. 1, 4, 28; '240 Patent, cls. 1, 8, 9, 10) | Plain and ordinary meaning | "device the user sleeps on" |

Defendants' Opening Brief makes clear that the parties agree on the plain and ordinary meaning of "bed device."  Specifically, there is no dispute that a user sleeps on part of the bed device and that asserted claims require identification of the user on the bed device.  There  also is  no dispute that a "bed device" can include components other than just the bed or portion where a user sleeps—indeed, according to Defendants, "***[t]he bed device includes other hardware to drive functionality***, such as sensors, a computer processor, and heating coils." Br. 6.  Thus, the plain and ordinary meaning of the term to both parties is: a device including a portion on which a user sleeps, and that the claimed bed device can include equipment used to operate and adjust the temperature based on biological signals upon which the user need not sleep.

Defendants' concession expressly defeats their proposed construction. Defendants ask the Court to construe "bed device" to mean the "device the user sleeps on," but then admit that "[t]he bed device includes other hardware to drive functionality, such as sensors, a computer processor, and heating coils," Br. 6.—all of which the specification shows a user need not sleep on.  Having conceded the point, Defendants try to qualify it with a single word: "but *fundamentally* it is the device the user sleeps on." *Id.*  But a patentee's claim is not limited to what an accused infringer

considers the "fundamental" part of a patented device. Rather, a disputed term is defined by the claim language read in light of the full specification, and it is entitled to its plain and ordinary meaning absent lexicography or clear disavowal, neither of which Defendants argue exist here. *Hill-Rom*, 755 F.3d at 1371. Simply put, Defendants offer no reason or evidence, other than a self-serving assertion of fundamentality for why the hardware they concede is part of the bed device should be read out of the term.[4]

Indeed, the intrinsic evidence compels the opposite conclusion. It confirms that the hardware Defendants identify—sensors and a computer processor—are part of the "bed device," but yet clearly are not components upon which the use sleeps. *See* '240 patent at 5:15-16; '339 patent, 22:10-11 ("wherein the bed device comprises a processor . . . ."). Specifically, Figure 2 depicts "an example of ***the bed device***" where the environmental sensor and processor are external to and physically separated from the bed where the user sleeps.



**FIG. 2**

_____

[4]  Every defendant believes that an asserted claim ***fundamentally*** does not cover their accused product.

5

The specification, in fact, confirms that "[i]n one embodiment, the environment sensors … are placed next to the bed." *Id.* at 5:7–9.  It also describes the Processor 230 as "any type of microcontroller, or any processor in a mobile terminal, fixed terminal, or portable terminal, including a mobile handset … ***notebook computer … tablet computer***," *id.* at 6:4–15—none of which are something upon which a person sleeps.

Curiously, Defendants argue that "[e]very reference in the specification . . . confirms the bed device is the device the user sleeps on," but completely fail to explain how any of the above descriptions support their construction.  Br. at 5.  In fact, the very portion of the specification that Defendants quote undermines their argument.  They say "the patents explain that '[a] user sensor 210, associated with ***a mattress 200*** of ***the bed device 120***, monitors bio signals associated with a user sleeping on the mattress 200,'" but this supports Eight Sleep, not Defendants.  Br. at 6 (quoting '240 patent at 5:16-19).  This, in fact, is the portion of the specification describing Figure 2, which states ***in full***: "FIG. 2 illustrates an example of ***the bed device*** of FIG. 1, according to one embodiment. A user sensor 210, associated with a mattress 200 of the bed device 120, monitors bio signals associated with a user sleeping on the mattress 200."  '240 patent, 5:15-19.  This passage expressly distinguishes the mattress ("200"), on which the user explicitly is shown sleeping in Figure 2, from the bed device ("120").  If the bed device were the mattress, the specification would not separately number them or describe the mattress as a component "of" the bed device.

