Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (SBN 241630)
patrickcurran@quinnemanuel.com
Nicola Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Jordan E. Alexander (SBN 305112)
jordanalexander@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
295 5th Avenue
New York, New York 10016-7103
Telephone:   (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Plaintiff,*
*EIGHT SLEEP INC.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| EIGHT SLEEP INC., <br><br> Plaintiff, <br><br> v. <br><br> ORION LONGEVITY INC., and BLUE FUZION GROUP LTD., <br><br> Defendants. | Case No. 2:26-CV-02460-SB-KS <br><br> **EIGHT SLEEP INC.'S REPLY CLAIM CONSTRUCTION BRIEF** <br><br> Hon. Stanley Blumenfeld, Jr. <br> Date: July 10, 2026 <br> Time: 8:30 a.m. <br> Courtroom: 6C |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 1

    A.    "bed device" ........................................................................................... 1

    B.    "temperature control device" ................................................................. 4

    C.    "sleep system" ....................................................................................... 7

    D.    "the processor" ..................................................................................... 10

III.  CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Broadcom Corp. v. Qualcomm Inc.* ,
    543 F.3d 683, 689 (Fed. Cir. 2008) ...................................................................... 11

*Convolve, Inc. v. Compaq Computer Corp.*,
    812 F.3d 1313 (Fed. Cir. 2016) ........................................................................... 10

*D Three Enters., LLC v. SunModo Corp.*,
    890 F.3d 1042 (Fed. Cir. 2018) ........................................................................... 11

*Dyfan, LLC v. Target Corp.*,
    28 F.4th 1360 (Fed. Cir. 2022) .............................................................................. 9

*In re Cuozzo Speed Techs., LLC*,
    793 F.3d 1268 (Fed. Cir. 2015) .............................................................................. 5

*In re Varma*,
    816 F.3d 1352, 1362-63 (Fed. Cir. 2016) ........................................................... 10

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
    649 F.3d 1350 (Fed. Cir. 2011) .............................................................................. 9

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
    22 F.4th 1369 (Fed. Cir. 2022) .............................................................................. 9

*Parity Networks, LLC v. ZyXEL Communications, Inc.*,
    2020 WL 8569299, at *10-11 (C.D. Cal. Dec. 22, 2020) ..................................... 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ....................................................................... 2, 12

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013) ............................................................................... 5

*Salazar v. AT&T Mobility LLC* ,
    64 F.4th 1311 (Fed. Cir. 2023) ............................................................................ 10

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
    948 F.3d 1342 (Fed. Cir. 2020) .............................................................................. 9

*Secure Web Conf. Corp. v. Microsoft Corp.*,
    640 F. App'x 910 (Fed. Cir. 2016) ........................................................................ 5

*TecSec, Inc. v. Int'l Bus. Machines Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013) ..................................................................................9

*VDPP LLC v. Vizio, Inc.*,
    No. 2021-2040, 2022 WL 885771 (Fed. Cir. Mar. 25, 2022) ..............................9

*TecSec, Inc. v. Int'l Bus. Machines Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013) ..................................................................................9

*WSOU Invs. LLC v. Google LLC .*,
    2023 WL 6889033 (Fed. Cir. Oct. 19, 2023) ........................................................8

*X One, Inc. v. Uber Techs., Inc.*,
    440 F. Supp. 3d 1019 (N.D. Cal. 2020).................................................................8

EIGHT SLEEP INC.'S REPLY CLAIM CONSTRUCTION BRIEF

## I.    INTRODUCTION

The parties do not dispute the plain meaning of any disputed term, they dispute whether limitations should be added to those plain meanings.  For example, Defendants admit that "bed device" includes "hardware to drive functionality," and that some components, like the processor, may be located away from the bed.  Likewise, the parties agree that a "temperature control device," unsurprisingly, is a device that controls the bed device temperature.  But Defendants seek to add a requirement that it be separate from the bed device.  And, although the parties disagree that claim 29 is "means-plus-function," they do not dispute the plain meaning of any term recited in that claim.  Lastly, the parties agree that "*a* processor" typically means "one or more," but Defendants ask the Court to apply a narrow exception to that general rule and restrict it to one processor.  Simply put, Defendants concede that the terms have plain meanings, they just want them limited.  But the intrinsic evidence does not support departure from those meanings.  Accordingly, the Court should hold that the disputed terms take their plain meanings.

