Amy H. Candido (SBN 237829)
amy.candido@stblaw.com
Jeff Nardinelli (SBN 295932)
jeff.nardinelli@stblaw.com
**SIMPSON THACHER & BARTLETT LLP**
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA  94105
Phone: (415) 426-7300
Fax: (415) 426-7301

Sanford L. Michelman (SBN 179702)
smichelman@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Phone: (310) 299-5500
Fax: (310) 299-5600

*Counsel for Defendants Orion Longevity Inc.
and Blue Fuzion Group Ltd.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| EIGHT SLEEP INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ORION LONGEVITY INC., and<br>BLUE FUZION GROUP LTD.<br><br>　　　　　Defendants. | Case No. 2:26-cv-02460-SB-KS<br><br>**DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF**<br><br>Hon. Stanley Blumenfeld, Jr.<br>Date: July 10, 2026<br>Time: 8:30 a.m.<br>Courtroom: 6C |

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................... 1

    A.     "Bed Device" ...................................................................................... 1

    B.     "Temperature Control Device" ........................................................... 4

    C.     Claim 29 of the '240 Patent ................................................................ 8

    D.     "A Processor" / "The Processor" ...................................................... 11

III.   CONCLUSION ............................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*,
    616 F.3d 1249 (Fed. Cir. 2010) ................................................................ 6

*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed. Cir. 2008) ............................................................... 15

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*,
    224 F.3d 1308 (Fed. Cir. 2000) ........................................................... 3, 5

*Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*,
    206 F.3d 1440 (Fed. Cir. 2000) ................................................................ 6

*Comcast Cable Comms., LLC v. Promptu Sys. Corp.*,
    838 F. App'x. 551 (Fed. Cir. 2021) ......................................................... 9

*Convolve, Inc. v. Compaq Computer Corp.*,
    812 F.3d 1313 (Fed. Cir. 2016) ............................................................. 14

*D Three Enters., LLC v. SunModo Corp.*,
    890 F.3d 1042 (Fed. Cir. 2018) ............................................................. 15

*Engel Indus., Inc. v. Lockformer Co.*,
    96 F.3d 1398 (Fed. Cir. 1996) ................................................................. 6

*Eon Corp. IP Holdings v. Silver Spring Networks*,
    815 F.3d 1314 (Fed. Cir. 2016) ............................................................... 4

*Evolusion Concepts, Inc. v. HOC Events, Inc.*,
    22 F.4th 1361 (Fed. Cir. 2022) ............................................................. 14

*Gramm v. Deere & Co.*,
    169 F.4th 1353 (Fed. Cir. 2026) ........................................................... 12

*Harari v. Lee*,
    656 F.3d 1331 (Fed. Cir. 2011) ............................................................. 13

*In re Cuozzo Speed Techs., LLC*,
    793 F.3d 1268 (Fed. Cir. 2015) ............................................................... 7

*In re Varma*,
    816 F.3d 1352 (Fed. Cir. 2016) ............................................................. 14

*Indacon, Inc. v. Facebook, Inc.*,
    824 F.3d 1352 (Fed. Cir. 2016) ............................................................... 3

*Konami Gaming, Inc. v. Marks Studios, LLC*,
    2017 WL 3174905 (D. Nev. July 25, 2017) ........................................... 10

*In re McFadden*,
    2025 WL 2553720 (Fed. Cir. Sept. 5, 2025) ......................................... 12

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) .................................................................14

*Monsanto Co. v. Sygenta Seeds, Inc.*,
   503 F.3d 1352 (Fed. Cir. 2007) ................................................................11

*NobelBiz, Inc. v. Global Connect, LLC*,
   701 F. App'x 994, 997 (Fed. Cir. 2017) .....................................................4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ..................................................................4

*Parity Networks, LLC v. ZyXEL Communications, Inc.*,
   2020 WL 8569299 (C.D. Cal. Dec. 22, 2020) ...........................................10

*Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*,
   130 F.4th 1372 (Fed. Cir. 2025) .................................................................6

*Salazar v. AT&T Mobility LLC*,
   64 F.4th 1311 (Fed. Cir. 2023) ...........................................................13, 14