This disclosure also is consistent with the numerous other portions of the specification that show that the bed/mattress is but one component of the bed device and not coextensive with it. *See, e.g.,* '339 patent claim 28 ("bed device comprises a processor") '240 patent at 2:28-30 ("In one embodiment, the appliance is a ***bed device***, capable of heating or cooling the user's ***bed***"); *id.* at 5:15-17 ("A user sensor 210, associated with a ***mattress*** 200 of the ***bed device***"); *id.* at 7:58-60 ("If the user is in ***bed***, the bed temperature is low, and the ambient light is low, the process sends a

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

control signal to the ***bed device***"). Defendants' construction would improperly exclude all of these embodiments. *MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) (explaining that a construction that excludes disclosed embodiments "is rarely, if ever, correct"); *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008) ("[W]here claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary.").

Defendants' reliance on the embodiments shown in Figures 1 and 3 also is misplaced. As an initial matter, neither figure supports Defendants' assertion that the "bed device" is only the device upon which the user sleeps. Figure 1 "is a diagram of a bed device, according to one embodiment," depicting "a smart bed" and then, separately, a processor, user sensors, and environmental sensors—the environmental sensors being described as "placed next to the bed." '240 patent, 4:64-5:10. Figure 3 is said to "illustrate[] an example of layers comprising the bed pad device," and thus is specifically focused on depicting those layers rather than any components of the bed device that may be external to the layers. *Id.* at 6:16-23. But even if these exemplary embodiments include a bed device where are all of the hardware is contained within the structure of the bed, that does not limit the "bed device" term as Defendants argue. *See Hill-Rom*, 755 F.3d at 1371, 1379 (explaining it is improper to import limitations from the specification into the claims, in the same way it is improper to read claims in a way that carves out particular embodiments). Dependent claim 4 of the '339 patent proves this is the case. It recites "[t]he method of claim 1, wherein the bed device is a mattress or a mattress cover," showing the "bed device" of independent claim 1 is necessarily broader than just the part the "user sleeps on" (the mattress or mattress cover). Indeed, if a "bed device" was limited to just the mattress or mattress pad as Defendants claim, there would be no need to include dependent claim 4 at all. *See Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022) ("an independent claim is broader than a claim that depends

from it…Otherwise, the dependent claims would have no scope and thus be meaningless. A claim construction that leads to that result is generally disfavored").

And contrary to Defendants' argument, the claim language does not compel a different conclusion. Br. at 5. For example, claim limitations reciting "presence of the user on the bed device" say nothing about whether all of the bed device components must be located within the bed or slept upon. Moreover, that a user must be "on" a bed device does not mean that there are no components of the bed device that are separate from the bed. Br. at 5. For instance, Figure 2 "illustrates an example of *a bed device*," where the user is "sleeping *on* the mattress 200," but not on the other components of the "bed device" located outside of the bed (e.g., the processor and environment sensor). '240 patent at 2:51-52.

Given the lack of intrinsic support for its construction, Defendants resort to irrelevant arguments regarding Eight Sleep's infringement contentions. Specifically, Defendants argue that the Court must adopt their construction because Eight Sleep allegedly identifies the accused "bed device" as a number of components in Orion's system." Br. at 6-7. But whether Orion's product falls within the scope of the claims is a fact question for trial, not an issue relevant to the Court's present determination regarding the scope of the claims, which must necessarily come before consideration of infringement. "The first step of the infringement analysis is claim construction… The second step of the infringement analysis involves a comparison of the accused product to the construed claims." *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1327 (Fed. Cir. 2021). The Court should thus disregard those arguments as a distraction from the task at hand.[5]

---

[5]  Defendants also reference their invalidity positions. Specifically, they argue that if the claims are "construed to cover the water-based temperature regulation system used by Orion, the patents are invalid for failing to satisfy the requirements of 35 U.S.C. §112." *Id.* at 8 n.2. But as is the case with infringement, questions regarding invalidity, can come only after the claims have been construed and thus Defendants'

The present task is to determine whether to adopt the plain and ordinary meaning that claim terms are presumed to have, or deviate from that presumption to adopt Defendants' narrow construction. The answer is clear: the plain and ordinary meaning of "bed device" should apply. Defendants complain that it would be "absurd[]" to adopt plain and ordinary meaning because "no person of ordinary skill would understand 'bed device' to encompass . . . off-bed hardware." Br. at 7. But Defendants themselves already conceded that they understand "bed device" to include off-bed "hardware to drive functionality, such as sensors, a computer processor, and heating coils." Br. at 6.