## II.    ARGUMENT

### A.    "bed device"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "bed device" ('339 Patent cls. 1, 4, 28; '240 Patent, cls. 1, 8, 9, 10) | Plain and ordinary meaning | "device the user sleeps on" |

Defendants admit that "[t]he bed device includes other hardware to drive functionality, *such as* sensors, a computer processor, and heating coils."  Dkt. 83 at 6; Dkt. 93 at 4.  Eight Sleep agrees.  Defendants also admit that there can be components of the bed device that the user does *not* sleep upon.  Dkt. 93 at 5.  Eight Sleep again agrees.  This resolves the dispute.  It is undisputed that the "bed device" includes a bed—as well as other "hardware to drive functionality, such as sensors, a computer processor, and heating coils."  And the parties now agree that the "bed

EIGHT SLEEP INC.'S REPLY CLAIM CONSTRUCTION BRIEF

device" includes more than what the user sleeps on. Because there is no dispute that the bed device is not limited to "a device the user sleeps on," the Court should reject Defendants' proposed construction and construe the term to have its undisputed plain meaning. The remainder of Defendants' arguments relate to whether their accused product infringes, but that is not relevant to the claim construction inquiry.

Defendants, initially, disputed whether components external to the bed can be part of the "bed device," but they have now conceded that point. *See* Dkt. 93 at 3 ("the 'bed device can include components other than just the structure upon which the user sleeps'…Again, Defendants do not contend otherwise."). They also agree that Figure 2 shows a "bed device" where the processor component is ***located away from the bed***: "'Processor 230' that receives input from the user sensors is part of the mattress or ***next to the bed, as in Figure 2***." Dkt. 93 at 5 (emphasis added). These admissions conflict with their proposed construction that the "bed device" is limited to the "device a user sleeps on." Indeed, Defendants never identify any requirement in the intrinsic record that the hardware used to implement claim 1, for example, be located in, on, or even near the bed. Nor could they: whether the processor sits inside the mattress, on the floor next to it, or in another room makes no difference to whether it is part of the "bed device."

Defendants raise a number of distractions. First, Defendants are wrong that Eight Sleep "never says" what the plain meaning is. Dkt. 93 at 2. Eight Sleep explained that the "bed device" is "the user's bed as well as the equipment used to heat or cool the user's bed based on information derived from various biological signals, which can take numerous forms," Dkt. 84 at 6, and cites supporting intrinsic evidence. Dkt. 84 at 4-6. Defendants also are wrong that Eight Sleep's construction is motivated by a desire for "flexibility." It is not flexibility to advance the plain meaning, which is the default as a matter of law. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

Second, Defendants' "coined term" argument should be rejected. Dkt. 93 at 3. As shown, bed device has a plain and ordinary meaning. Dkt. 84 at 4-6. The *Indacon* and *Iridescent* cases upon which Defendants rely are thus inapposite because the terms at issue in those cases had no plain and ordinary meaning. Dkt. 93 at 3-4; *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1357 (Fed. Cir. 2016) (finding "custom link," "custom linking relationship," and "link term" to have no established meaning); *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1351 (Fed. Cir. 2019) (finding "high quality of service connection" to have no ordinary meaning in the industry). Moreover, Eight Sleep did not "coin" the term "bed device"—that term has been used to describe other devices having beds with various functionality. *See, e.g.,* U.S. Patent Nos. 7,602,189; 8,838,411; U.S. Patent Pub. Nos. 2013/0074256; 2014/0021956. This argument also is at odds with Defendants' remarks that both "bed" and "device" are known terms. Dkt. 92 at 2. Regardless, Eight Sleep's construction is supported by the intrinsic evidence, which shows off-bed bed device components. Dkt. 92 at 5-8.

Third, Eight Sleep never attacked a strawman, Dkt. 93 at 3, but rather responds to Defendants' construction, which has shifted throughout this briefing. Defendants say they never contested that "the 'bed device' can include components other than just the structure upon which the user sleeps," *id.*, but their proposed construction and opening brief bely this assertion. Specifically, Defendants excluded the temperature control device, for example, from the bed device because "***the user does not sleep on*** the temperature control device." Dkt. 83 at 9 (emphasis added). Defendants now backtrack in light of the compelling positions set forth in Eight Sleep's opening brief.