*St. Isidore Research, LLC v. Comerica Inc.*,
   2016 WL 4988246 (E.D. Tex. Sept. 19, 2016) ..........................................11

*Syneron Med. Ltd. v. Invasix, Inc.*,
   2018 WL 4696971 (C.D. Cal. Sept. 5, 2018) ............................................10

*Tivo, Inc. v. Echostar Communications Corp.*,
   516 F.3d 1290 (Fed. Cir. 2008) ................................................................13

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ....................................................................5

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015) ................................................................11

*WSOU Invs. LLC v. Google LLC*,
   2023 WL 6889033 (Fed. Cir. Oct. 19, 2023) ............................................10

*X One, Inc. v. Uber Techs., Inc.*,
   440 F.Supp.3d 1019 (N.D. Cal. 2020) ......................................................14

DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

## I.    INTRODUCTION

Plaintiff has not proposed constructions consistent with the plain and ordinary meaning.  Rather, even though there are obvious disputes regarding the scope of the claims, Plaintiff proposes that the Court instruct the jury that the disputed claim terms receive some unspecified "plain and ordinary meaning."  That position is untenable. As *O2 Micro* and its progeny make clear, "[w]hen the parties raise an actual dispute regarding the proper *scope* of these claims, the court, not the jury, must resolve that dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008); *see also NobelBiz, Inc. v. Global Connect, LLC*, 701 F. App'x 994, 997 (Fed. Cir. 2017) (plain and ordinary meaning inadequate where parties disputed "the *scope* that should be encompassed by th[e] claim language"); *Eon Corp. IP Holdings v. Silver Spring Networks,* 815 F.3d 1314, 1319 (Fed. Cir. 2016) (by determining only plain and ordinary meaning, "the court left this question of claim *scope* unanswered, leaving it for the jury to decide. This was legal error.").[1]

## II.    ARGUMENT

### A.    "Bed Device"

Plaintiff disingenuously asserts (Opp. 4) that the parties agree on the plain and ordinary meaning of "bed device."  We do not and could not.  Plaintiff has never offered such meaning or evidence regarding it.

The parties appear to agree that "bed device" includes, but is not limited to, the sleeping surface.  Beyond that, there are genuine and important disputes regarding claim scope that the Court must resolve.  *See O2 Micro,* 521 F.3d at 1362-63.  Those disputes are evident from Plaintiff's refusal to provide its own construction and its changing interpretation of "bed device" in its briefing and infringement contentions. Plaintiff's "bed device" has included "equipment used to operate and adjust the temperature based on biological signals upon which the user need not sleep," Opp.

---

[1] Bold and italics are used for emphasis throughout.

4, "equipment used to heat or cool the user's bed based on information derived from various biological signals, which can take numerous forms," Dkt. 84 at 6, "Orion's Smart Cover, Control Tower, and Sleep Optimization/Disruption Test Patch," Ex. 1 at 1 and Ex. 2 at 1, and even "Orion's backend servers" and "the Orion mobile application," Dkt. 83 at 7.

Defendants' proposed construction of "bed device" was intended to encompass the "device the user sleeps on" in the patents, as depicted in Figures 1 and 2. The "bed device" *repeatedly and consistently* described in the patent specification as the device the user sleeps on is also described as *potentially* including a processor, user sensor(s), environmental sensor(s), and electrical coils, but it is not described as including anything else. *See* '240 patent, 2:49-50, 2:51-52, 4:64-6:24. While imperfect, Defendants' proposed construction sought to capture the consistent and necessary aspects of "bed device." On the other hand, Plaintiff's open-ended addition of unspecified "equipment" to the construction of "bed device" would give the term "bed device" virtually unlimited scope, extending it to include the disclosed separate "temperature control device" and numerous items never mentioned in the patents, such as a separate "patch."

Defendants never intended to limit "bed device" to only the sleeping surface. To avoid any confusion, Defendants propose that the Court modify its proposed construction as follows:

> "device with a portion the user sleeps on, optionally also including a processor, user sensor(s), environmental sensor(s), and electrical coils."