The parties thus agree on the plain and ordinary meaning of the term to a person of ordinary skill in the art; no further clarity is needed or required. *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016) ("Where a district court has resolved the questions about claim scope that were raised by the parties, it is under no obligation to address other potential ambiguities that have no bearing on the operative scope of the claim."); *Wonderland Switzerland AG v. Evenflo Co., Inc.*, 162 F.4th 1346, 1355 (Fed. Cir. 2025) ("We see no error in the district court's conclusion that the plain and ordinary meaning of engagement is broader than Evenflo's proposed construction."). Indeed, adopting the plain and ordinary meaning is plainly proper when a defendant's proposed construction erroneously reads limitations into the claims, as is the case here. *ActiveVideo*, 694 F.3d at 1326 ("ActiveVideo's proposed construction erroneously reads limitations into the claims and the district court

arguments regarding invalidity are irrelevant at this stage. *See Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998) ("The first step in any invalidity or infringement analysis is claim construction"); *McCarty v. Lehigh Val R Co*, 160 U.S. 110, 116 (1895) ("[W]e know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement. The difficulty is that, if we once begin to include elements not mentioned in the claim, in order to limit such claim, and avoid a defense of anticipation, we should never know where to stop.").

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

properly rejected that construction and resolved the dispute between the parties" by adopting the term's plain and ordinary meaning).

Defendants' arguments regarding "bed device" emphasize that their construction is based not on the intrinsic evidence, but by their non-infringement position. The intrinsic evidence plainly shows that "bed device" is broader than what the user sleeps on, and that Defendants' construction would require both reading limitations from the embodiments into the claims and excluding preferred embodiments.  The Court should adopt the plain and ordinary meaning of "bed device" as understood by both parties.

### B. "temperature control device"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "temperature control device" ('240 Patent, cl. 1) | Plain and ordinary meaning | "device separate from the bed device that controls the temperature of the bed device" |

Here too it is clear that the parties agree on the plain and ordinary meaning, but Defendants again wish to depart from it.  Specifically, the parties agree that the temperature control device is a device that controls the temperature of the bed device. The only dispute is whether the Court should construe "the temperature control device *associated with* the bed device," or as Defendants describe it, the temperature control device that can be "*closely integrated with* the bed device" (Br. at 9), to mean that the temperature control device must affirmatively be "*separate from* the bed device." Nothing in the claims says that and the specification similarly imposes no such requirement; if anything, the specification (along with common sense) affirmatively contradicts it.  Defendants' construction should be rejected and the term given its plain meaning.

As an initial matter, Defendants' own concession about the "temperature control device" is irreconcilable with their construction.  Defendants concede that the

10

temperature control device "may be *closely integrated* with the bed device." Br. 9. They do not explain how a device can be "closely integrated with" the bed device and yet, as their construction demands, physically "separate from" it. The concession matches Eight Sleep's position and the intrinsic evidence: the temperature control device can fall within the larger bed device just like a temperature control device for a house is usually part of the house.

The plain meaning of the claim language also demonstrates that Defendants' construction is wrong. Claim 1 of the '240 patent states "sending the plurality of control signals to at least one respective *temperature control device associated with the bed device*." The words "associated with" do not require two structures that are wholly separate, as Defendants argue. Br. at 9-11. Rather, the phrase simply denotes a relationship between hardware—the components can be different, but nothing about "associated with" requires the named components to be separate from each other. The specification confirms this point. For example, the specification's description of Figure 2's embodiment states that there is a "user sensor 210, *associated with* a mattress 200." '240 patent at 5:15 (emphasis added). It then states that the "user sensor 210 *can be built into* the mattress 200." *Id.* at 5:19-20 (emphasis added). And to remove any doubt, Figure 2 shows that the user sensor 210, which is "associated with" mattress 200, is indeed a part of and contained within mattress 200. This demonstrates that "associated with" encompasses embodiments where the temperature control device, like the sensors of Figure 2, can be built into or part of the "bed device," consistent with Eight Sleep's construction.