Fourth, there was no "bait and switch." Dkt. 93 at 4. Eight Sleep's definition is consistent with the intrinsic evidence, Dkt. 83 at 4-6, and also with Defendants' admissions regarding what constitutes the bed device. Defendants criticize Eight Sleep's inclusion of "equipment used to heat or cool the user's bed," but such equipment clearly qualifies as "hardware to drive functionality"—Defendants' own

3

EIGHT SLEEP INC.'S REPLY CLAIM CONSTRUCTION BRIEF

words for what comprises a bed device. Dkt. 93 at 4. It is not a "leap" to consider temperature change equipment as "hardware to drive functionality" in a device that has temperature changing functionality.

Fifth, Eight Sleep never contended that bed device is the same thing as the "sleep system" recited in claim 29 of the '240 and '339 patents. Dkt. 93 at 5-6. Defendants point to no statement in any of Eight Sleep's claim construction briefing that supports this. The claimed "sleep system" is broader than bed device in that it includes at least a memory that stores instructions for the processor to carry out the method of claim 1.

Lastly, Eight Sleep's alleged "de facto" claim construction certainly does not exclude sensors. Dkt. 93 at 6-7. Eight Sleep's position has been clear from the beginning that "bed device" includes sensors. *See, e.g.,* Dkt. 84 at 5-6 (relying on embodiments, such as Fig. 2, having sensors).

The Court should apply the plain and ordinary meaning as there are no disclosures in the intrinsic evidence limiting the bed device components to be what "the user sleeps on." As discussed next, the Court should also reject Defendants' attempt to change their construction, at this late hour, to "device only a portion of which the user sleeps on that does not include the temperature control device," which Defendants now argue.

### B.   "temperature control device"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "temperature control device" ('240 Patent, cl. 1) | Plain and ordinary meaning | "device separate from the bed device that controls the temperature of the bed device" |

The Court should reject Defendants' assertion that a component that is "associated with," "connected to," or "attached to," a second component, means that the first component must be "separate" from the second component. The intrinsic

evidence, as well as the plain meaning of these words, show that Defendants are wrong.

Claim 1 of the '240 patent recites "temperature control device associated with the bed device." As explained in Eight Sleep's Responsive Claim Construction Brief, the specification's use of "associated with" shows that a first component that is "associated with" a larger device can indeed be embedded in that device. Dkt. 92 at 11 (citing Figure 2's embodiment, which includes "user sensor 210, *associated with* a mattress 200" and wherein "user sensor 210 *can be built into* the mattress 200."). These disclosures show that "associated with," in these patents, does not mean "two separate things." Dkt. 93 at 8. These disclosures also distinguish the *Secure Web* case upon which Defendants rely. *Id.* at 8-9. In *Secure Web Conf. Corp. v. Microsoft Corp.*, 640 F. App'x 910, 914 (Fed. Cir. 2016), the court noted that "at no point does the specification contemplate a security device embedded within a microprocessor-based device." Here, in contrast, Figure 2 does exactly that; it contemplates a component "associated with" a second component that is "embedded within" that second component.

Defendants' arguments regarding "connected to" and "attached to" fare no better. Dkt. 93 at 11. According to Defendants, items that are "connected to" or "attached to" each other must be physically separate. Dkt. 93 at 7, 10-11. That is not accurate. For instance, no one would consider a steering wheel device that is "connected to" or "attached to" a car device separate from the car; rather, it is understood to be part of the car. Similarly, a thermostat that is "connected to" or "attached to" a house is considered part of the house.

Defendants' cases are distinguishable. Dkt. 93 at 10-11. In *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1271 (Fed. Cir. 2015), the claim recited "a speedometer integrally attached to said colored display." The term "integrally attached" was introduced in an amendment to overcome prior art, wherein the original claim language stated "a speedometer *attached to* said speed limit display." *Id.* at 1280 n.8.