This modification reflects that the bed device includes a sleeping surface, and can include a processor, user sensor(s), and environmental sensor(s), as depicted in Figures 1 and 2, the only two figures depicting the bed device. *See* '240 patent, 2:49-50, 2:51-52. Likewise, the bed device can include embedded electrical coils. *Id.*,

Fig. 3.  By explicitly and fully embodying these descriptions, this modification reflects the full scope of the term "bed device" and should be adopted.

Plaintiff's open-ended proposals must be rejected because the term "bed device" has no plain and ordinary meaning to a POSITA and thus "cannot be construed broader than the disclosure in the specification."  *See, e.g., Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1357 (Fed. Cir. 2016) ("[A]bsent such an accepted meaning [in the art], we construe a claim term only as broadly as provided for by the patent itself.").  The specification depicts the bed device as having, at most, a sleeping surface (including embedded coils), a processor, and sensors.

Plaintiff's invitation to interpret "bed device" to include the entire sleep system must be rejected because it would eliminate the distinction between "bed device" (used in claim 1) and "sleep system" that "implement[s] the method of claim 1" (claim 29).  The claimed "sleep system" comprises a processor and a memory for operating the "bed device," demonstrating that "sleep system" and "bed device" have different meanings.  *See, e.g.*, *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").  This is consistent with Figure 12, illustrating a "*system* capable of controlling an appliance and a home" where the "appliances that the system disclosed here can control, comprise an alarm, a coffee machine, a lock, a thermostat, a *bed device*, a humidifier, or a light." '240 patent, 10:50-54.

Plaintiff's proposal is also wrong because it would violate claim differentiation.  In '339 patent claim 1, the "control signal" used to set temperature is sent "to the bed device."  Conversely, in the '240 patent, that same control signal is sent "to at least one respective temperature control device associated with the bed device."  If "bed device" is construed as broadly as Plaintiff proposes, the *same* "control signal" sent "to the bed device" for purposes of the '339 patent would be

sent "to [a] temperature control device" that would be encompassed among the "equipment" of the "bed device" for purposes of the '240 patent., Plaintiff's overbroad construction of "bed device" would destroy the claim differentiation between claims in the '339 and '240 patents.

### B.  "Temperature Control Device"

The parties' briefing has distilled the dispute on this term into whether the "temperature control device" is a separate device from the bed device or may be part of the bed device.

Plaintiff begins (Opp. 10-11) with another strawman—Defendants' supposed concession that the temperature control device "may be closely integrated with" the bed device, as if that were an admission that the two devices are not separate.  To the contrary, that the two devices "may be closely integrated" is simply an acknowledgement that those two *separate* devices may be connected to one another and work together to execute common tasks, like heating or cooling the bed.[2]

Plaintiff ignores the most important evidence regarding the meaning of "temperature control device"—the claim language itself.  Claim 1 uses two distinct nouns to denote two distinct things—the "bed device" and the "temperature control device"—and it uses each consistently throughout the claim.  "Bed device" is used in the preamble and in every limitation to describe where the presence of users is detected, separate zones and the generation of control signals, but the final limitation switches to "temperature control device" to describe where the control signals are sent.  The Federal Circuit has made clear that, "[i]n the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."  *CAE Screenplates*, 224 F.3d at 1317.  Had the patentee intended the "temperature control device" to be a part of the "bed device,"

---

[2] *See, e.g.*, https://www.nytimes.com/2000/09/10/business/business-a-not-so-little-phone-company-from-little-rock.html ("The two businesses are closely integrated.") (referring to two separate businesses working closely together).

the natural and available drafting choice would have been to say that the control signals are sent to the bed device itself, or to a heating or cooling element "of the bed device." And, in fact, the patentee made exactly that choice in the '339 patent. However, the patentee made a different choice in the '240 patent, introducing a separately named and distinct structure, the "temperature control device." Under *CAE Screenplates* and the doctrine of claim differentiation, that choice is presumed to be meaningful, and the most natural meaning is that the "temperature control device" is something other than and *separate from* the "bed device." *See, e.g.*, *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000). Thus, "temperature control device" and "bed device" refer to *separate* devices.