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF



**FIG. 2**

Defendants' construction fails for the additional reason that it does not comport with the rest of the claim limitations. Claim 1 of the '240 patent recites functionalities such as generating and sending control signals, detecting biological signals, and changing the temperature of the bed device. These functions can be accomplished by sensors, processors, and heating / cooling coils, ***all of which Defendants have admitted are part of the bed device***: "The bed device includes other hardware to drive functionality, such as sensors, a computer processor, and heating coils." Br. at 6. Defendants' construction thus includes sensors, processors, and heating elements as part of the bed device, but, oddly, ***excludes*** the temperature control device, even though the temperature control device also "drive[s] functionality"—it controls and adjusts the temperature of the bed device in conjunction with the other named components. The only logical explanation for Defendants' position here is that it is a backup argument in the event they lose on "bed device."  That is, for "bed device," Defendants propose it should refer to only what a user sleeps on.  But if the Court rejects that and determines the "bed device"  includes off-bed hardware, Defendants hope that the Court will still carve out the temperature control device from such

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

hardware to save its non-infringement arguments.  This type of arbitrary line drawing is improper.  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device.").

The specification supports Eight Sleep's construction as well. It discloses an embodiment of the temperature control device as  the "power management box" in the Figure 6B and 6C embodiments.[6] Defendants argue that this structure is "closely integrated with" the bed device, but somehow at the same time is "distinct and separate" from the bed device. Br. at 12. A plain viewing of the figures shows this is not true.



FIG. 6B                    FIG. 6C

The power management box in both figures is attached to the heating and cooling coils (structures 611, 615, 625, 635, 645), which are described in one embodiment as being in the layers of the bed ('240 patent at 6:20-23), and which

---

[6]  Defendants do not contest that the power management box is a temperature control device. Br. at 12, 14-15.

13

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Defendants admit are part of the bed device. Br. at 6. Even if "bed device" were limited to only the bed as Defendants argue (it is not), the power management box is still a part of the bed device.  There are no disclosures in the intrinsic evidence requiring the temperature control device to be separate from the bed device.

Defendants' construction thus rests entirely on its argument that Eight Sleep is purportedly ignoring the phrase "associated with" by construing the temperature control device and bed device to be "one and the same."  Br. at 11.  Defendants misunderstand Eight Sleep's position.   Eight Sleep agrees the two terms are different—a temperature control device is not coextensive with the bed device.  Each claim term thus has meaning (including "associated with"), and the claim is not rendered "nonsensical."  The point upon which the parties differ is not whether the terms are different, but whether the temperature control device must be located *separate from* the bed device, as Defendants argue.  There  simply is no support in the claims or specification for that narrowing.

The *Simpson* and *Clearstream* cases that Defendants cite (Br. at 10) also do not support their argument.  Eight Sleep is not equating the temperature control device with the bed device. As explained above, the temperature control device is a possible component of the bed device much as a thermostat is a potential component of a house. It is not the same thing as the bed device. The *Becton, Dickinson* case upon which Defendants rely is similarly distinguishable. Br. at 11. There, the court held that two items that were "connected to" each other had to be separate structures based on the particular language of that claim; the court  did not announce a rule that any two differently named components must be physically separate, and thus, *Becton, Dickinson*  cannot override a specification that describes the temperature-control structure as part of the bed device.  *See Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010). Unlike the facts here, the *Becton, Dickinson* claim term did not recite "associated with," and there was no intrinsic evidence showing that the first item could be included as part of the second item.

Because no intrinsic evidence requires the temperature control device to be separate from the bed device, and the embodiments show the opposite, the term should be given its plain and ordinary meaning.

### C.    "sleep system"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1" ('240 Patent, Claim 29, incorporating functions in '240 Patent, Claim 1) | Not governed by § 112 | Governed by § 112(f)[7] |

Claim 29 does not use the word "means," creating a presumption that § 112(f) does not apply.  Despite bearing the burden of overcoming that presumption by a preponderance of the evidence, Defendants' argument is to completely ignore the language of the claim and act as if it  does not recite the "processor," "memory," and "instruction" limitations.  But burying their head in the sand does not change that a person of ordinary skill would understand those terms to connote sufficient structure. Simply put, Defendants cannot meet their burden because claim 29 recites structure on its face: "a processor and a memory in operative communication with the processor," together with "instructions"—i.e., code—for implementing the recited method. The Court should find that § 112(f) does not apply.