The *Cuozzo* claim language is thus necessarily different from "attached to." *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929 (Fed. Cir. 2013), is distinguishable as well. First, the claim language in *Regents* required the first and second disks to "define a conjoint disk." *Id.* at 934. The claim language here does not require the temperature control device and bed device to define any structure. And second, the court there noted that the "specification never teaches an embodiment constructed as a single piece." *Id.* at 936. But examining Figures 6B and 6C, one can see that the power management box is attached to the coils, forming a single piece which is part of the greater "bed device."

Contrary to Defendants' assertions, Eight Sleep never argued that temperature control device and bed device are coextensive. Rather, Eight Sleep contends that the temperature control device is, like the sensors, the coils and the processor, part of the bed device. Moreover, that both the temperature control device and the bed device receive control signals does not mean that the temperature control device cannot be a part of the bed device. When the temperature control device portion of the bed device receives control signals, both necessarily receive signals.

Defendants' argument that the Figure 6B and 6C embodiments are not bed device embodiments should also be rejected. Dkt. 93 at 9. Defendants admit that "[t]he bed device includes other hardware to drive functionality, such as sensors, a computer processor, and heating coils." Dkt. 93. at 4. Indeed, the coils shown in Figures 6B and 6C that are used to "heat[] or cool[] the bed," drive functionality and plainly are part of the bed device.

At bottom, Figures 6B and 6C show a temperature control device that is integral to the bed device. It makes no sense to admit that the sensors that send signals to the processor which sends control signals to the temperature control device are part of the bed device yet the temperature control device cannot be part of the bed device despite controlling the coils which admittedly also are part of the bed device. These embodiments suffice to defeat Defendants' construction. There is nothing in the

intrinsic record that supports Defendants' insertion of a requirement that the temperature control device cannot be part of the bed device.

### C.    "sleep system"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1" ('240 Patent, Claim 29, incorporating functions in '240 Patent, Claim 1) | Not governed by § 112 | Governed by § 112(f)[1] |

Defendants fail to carry their burden of demonstrating that claim 29 is a means-plus-function claim. The claimed "sleep system" is entirely structural, comprised of three structural components: a processor, a memory, and instructions. Dkt. 84 at 11-13; Dkt. 92 at 15-18. Defendants effectively concede that two of those terms, "instructions" and "memory," are structural terms, as they present no caselaw or argument in either brief suggesting that those terms are subject to § 112(f). Defendants now argue, for the first time, that "processor" is a means plus function term.[2] But the claimed "processor" is not a means plus function term, as evidenced by the intrinsic evidence, caselaw, and the fact that there are no functions associated with the processor. Dkt. 84 at 11-13; Dkt. 92 at 15-18. The claimed "sleep system" is thus not subject to § 112(f), as it does not use the term means and its components are structural and there are no functions associated with the term.

---

[1] Defendants also identify proposed structures and functions. Dkt. 78 at 1-5.

[2] Defendants first proposed claim 29 for § 112(f) treatment based on the "sleep system" term, as they alleged that "'sleep system' is a nonce term." Ex. 1 at 4 n.2. Their opening brief arguments also are based on the "sleep system," and their proposed construction for "the processor" fails to allege that it is a means plus function term.

Defendants mischaracterize Eight Sleep's arguments, as Eight Sleep never argues for a "per se" rule that certain components are automatically not subject to § 112(f). Dkt. 93 at 12-13. Rather, Eight Sleep evaluated each individual component, examined the intrinsic evidence, and cited caselaw showing that none of the components are subject to § 112(f). Dkt. 84 at 11-13. Each component was thus "construed on its own," contrary to Defendants' assertion. Dkt. 93 at 13. Notably, Defendants do not address the intrinsic evidence that Eight Sleep identified showing that processor and memory are known **structures**. Dkt. 84 at 12-13 (processor "may be, for example, a conventional microprocessor such as an Intel Pentium microprocessor or Motorola power PC microprocessor"; memory "can include, by way of example but not limitation, random access memory (RAM), such as dynamic RAM (DRAM) and static RAM (SRAM)"). Defendants in fact admit that processors and memory were known. Ex. 2 at 3-4.