Claim 1 not only uses two different terms; it recites the "temperature control device" as a separate element that is the object of the final "sending" step, distinct from the "bed device" that anchors the earlier limitations. As the Federal Circuit has explained, the clear implication of such language is that "temperature control device" and "bed device" are *distinct and separate components*. *See, e.g.*, *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996) (where a claim provides for two separate elements, a "second portion" and a "return portion," these two elements "logically cannot be one and the same"); *Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254-55 (Fed. Cir. 2010) (separately recited claim elements are "separate structrual component[s]"); *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 130 F.4th 1372, 1378-79 (Fed. Cir. 2025) (the "plain language" of a claim with four separately listed components established the "clear implication" that the components are distinct in the patented invention").

Here, the patentee's decision to route the control signals "to" a separately named "temperature control device," rather than to the bed device itself (as in the '339 patent), indicates that the recipient structure is distinct from the bed device. The

signals are generated "for the bed device" but sent "to" the temperature control device, and that structural separation between the locus of the control logic and the temperature-effecting hardware would become superfluous if the two were the same device.

In addition, claim 1 recites "at least one respective temperature control device," indicating that the temperature control device or devices may be correlated on a per-zone or per-instruction basis, further requiring separation from the unitary "bed device" that contains both zones. The word "respective" ties individual temperature control devices to the individual control signals and zones, underscoring that the temperature-controlling hardware is a separate, potentially plural set of components rather than an integrated feature of the single bed device. Construing the temperature control device as merely part of the bed device would improperly read the separately recited element out of the claim, an outcome the Federal Circuit disfavors because it deprives a recited limitation of independent effect.

Contrary to Plaintiff's arguments, the presumption that "temperature control device" and "bed device" are two separate devices is *reinforced* by claim 1's own relational language requiring a "temperature control device *associated with* the bed device." The phrase "associated with" presupposes two distinct things that are related to one another; a single, unitary structure is not naturally described as being "associated with" itself. Even Plaintiff recognizes (Opp. 13) that, as shown in the patent, the temperature control device is "attached to" the electrical coils, not embedded in the bed device itself. *See, e.g.*, *In re Cuozzo Speed Techs., LLC,* 793 F.3d 1268, 1280 (Fed. Cir. 2015) (explaining that, if two devices can be "attached," they are separate devices and that it would "be illogical to regard one unit as being 'attached' to itself"). The fact that the specification also loosely uses the language "associated with" to express a relationship or affiliation between items that may be

part of a larger whole does not mean that the temperature control device may be part of the bed device.  The claim language controls.

For example, based on the term "associted with," Plaintiff tries to draw an analogy between the "user sensor 210," which is repeatedly depicted and described as part of the bed device, and the "temperature control device," which is *never* depicted as being part of the bed device.  (Opp. 11.)  Plaintiff's logic is:  the *specification* says the user sensor is "associated with a mattress" and also gives an example where the user sensor is built into the mattress; therefore, the phrase "associated with" must globally mean "part of," including as used in the *claims* in connection with the entirely different temperature control device.  *See id.*  This argument does not track.  The specification expressly teaches that the "associated with" user sensor "can be built into the mattress."  '240 patent at 5:16-20.  If the inventors had meant to teach that the "temperature control device" could be part of the "bed device," they could have done so, as they did with the user sensor.  But the specification never uses the phrase "temperature control device," and never describes the power management box—which the parties agree is the temperature control device—as being "built into" or embedded into the bed device, but only *connected to* the electrical coils in the bed device.  '240 patent, 7:34-47 (coils are "*connected to* power management box 601").  The specification discloses *no* embodiment of a bed device that *includes* the temperature control device.

Plaintiff says it "agrees the two terms are different—a temperature control device is not coextensive with the bed device."  Opp. 14.  But its proposed construction would eliminate the distinction between the control signal sent "to the bed device" in '339 patent claim 1 and the same control signal sent to the "temperature control device" in '240 patent claim 1.  Nor does Plaintiff distinguish Defendants' cases in any meaningful way.  For example, Plaintiff asserts that "*Becton, Dickinson* cannot override a specification that describes the temperature-

control structure as part of the bed device" (Opp. 14), but nothing in the specification here contains any such description. And, even if the specification described such a temperature control device, unless it shows a "clear intent" to depart from the claim's plain language demonstrating that temperature control device is a separate device from the bed device, temperature control device must be construed as a separate device. *See, e.g.*, *Comcast Cable Comms., LLC v. Promptu Sys. Corp.*, 838 F. App'x. 551, 553 (Fed. Cir. 2021).