The focus of Defendants' argument is that claim 29 is "defined solely in functional terms" and "simply claims the 'system' for implementing the functions of claim 1, with **no further detail** . . . ."  Br. at 15 (emphasis in original).  But, as an initial matter, there are no functions recited in the claim at all. The phrase "storing instructions for the processor to implement the method of claim 1" is describing the

---

[7]  Defendants also identify proposed structures and functions. Dkt. 78 at 1-5.

instructions, i.e., the source code, that the memory of the system is storing. It is not reciting a function of the processor, but merely describing what the instructions are— a collection of text stored in the memory. Courts repeatedly have held that source code is structural. *See* Dkt. 84 at 13. The lack of corresponding function removes the term from means plus function territory because even terms reciting "means" are not means plus function terms if there are no corresponding functions recited in the claims. *See, e.g., In Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1020 (Fed. Cir. 2017) (holding that "wireless device means" was not a means plus function term because "the claims do not recite a function or functions for the wireless device means to perform"). All of Defendants' asserted cases are distinguishable on this point alone.

Defendants also fail to acknowledge the structure expressly recited in the claims, which squarely distinguishes the claims here from those in the lead authority Defendants cite, *In re McFadden*, 2025 WL 2553720 (Fed. Cir. Sept. 5, 2025). The claim at issue in *McFadden* recited "a *subsystem* configured to use the method of claim 1." *Id.* at *1. The Federal Circuit held that claim was in means-plus-function format for one specific reason: "[t]he term 'subsystem' as used in the claims is *not a term of art that conveys a particular structure* to a person of ordinary skill" and was, "much like the term 'means,' … a term devoid of particular structure." *Id.* at *3. That is the opposite of claim 29. Claim 29 does not recite a structureless "subsystem"; it recites "a processor and a memory." A side-by-side comparison of *McFadden* claim and claim 29 clearly demonstrate the difference.

| ***In re McFadden*, Claim 10** | **'240 and '339 Patent, Claim 29** |
|---|---|
| "A social network system, comprising: … *a subsystem* configured to use the method of claim 1 to determine an include region for a second user of the social network; … a module capable of using the include region …" | "A sleep system comprising *a processor* and *a memory in operative communication with the processor* and *storing instructions* for the processor to implement the method of claim 1." |

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

"Processor" and "memory" are quintessential structural terms that connote definite structure to a skilled artisan. *See VDPP LLC v. Vizio, Inc.*, 2022 WL 885771, at \*3 (Fed. Cir. Mar. 25, 2022) (holding that "processor" and "storage" connote structure to a skilled artisan, particularly where the specification describes them as well-known); *see also* Dkt. 84 at 12-13.  The specification confirms this point.  Like in *VDPP*, and unlike the patent at issue in *McFadden*, the specification here describes the processor as "a conventional microprocessor such as an Intel Pentium" or "Motorola power PC" processor, and memory as RAM such as DRAM or SRAM "coupled to the processor by … a bus." '240 patent at 15:64–16:8.  All of these are well-known structures to a person of skill in the art, as was the case in *VDPP*. *McFadden* thus draws exactly the line that defeats Defendants' argument: a claim reciting a structureless nonce term like "subsystem" invokes § 112(f), whereas a claim reciting a processor and memory does not.

The *Syneron Med. Ltd. v. Invasix, Inc.*, 2018 WL 4696971, at \*14 (C.D. Cal. Sept. 5, 2018), case is distinguishable as well. There, the court held that the term "processor . . . configured to control RF energy supplied to [an RF/a removable] applicator tip" was a means plus function term.  The court determined that the claimed "processor" terms were defined "only by the function they perform" and that "the operation/structure for performing the recited function is nowhere to be found in the claim." *Id.* at \*13-14. The "sleep system" term here is distinguishable from the processor terms in *Syneron* because the claim provides ample information about the structure of the sleep system. The entire "sleep system" is structural. As mentioned above with respect to *McFadden*, the processor, memory, and the stored instructions are all structural components—there are not even any functions recited. *Parity*