Next, the claimed "processor" is not "defined only by the functions it performs," Dkt. 93 at 13, because there are no functions associated with the processor. Dkt. 92 at 15-16. Being in "operative communication" with the memory is not a function of the processor, rather, that phrase describes the relationship between the two structural components. The phrase "to implement the method of claim 1" is also not a function because it is describing the instructions that are stored in the memory—it is written code. Claim 29 is thus distinguishable from the *WSOU* and *Parity* cases on which Defendants rely. Dkt. 93 at 13.

The *WSOU* claim recited a processor "configured to move automatically a subset of pixels," 2023 WL 6889033, at *1, and the *Parity* claim recited a pack processor that had the functions of "sort[ing]" and "categorizing." 2020 WL 8569299, at *7. Claim 29, in contrast, has no functions for the processor. *WSOU* and *Parity* are further distinguishable in that there was no intrinsic evidence in those cases showing that the claimed processor has a known structure. *See* '240 patent at 15:64-66.

Lastly, Defendants fail meaningfully to distinguish Eight Sleep's cases. Dkt. 93 at 14-15. Defendants attempt to distinguish *Dyfan* on the basis that the court there relied on expert testimony that showed that the claimed source code had a known structure. But expert testimony is not required where, as here, the specification provides evidence that the claimed instructions also had a known structure: "the routines executed to implement the embodiments of the disclosure, may be implemented as part of an operating system or a specific application, component, program, object, module or ***sequence of instructions*** referred to as 'computer programs.'" '240 patent at 18:12-17. This distinction is anyway irrelevant as Defendants do not even argue that "instructions" is subject to § 112(f). It is not Eight Sleep's burden to disprove § 112(f), it is Defendants' burden to prove it. Moreover, Defendants never rebut Dyfan's rejection of the very "nonce word" argument Defendants assert. *See Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022).

Defendants do not meaningfully distinguish *VDPP*—they merely state that claim 29 lacks structure. Dkt. 93 at 14-15. They also make the wrong comparison regarding *TecSec*. Dkt. 93. at 15. *TecSec* shows that the claimed "memory" is structure, Dkt. 84 at 12, and Defendants acknowledge that *TecSec* instructs that "[t]o those skilled in the art, a system memory is a specific structure that stores data." Dkt. 93 at 15 (quoting *TecSec*, 731 F.3d at 1347).[3] All of the claimed "system" components are known structures.

---

[3] Defendants' critique of *Alacritech* also falls flat. Just because the case was decided prior to *Williamson* does not mean that the guidance there is no longer good law. Dkt. 93 at 16. For example, in *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1358–59 (Fed. Cir. 2011), the Federal Circuit held that "modernizing device" denoted sufficient structure based on surrounding claim language and specification disclosures that showed the device's components, which included a processor and memory. The Federal Circuit continued to rely on *Inventio*'s means plus function guidance even ***after*** *Williamson* was issued, indicating that it is still

### D.    "the processor"

| Claim Term | Eight Sleep's Construction | Defendants' Construction |
|---|---|---|
| "a processor"/"the processor"<br><br>('240 Patent, cl. 29; '339 Patent, cl. 29) | Plain and ordinary meaning—one or more processors. | "the processor" refers to a single processor. |

Defendants, concede the default rule—that "a" means "one or more" and that "the processor" carries the same plurality.  Their proposed construction rests entirely on a narrow exception to that rule, which applies only where the intrinsic record shows a "clear intent" to limit "a" to one.  Dkt. 93 at 17.  Defendants have failed to show any such "clear intent" here.  The Court should adopt Plaintiff's construction.

Contrary to Defendants' argument, the default rule is not overcome.  As Eight Sleep demonstrated in its Opposition, *Convolve* and the rest of Defendants' authorities each found singularity only because the claim tied the single recited element to performing the recited functions—the "user interface . . . working with a processor" that had to "perform all of the recited steps" in *Convolve's* claims 1, 3, and 5; the "said microprocessor" that had to perform a recited chain of functions in *Salazar*; the single "request" that had to "itself correspond[]" to two investments in *Varma*; and the single "map" subjected to each recited operation in *X One*.  Dkt. 92 at 19-21.  Claim 29 is, instead, like *Convolve's* claims 9 and 15, which the court held meant "one or more processors."  Dkt. 92 at 20.  Here the point is even stronger: claim 29 recites no function for the processor to perform at all.  Dkt. 92 at 15-16.  There is thus not even a single function correlated to one processor to perform, let alone the recited functions

good law.  *See, e.g., Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1380 (Fed. Cir. 2022) (citing *Inventio*); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020) (same).