### C.    Claim 29 of the '240 Patent

Plaintiff's opposition is based on two fundamental misconceptions. First, Plaintiff contends that the mere inclusion of the claim terms "processor" and "memory" forecloses means-plus-function claiming because such terms are "quintessential structural terms that connote definite structure to a skilled artisan." (Opp. 17.) Second, Plaintiff argues that "there are no functions recited in [claim 29] at all." (Opp. 15.) Plaintiff is wrong on both points, and together these misconceptions lead Plaintiff to the false conclusion that claim 29 is not means-plus-function because Plaintiff wrongly concludes claim 29 recites structure and does not recite any functions—the exact opposite of means-plus-function claiming. To the contrary, claim 29 does not recite sufficient structure and describes the recited "processor" and "memory" solely in terms of the functions they perform. For those reasons, claim 29 is a means-plus-function claim.

Plaintiff argues that claim 29 "recites structure on its face" because it claims "a processor and a memory." (Opp. 15.) But, claim 29 is not *per se* excluded from means-plus-function treatment by using those terms. "[T]here is no categorical rule regarding whether the term 'processor' connotes sufficient structure to avoid interpretation in means-plus-function format." *WSOU Invs. LLC v. Google LLC*, 2023 WL 6889033, at *3 (Fed. Cir. Oct. 19, 2023). Rather, "each claim term must

be construed on its own in light of the intrinsic and extrinsic evidence of record." *Id.* The same is true for other terms like "memory" and "instructions" as well.

Plaintiff's assertion that "'[p]rocessor' and 'memory' are quintessential structural terms" that defeat means-plus-function claim status is directly refuted by numerous cases finding claims using such terms governed by §112(f). *See, e.g.*, *Parity Networks, LLC v. ZyXEL Communic'ns, Inc.*, 2020 WL 8569299, at *10-11 (C.D. Cal. Dec. 22, 2020) ("processor" governed by §112(f) because "each processor is defined only by the function it performs") (cleaned up); *Syneron Med. Ltd. v. Invasix, Inc.,* 2018 WL 4696971, at *14 (C.D. Cal. Sept. 5, 2018) (presumption rebutted where the claim recited a "processor … configured to" perform certain steps but the claim said "nothing about how the 'processor' operates" to perform those steps); *accord Konami Gaming, Inc. v. Marks Studios, LLC*, 2017 WL 3174905, at *3 (D. Nev. July 25, 2017) ("merely claim[ing] a generic processor for carrying out computer functions"' triggers §112). Whether the claim terms "processor" and "memory" convey sufficient structure depends on the specific claims at issue and the intrinsic evidence.

Plaintiff's argument that claim 29 cannot be means-plus-function because "there are ***no functions*** recited in the claim at all" is also wrong. (Opp. 15-16.) Plaintiff seems to be arguing that claim 29, despite reciting a system "to implement the method of claim 1," does not incorporate all of the functional steps required by the method in claim 1. That is incorrect as a matter of basic patent law. In *Monsanto Co. v. Sygenta Seeds, Inc.*, 503 F.3d 1352, 1357-58 (Fed. Cir. 2007), the Federal Circuit explained that claims like claim 29 are dependent claims because they reference an earlier claim—here, claim 1—and then specify a further limitation. And, in accord with 35 U.S.C. §112, ¶4, such dependent claims "incorporate by reference all the limitations of the claim to which it refers." *Id.* (claim 4 reciting "[a] process comprising obtaining progeny from a fertile transgenic plant obtained by the

process of claim 1 which comprise said DNA" to contain each element of claim 1). In other words, claim 29 incorporates all of the elements of claim 1 by reference as if they were set out in full in claim 29.