*Networks v. Edgecore USA Corp.*, 2020 WL 8569299, at *11 (C.D. Cal. Dec. 22, 2020), is distinguishable for the same reason.[8]

Indeed, Defendants' own proposed construction of "processor" concedes that claim 29 recites structure. Defendants separately propose to construe "a processor / the processor" (the next disputed term), but never argue it is a structureless term devoid of any meaning to a person of skill in the art. If anything, they try to construe it as a unitary structure. Thus, despite ignoring the "processor" limitation for this dispute, Defendants' argument for the next limitation presupposes that the claim recites a structure—a processor—that executes the stored instructions. Defendants cannot simultaneously argue that "processor" is a structural term requiring construction as a single processor and that the same claim recites no structure at all and must be treated as a black-box means-plus-function limitation. The two positions are irreconcilable. A claim that recites a processor that executes code recites structure, and § 112(f) does not apply.

Because claim 29 recites a processor, a memory in operative communication with the processor, and instructions for implementing the recited method—all structural—Defendants cannot overcome the presumption against § 112(f). The Court should hold that claim 29 is not a means-plus-function claim. Having recited structure, the claim is construed according to that structure, and there is no occasion to import the single power-management-box embodiment as the exclusive corresponding structure, as Defendants propose.

---

[8]  To the extent Defendants are relying on *Syneron* and *Parity* to argue that the claimed "processor" also is a means plus function term, that argument fails. As explained above, there are no functions recited in the claim. The claimed processor thus cannot be a term defined only by its function. Moreover, Defendants appear to have waived that argument as they proposed "the processor" for construction and never argued that it was a means plus function term.

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

### D.   "the processor"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "a processor"/"the processor"<br><br>('240 Patent, cl. 29; '339 Patent, cl. 29) | Plain and ordinary meaning—one or more processors. | "the processor" refers to a single processor. |

Defendants' proposed construction to limit "a processor"/"the processor" to a single processor contradicts Federal Circuit precedent that "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more.'"  *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000). The exceptions to that rule are "extremely limited": a patentee must "evince a clear intent to limit 'a' or 'an' to 'one.'"  *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016) (quotation omitted).  There is no such clear intent here; "a processor" in claim 29 means "one or more processors," and "the processor" carries the same plurality.  The Court should adopt Plaintiff's proposed construction.

Defendants' entire argument rests on the claim's later recitation of "the processor." But the Federal Circuit has squarely rejected the contention that a subsequent definite article confines an earlier "a" to the singular. "Like the words 'a' and 'an,' the word 'the' is afforded the same presumptive meaning of 'one or more' when used with the transitional phrase 'comprising.'"  *In re Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1350–51 (Fed. Cir. 2005); *see also Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008).  Under *Free Motion* and *Baldwin*, "the processor" in claim 29 inherits the plurality of "a processor" and means "one or more processors."

The cases Defendants cite are the exception, not the rule, and each turns on language absent here.  Defendants string together *Convolve*, *Salazar*, *In re Varma*,

and *X One*, but each found singularity only because the claim tied the single recited element to a specific structure or function in a way that compelled it. None of those features is present in claim 29.

*Convolve*, in fact, confirms that the default "one or more" generally applies with only narrow exceptions. There, the court held that "a processor" meant "one or more processors" in claims 9 and 15, which recited "'a processor' that executes certain process steps 'to generate a user interface,' 'to alter settings in the user interface,' and 'to output commands to the data storage device.'" 812 F.3d at 1321 (internal citation omitted). The court explained that it found "no such evidence clearly limiting 'a processor' to a singular processor" and, rather, the specification "plain[ly] disclos[ed] an embodiment where 'seeks' are controlled by a 'separate controller dedicated to the disk drive"—i.e., an additional processor. *Id.* The court reached a different result for claims 1, 3, and 5 only because those claims expressly tied the processor to the user interface (of which the processor was said to be a part) that performed all the recited steps—specifically, the claim recited a "[u]ser interface for . . . working with a processor . . . comprising: a means for controlling seek time on a data storage device," and a "means for causing the processor to output commands to the data storage device." *Id.* The court explained that "the language and structure of claim 1 demonstrate[d] a clear intent to tie the processor that 'output[s] commands to the data storage device' to the 'user interface'"—that is, "the claim language require[d] a processor associated with the user interface to issue the shaped commands of the claims." *Id.* This was different than claim 9 and 15, which "allow[ed] for multiple processors." *Id.* Claim 29 is like claims 9 and 15 in *Convolve*, not claims 1, 3, and 5. The processor in claim 29 is not described as "working with" some other structure that performs all the steps; rather, the claim recites a processor that can execute instructions to implement a separately recited method, just like the processor in claims 9 and 15 in *Convolve* that executed steps to generate a user interface. The feature that produced singularity in *Convolve* claims 1, 3, and 5 is absent here.