Case No. 2:26-CV-02460-SB-KS

EIGHT SLEEP INC.'S REPLY CLAIM CONSTRUCTION BRIEF

that drove the constructions in Defendants' cases. Defendants' authorities therefore confirm the applicability of the default rule.

Unable to find the requisite clear intent in the claim language, Defendants turn to the specification, but the specification too confirms that "a processor"/"the processor" can be one or more processors. Defendants do not dispute that the specification describes "the processor 230" as "any type of microcontroller, or any processor in a mobile terminal, fixed terminal, or portable terminal . . . *or any combination thereof*." '240 patent at 6:4-15. Nor do they dispute that it describes the claimed operations as carried out by "*one or more* processing units or processors." *Id.* at 18:17-23. Rather, Defendants argue that the specification "merely indicates that the *disclosed* processor element can be implemented in any sort of hardware, not that the *claimed* 'the processor' actually can be multiple processors each performing different functions." Dkt. 93 at 18 (emphasis in original). Defendants rely on *Broadcom Corp. v. Qualcomm Inc.* for the proposition that Eight Sleep cannot limit the claim to unclaimed features in the specification. *Id.* (citing 543 F.3d 683, 689 (Fed. Cir. 2008) (explaining that each claim does not necessarily cover every feature disclosed in the specification)). But Defendants misunderstand Eight Sleep's position and their own burden. Eight Sleep does not rely on this disclosure to read a multiple-processor requirement into the claim; it relies on it to confirm that the patentee never disavowed the default one or more which the claim language allows. *Broadcom* is inapposite for that reason—it addressed whether unclaimed features should be imported into a claim, not whether a specification overcomes the settled meaning of "a." It is Defendants who seek to depart from the plain meaning, and the burden is theirs to identify a clear disavowal, which they cannot do because the specification expressly contemplates more than one processor.

Defendants also assert that the "one or more . . . processors" disclosure in the specification is mere "boilerplate" that cannot overcome a supposed failure to disclose a multiple-processor embodiment. *Id.* (citing *D Three Enters., LLC v. SunModo*

11

*Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018)).  This is wrong.  The case on which Defendants rely, *D Three*, was a written-description case about whether a generic catch-all that the claims should be "interpreted to include all such modifications, permutations, . . . and sub-combinations" could supply § 112 support for the actual combinations and attachments used in the claims.  *D Three*, 890 F.3d at 1050-51.  The case says nothing about whether such language defeats the ordinary meaning of "a" in claim construction.  Eight Sleep need not point to a multiple-processor embodiment to keep the plural meaning the claim already has.  It is Defendants who must identify a clear disavowal to take it away, and a specification that affirmatively recites "one or more . . . processors" is the opposite of a disavowal.

Defendants' remaining premise—that the patents "only disclose embodiments with one processor," such as Figure 19 (Dkt. 93 at 18-19)—does not limit the claims even if accepted.  It is black-letter law that claims are not confined to a disclosed embodiment absent a clear disclaimer, which Defendants do not identify.  *Phillips*, 415 F.3d at 1323.

Because the ordinary meaning of "a" controls, "the processor" carries the same plurality, and Defendants identify nothing in the claims, specification, or prosecution history demonstrating a clear intent to depart from that meaning, the Court should construe "a processor"/"the processor" to mean "one or more processors."

## III.  CONCLUSION

Eight Sleep respectfully requests that the Court adopt Eight Sleep's constructions.

Dated:  June 26, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**


By:    */s/ Patrick D. Curran*
Alex Spiro
Steven Cherny
Patrick D. Curran
Nicola Felice

*Attorneys for Plaintiff,*
*EIGHT SLEEP INC.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Eight Sleep Inc., certifies that this brief contains 3,949 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 26, 2026            By:   */s/ Patrick D. Curran*
                                        Patrick D. Curran


                                     *Attorney for Plaintiff,*
                                     *EIGHT SLEEP INC.*