Claim 29 therefore must be understood to recite all of the functions in the method in claim 1, and "a processor" and "a memory" are defined by the functions incorporated from claim 1 that they perform. As a result, Plaintiff's efforts to distinguish Defendants' cases, such as *Syneron* and *Parity*, because the processor terms in those cases were defined by the functions they perform while "there are not even any functions recited" in claim 29 (Opp. 17) must be rejected.

Plaintiff attempts to distinguish *McFadden* on the basis that claim 29 recites a "system" with a "processor" and "memory," whereas the claim in *McFadden* recited only a "subsystem." (Opp. 16.) But *McFadden* was not decided based on the absence of the terms "processor" or "memory." In fact, *McFadden* found the structure of the claimed "subsystem" was "a computer system running software" and, based on that finding, found the term was not indefinite. 2025 WL 2553720, at *3 (Fed. Cir. Sept. 5, 2025). Here, Defendants do not contend that claim 29 is indefinite for failing to recite *any* structure, only that claim 29 must be limited to the structure disclosed in the specification.

Finally, Plaintiff asserts that Defendants "concede[d]" (Opp. 18) that the claimed processor has sufficient structure by seeking to separately construe "a" and "the" processor. This too is wrong. This separate construction issue, which is primarily focused on the meaning of the terms "a" and "the" in a certain context, concerns the *number* of processors in '240 claim 29 that carry out the incorporated method of claim 1, not whether that processor connotes sufficient structure. Defendants have always been clear that the "processor" in '240 claim 29 is a means-plus-function term defined solely in terms of its function. *See* Dkt. 83 at 16-17; Dkt. 93 at 13-14.

Indeed, computer-implemented means-plus-function terms like those at issue here face even stricter requirements—they "***must have a corresponding algorithm*** disclosed in the specification." *Gramm v. Deere & Co.,* 169 F.4th 1353, 1352 (Fed. Cir. 2026). If Plaintiff's position were correct, any patentee could avoid these requirements simply by claiming a "processor" with no defined characteristics. That is simply not the law.

### D. "A Processor" / "The Processor"

Plaintiff overstates the default construction of "a"/"an" and ignores the distinction in Defendants' authorities between "a" processor and "***the***" processor.

There is no "hard and fast rule that 'a' always means one or more than one." Harari v. Lee, 656 F.3d 1331, 1342 (Fed. Cir. 2011). In this case, "a/the" refers to a single processor. Plaintiff's attempts to distinguish Defendants' analogous cases are unavailing. With respect to Convolve, Plaintiff argues that "the court held that 'a processor' meant 'one or more processors' in claims 9 and 15," while "[t]he court reached a different result for claims 1, 3, and 5 only because those claims expressly tied the processor to the user interface." Opp. 20. Plaintiff omits that claims 9 and 15 in Convolve, unlike claim 29 here, did not even include the disputed claim term "the processor." Conversely in claim 1, the "reference to 'the processor,' referring back to the 'a processor' recited in preamble, supports a conclusion that the recited user interface is 'operatively working with' the same processor to perform all of the recited steps." Convolve, Inc. v. Compaq Computer Corp., 812 F.3d 1313, 1321 (Fed. Cir. 2016).

Plaintiff's attempts to distinguish Defendants' other cases likewise fail. Plaintiff argues (Opp. 21) that Salazar v. AT&T Mobility LLC, 64 F.4th 1311, 1315-17 (Fed. Cir. 2023), involved a claim that used the phrase "said microprocessor" instead of "the microprocessor." But Plaintiff nowhere explains why that makes a difference. "Said" and "the" are frequently used interchangeably in patent law to

DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

**Commented [AC1]:** I get this point, but we need to make it more clearly. It sounds like we are starting to argue the next step. I think our point is, if all you had to do was say processor and it was good enough, that's all anyone would ever do. Processor must be recited in the claims with very clear structure OR processor is MPF and limited to a corresponding disclosed algorithm. If we lay it out like this, it is actually very compelling I think. Maybe we should do this at the front end?