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

*Salazar v. AT&T Mobility LLC* actually supports Eight Sleep. The Federal Circuit held that "a microprocessor" means "one or more microprocessors"—adopting the patentee's "one or more" reading, not a single-processor reading. 64 F.4th 1311, 1315–17 (Fed. Cir. 2023). The wrinkle in *Salazar* was that, because the claim repeatedly referred back to "said microprocessor" while reciting a chain of functions performed *by that same microprocessor* ("for generating … said microprocessor creating … retrieved by said microprocessor … said microprocessor generating"), at least one microprocessor had to be capable of performing all of those functions. The functions there were recited *in the same claim* and expressly attributed to "said microprocessor." Claim 29 is different: the instructions are for a processor to implement the steps of a separate method (claim 1), and "the processor" is referred back to only in connection with the *memory* that stores the instructions—not in connection with performing each step itself. Claim 29 does not say "said processor performing step (a) … said processor performing step (b)," which is the structure that drove *Salazar*.

*Varma* and *X One* are further afield. *In re Varma*'s "dog that rolls over and fetches sticks" analogy addressed a single claimed object—"a 'statistical analysis request'"—that, by the claim's own terms, had to "itself correspond[] to at least two investments." 816 F.3d 1352, 1362–63 (Fed. Cir. 2016). The limitation there required a single request to satisfy a compound requirement (two investments); it says nothing about whether a multi-step method must be performed by a single processor. *X One* held that three instances of "map" in a *single limitation*—"obtain a map … plot … on the map … transmit the map"—referred to the same map because all three operated on the same object within one limitation through antecedent basis. *X One, Inc. v. Uber Techs., Inc.*, 440 F. Supp. 3d 1019, 1033–35 (N.D. Cal. 2020). Claim 29 does not pack a chain of operations on a single object into one limitation; rather, the instructions recite operations that are the steps of claim 1, and nothing ties them to one and only one processor.

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Moreover, far from showing a clear intent to require one processor, the specification expressly contemplates more than one. It describes "the processor 230" as "any type of microcontroller, or any processor in a mobile terminal, fixed terminal, or portable terminal … the accessories and peripherals of these devices, or *any combination thereof*," '240 patent at 6:4–15, and states that the programs are executed "by *one or more* processing units or processors," *id.* at 18:17–23. Claim 29's instructions also incorporate the method of claim 1, which for the '240 patent, is a multi-user, multi-zone method: it obtains signals from two users on two zones, generates a plurality of control signals setting the two zones to different temperatures, and sends them to "at least one respective temperature control device." A multi-step method of that kind is naturally implemented by one or more processors working together. At a minimum, this structure forecloses any inference of a "clear intent" to require a single processor.

Because the ordinary meaning of "a" controls, the later "the processor" carries the same plurality, and nothing in the intrinsic record overcomes the presumption, the Court should construe "a processor"/"the processor" to mean "one or more processors."

## III. CONCLUSION

Eight Sleep respectfully requests that the Court adopt Eight Sleep's constructions.

Dated: June 19, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:    */s/ Patrick D. Curran*
Alex Spiro
Steven Cherny
Patrick D. Curran
Nicola Felice

*Attorneys for Plaintiff,*
*EIGHT SLEEP INC.*

EIGHT SLEEP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Eight Sleep Inc., certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 19, 2026                    By:    */s/ Patrick D. Curran*
                                                Patrick D. Curran


                                                *Attorney for Plaintiff,*
                                                *EIGHT SLEEP INC.*