**Commented [AC2R1]:** In light of this revision, what should we do with this, if anything?

refer to the same antecedent basis. See, e.g., Evolusion Concepts, Inc. v. HOC Events, Inc., 22 F.4th 1361, 1366 (Fed. Cir. 2022) (discussing "antecedent-basis language such as 'said' or 'the'"); Microprocessor Enhancement Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008) (same).

Plaintiff tries (Opp. 21) to distinguish In re Varma, 816 F.3d 1352, 1362–63 (Fed. Cir. 2016), and X One, Inc. v. Uber Techs., Inc., 440 F.Supp.3d 1019, 1033–35 (N.D. Cal. 2020), because the claims in those cases required a single "request" or "map" that "operated on the same object within one limitation through antecedent basis." But that is exactly the case here—"the processor" is required to "implement the method of claim 1," including all of the claim limitations of claim 1.

Plaintiff acknowledges the specification refers to "'the processor 230'" (Opp. 22), but argues that "the processor" may be any type of processor including a "combination" of devices and their peripherals. But, even so, "the processor" made up of a "combination" of devices does not disclose multiple processors. As Defendants previously explained, that language indicates the disclosed processor element can be implemented in any sort of hardware, not that the claimed "the processor" recites multiple processors each performing different functions. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 689 (Fed. Cir. 2008) ("[E]ach claim does not necessarily cover every feature disclosed in the specification.").

Nor do "two zones" in the '240 patent require multiple processors, as Plaintiff claims (Opp. 22). Plaintiff's bald assertion that the incorporated method from claim 1 is "naturally implemented" (id.) by multiple processors simply because the two zones are heated differently is ipse dixit without any support.

Finally, Plaintiff's reliance on the '240 patent's lone disclosure of "one or more processing units or processors," '240 patent, 18:17-23, at the very end of the specification does not change the patents' failure to disclose an embodiment with multiple processors. See D Three Enters., LLC v. SunModo Corp., 890 F.3d 1042,

DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

1051 (Fed. Cir. 2018) ("This boilerplate language at the end of the . . . specification is not sufficient to show adequate disclosure of the actual [invention]."). As Defendants previously showed, the patents only disclose embodiments with one processor performing all required functions. Dkt. 93 at 18-19 (collecting specification cites); see, e.g., '240 patent, Fig. 19 (depicting one processor and memory); id. at 15:27-28 (describing Fig. 19 as including "a processor, memory, non-volatile memory, and an interface device"); id. at 15:64-16:8 (describing Fig. 19 as having "[t]he memory coupled to the processor").

## III. CONCLUSION

For all of the reasons set forth above, Defendants respectfully submit that the Court should adopt Defendants' proposed constructions for each of the disputed claim terms.

Dated: June 26, 2026

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP


By: */s/  Amy H. Candido*
    Amy H. Candido (CA SBN 237829)
    amy.candido@stblaw.com
    Jeff Nardinelli (SBN 295932)
    jeff.nardinelli@stblaw.com
    SIMPSON THACHER & BARTLETT LLP
    One Market Plaza
    Spear Tower, Suite 3800
    San Francisco, CA  94105
    Phone: (415) 426-7300
    Fax: (415) 426-7301

    Sanford L. Michelman (SBN 179702)
    smichelman@mrllp.com
    Aaron L. Plesset (SBN 352104)
    aplesset@mrllp.com
    MICHELMAN & ROBINSON, LLP
    10880 Wilshire Blvd., 19th Floor
    Los Angeles, CA 90024
    Phone: (310) 299-5500
    Fax: (310) 299-5600

    Mona Z. Hanna (SBN 131439)
    mhanna@mrllp.com
    MICHELMAN & ROBINSON, LLP
    17901 Von Karman Ave, 10th Floor
    Irvine, California 92614
    Phone: (714) 557-7990
    Fax: (714) 557-7991

    *Counsel for Defendants*
    *Orion Longevity Inc. and Blue Fuzion Group Ltd.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 4000 words, which complies with the 4000 word limit set by Section 6.c.i. of the Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr. updated January 6, 2026.

Dated: June 26, 2026

By: */s/  Amy H. Candido*
Amy H. Candido
(CA SBN 237829)
amy.candido@stblaw.com